UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAY W. COOPER                )
                             )
         Plaintiff           )
                             )
v.                           )   Civil No. 1:05-cv-01598-RMC
                             )
COUNTERPART INTERNATIONAL    )
                             )
         Defendant.          )
                             )

**DEFENDANT COUNTERPART INTERNATIONAL'S ANSWER**

Defendant Counterpart International, through counsel, answers plaintiff's complaint.

1. Plaintiff Jay W. Cooper ("Cooper") seeks redress and money damages from his former employer for breach of contract and for false light invasion of privacy.

ANSWER:

Defendant admits that plaintiff is seeking redress for the claims alleged, but denies that there is any basis for the claims that would give rise to any alleged damages.

2. Cooper is a 57 year-old resident of the State of Oregon, temporarily residing in Arlington, Virginia. Cooper has been employed by Defendant Counterpart International since January of 1995 in various capacities on various projects in Central Asia.

ANSWER:

Defendant has no knowledge about plaintiff's current residences, but admits the remaining allegations of paragraph 2.

3.      Defendant Counterpart International ("Counterpart") is a corporation organized and operating under the laws of a state other than Oregon, with its principal place of business in Washington, D.C.

ANSWER:

Defendant admits the allegations of paragraph 3.

## Jurisdiction and Venue

4.      The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

ANSWER:

Based strictly on the allegations in the complaint, defendant admits that as alleged the amount plaintiff claims to be in controversy exceeds $75,000.00, but defendant denies the underlying allegations in support of this alleged amount in controversy and thereby denies this allegation in paragraph 4.

5.      This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1).

ANSWER:

Based on the allegations in the complaint, defendant admits that the complaint sets forth allegations to support an alleged amount in controversy to establish subject matter jurisdiction in this Court, but defendant denies these underlying allegations and therefore ultimately will deny that this Court has subject matter jurisdiction due to an insufficient amount in controversy.

6. Venue lies in this Court under 28 U.S.C. § 1391(a), as a substantial part of the events giving rise to the claim occurred in the District of Columbia.

ANSWER:

Defendant denies the alleged events giving rise to the claims, but admits the remaining allegations of paragraph 6.

### Count I

### (Breach of Contract)

7. On or about December 18, 2003, Cooper and Counterpart entered into a letter agreement under which Counterpart renewed an existing contractual relationship with Cooper, and confirmed Cooper's position as Chief of Party for several Counterpart programs. A copy of this agreement endorsed by Counterpart is attached to this Complaint as Exhibit A and transmitted it to Counterpart on or about December 18, 2003. Hereinafter that agreement is referred to as "the letter agreement."

ANSWER:

Defendant admits the allegations of paragraph 7.

8. Under the letter agreement, Counterpart was obliged to continue Cooper's employment until June 30, 2006, absent certain circumstances enumerated in paragraph 7 of that letter agreement.

ANSWER:

The letter agreement speaks for itself. Defendant admits the specific language of the letter agreement.

9. The letter agreement provides that Cooper was to comply with the procedures outlined in Counterpart's Manual for Overseas Employees ("the Counterpart Manual"), and to receive the benefits outlined herein.

ANSWER:

The letter agreement speaks for itself. Defendant admits the specific language of the letter agreement.

10. Counterpart never prepared or presented to Cooper the "job description for the Position" as it was obliged to do under the letter agreement. The only description of Cooper's job responsibilities ever developed was one that Counterpart requested Cooper to prepare in the summer of 2004.

ANSWER:

Defendant denies that it was obligated to prepare any job description under the letter agreement, but admits the remaining allegations in paragraph 10.

11. Counterpart failed to provide Cooper with the annual performance evaluations to which he was entitled under the Counterpart Manual. Counterpart only provided one such evaluation in the years of Cooper's employment. That evaluation was delivered in 2002.

ANSWER:

Defendant denies that plaintiff was "entitled" to anything under the Counterpart Manual, but admits the remaining allegations in paragraph 11.

12. Under an oral agreement with Counterpart, Cooper was scheduled to receive a five percent raise in salary effective July 1, 2004. That oral agreement was

4

reflected in at least one of the budgets of the projects Cooper managed. Cooper's salary was not raised in July of 2004 from its previous level, in violation of that agreement.

ANSWER:

Defendant denies that the existence of any such oral agreement and denies the allegations of paragraph 12.

13. On November 12, 2004, Counterpart unilaterally terminated cooper's employment. That action breached the letter agreement in that (a) funding for Cooper's position or for the programs he administered had not been lost, (b) Counterpart did not give Cooper thirty days' notice of its action, and (c) Cooper did not agree to that action.

ANSWER:

Defendant admits that it terminated plaintiff on or around November 12, 2003, but denies the remaining allegations of paragraph 13.

14. At all times prior to November 12, 2004, Cooper had fulfilled his obligations under the letter agreement and performed his job duties to Counterpart's satisfaction.

ANSWER:

Defendant denies the allegations of paragraph 14.

15. Prior to November 12, 2004, Cooper had complained to his supervisors and others at Counterpart about certain financial irregularities in programs Counterpart was performing under contract to agencies of the United States.

ANSWER:

Defendant denies the allegations in paragraph 15.

16. Cooper's action in so reporting those irregularities was in accord with his responsibilities under Counterpart's Manual.

ANSWER:

Defendant denies that plaintiff took any alleged "action" and therefore denies the allegations in paragraph 16.

17. Upon information and belief, Counterpart terminated Cooper in violation of the letter agreement in part to avoid the questions Cooper had raised, as described in the preceding two paragraphs.

ANSWER:

Defendant denies the allegations in paragraph 17.

18. The Counterpart Manual provides that an employee may avail himself of an established grievance procedure if he encounters any circumstances of concern or any actions he feels to be discriminatory.

ANSWER:

The written manual speaks for itself and defendant admits the specific language of the manual.

19. By terminating Cooper without the thirty days notice required by the letter agreement, upon information and belief Counterpart intended to prevent Cooper from commencing a grievance proceeding under which he could have (and would have) challenged the motive described in paragraphs 15-17, above.

ANSWER:

Defendant denies the allegations of paragraph 19.

20. Following Cooper's termination, Counterpart refused to remit to Cooper reimbursement for expenses he had incurred on Counterpart's behalf, despite Cooper's submission of appropriate documentation and repeated requests from counsel. Such refusal violated the letter agreement and Counterpart's manual.

ANSWER:

The written letter of agreement and the Counterpart Manual speak for themselves and defendant admits the specific provisions of both documents. Defendant denies the remaining allegations of paragraph 20.

21. Furthermore, Counterpart failed to provide Cooper with reimbursement for the expenses of his relocation from his duty site in Kazakhstan to his home of record, in violation of the Counterpart Manual.

ANSWER:

Defendant denies that the Counterpart Manual is a contract that is capable of being breached or violated. Defendant admits it did not provide relocation expenses to plaintiff, but denies the remaining allegations in paragraph 21.

22. In addition, by disseminating false information about Cooper's supposed "performance" problems and "mismanagement" (as described in paragraph 27 *infra*), Counterpart further violated the prohibitions of the Counterpart Manual.

ANSWER:

Defendant denies the allegations of paragraph 22.

WHEREFORE, Cooper demands judgment against Counterpart for the following:

    a.    His full salary from the date of termination through June 30 2005, including the five per cent raise that should have been effective as of July 1, 2005;

    b.    The value of all benefits due him under the letter agreement and the Counterpart Manual from the date of termination through June 30, 2006;

    c.    Reimbursement of all business expenses for which Cooper has submitted documentation;

    d.    Sums deducted from Cooper's paychecks as cash advances, which sums were, on information and belief, not tendered to Cooper;

    e.    Such other amounts as shall be proven at trial; and

    f.    Such other and further relief as the Court deems just and proper.

Count II

(False Light Invasion of Privacy)

23.    Plaintiff realleges and incorporates herein paragraphs 1-22 set out above.

ANSWER:

Defendant reasserts its answers to paragraphs 1 through 22 as if set forth herein.

24.    After terminating Cooper on Friday, November 12, 2004, Counterpart took steps knowingly designed publicly to send out the message to Cooper's professional colleagues in and outside the Counterpart organization that Cooper had been guilty of serious misfeasance or dishonesty and was not to be trusted. Counterpart took those steps despite the fact that Cooper had never demonstrated any such traits during his ten years

of employment and, to the contrary, was well known to Counterpart as a highly trusted and esteemed employee.

ANSWER:

Defendant denies the allegations in paragraph 24.

25. Among the steps referenced in the preceding paragraph are the following:

a. On Friday November 12, 2004, Counterpart knew that Cooper would be on a business mission to Counterpart's office in Bishkek, Kyrgyzstan. Counterpart notified Cooper of his termination in a telephone conference call and told him he could not return to his office in Almaty, Kazakhstan.

ANSWER:

Defendant admits it notified plaintiff he was terminated during a telephone conversation, but denies the remaining allegations in paragraph 25 (a).

b. Counterpart immediately changed the locks on Cooper's office in Almaty in the presence of the staff of that office and kept it locked.

ANSWER:

Defendant admits it changed the locks to plaintiff's office, but denies the remaining allegation in paragraph 25 (b).

c. Counterpart informed its Country Directors in Kazakhstan, Kyrgystan and Turkmenistan that Cooper was no longer with Counterpart and that he was not allowed in any offices in those countries.

ANSWER:

Defendant admits the allegations in paragraph 25 (c).

d.  Counterpart promptly shut down all internet access for its staff in Almaty, on an obvious false pretense of remodeling, thereby making it impossible for Cooper to communicate electronically with anyone at his office.

ANSWER:

Defendant denies the allegations in paragraph 25 (d).

e.  Counterpart instructed all staff in Almaty to stay away from Counterpart's Almaty office on the weekend of November 13-14, 2004.

ANSWER:

Defendant admits the allegations in paragraph 25 (e).

f.  During that weekend, Counterpart employees sorted through everything in Cooper's office; during this process they broke into locked drawers and files and confiscated materials relevant to the events described in paragraph 15, above.

ANSWER:

Defendant admits that its agent packed plaintiff's belongings, but denies the remaining allegations in paragraph 25 (f).

g.  A Counterpart executive named Michael Kunz instructed the staff at Cooper's office not to forward emails or telephone messages or other correspondence to Cooper.

ANSWER:

Defendant admits that it is standard practice to reroute work related e-mails, correspondence and telephone messages to a departing employee's replacement.

    h.    On Monday, November 15, 2005, a Counterpart employee told Cooper's professional colleague at USAID, the federal agency which had funded the projects on which Cooper had been working for ten years, that Cooper had left Counterpart "not by his own choice."

ANSWER:

Defendant is unaware of any employee making the alleged comments and therefore denies the allegations in paragraph 25 (h).

26.    The steps enumerated in the preceding paragraph starkly differ from those usually followed in the case of a departing Counterpart executive; such a person is usually afforded the courtesy of cleaning out his office, saying goodbye to staff and USAID contacts, participating in the orderly transition of projects to new management, and receiving communications which are personal or to which it is appropriate that he personally respond.  Moreover, in Central Asia it is customary for Counterpart (and other companies) to participate in a party for a departing employee, to which the employee invites friends and business colleagues.  Many of Cooper's professional colleagues throughout Central Asia and Europe took note of how differently Cooper's termination was handled.

ANSWER:

Defendant denies that it took the steps as alleged. Defendant admits that under certain circumstances, it is customary to allow departing executives to engage in the actions as alleged. Defendant does not have sufficient information to form a belief about what plaintiff's colleagues purportedly "took note of".

27. Moreover, agents of Counterpart have, at various times since Cooper's termination, made the following untrue statements to Cooper's professional colleagues purposely to damage Cooper's professional and personal reputation and credibility, or, at best, with reckless disregard thereto:

    a. That it was Cooper's decision to leave the employ of Counterpart.

    b. That Counterpart offered Cooper choices other than being terminated that he rejected.

    c. That Cooper did not cooperate with Counterpart.

    d. That Cooper was terminated for performance reasons.

    e. That Cooper mismanaged his projects;

    f. That Cooper's ex-wife, rather than Cooper, deserved custody of the couple's minor child because Cooper was too "controlling."

ANSWER:

Defendant is unaware of the agent who allegedly made the above comments and therefore denies the allegations of paragraph 27.

28. Counterpart's public actions and knowing and/or reckless dissemination of these matters placed Cooper in a false light that would be highly offensive to a reasonable

person and which reasonably caused his professional and personal colleagues to doubt his credibility, ethics and professional competence.

ANSWER:

Defendant denies the allegations of paragraph 28.

## AFFIRMATIVE DEFENSES

### First Defense

The complaint fails to state a claim upon which relief can be granted as a matter of fact and/or law.

### Second Defense

The amount in controversy does not meet or exceed $75,000 and this Court does not have subject matter jurisdiction.

### Third Defense

At all times relevant hereto, defendant has acted in good faith and has not violated any rights which may be secured to plaintiff under any federal, state, or local law, rule, regulation or guideline.

### Fourth Defense

All or a portion of plaintiff's claims for damages are barred or reduced by his mitigation of alleged damages or by his failure to mitigate.

### Fifth Defense

All or a portion of plaintiff's claims are barred by estoppel, release, laches, set-off, unclean hands and/or waiver.

### Sixth Defense

Plaintiff's claims based on the alleged oral employment contract are barred by the Statute of Frauds.

**Seventh Defense**

Plaintiff's claims based on the alleged oral employment contract are barred because the alleged contract did not contain sufficient terms, the contract was vague, the contract lacked consideration, and defendant had no intention on, and never assented to, entering into such a contract with plaintiff.

                Respectfully submitted,

                **JACKSON LEWIS LLP**


By: _____/s/_____
    Michael N. Petkovich
    (DC Bar No. 456010)
    8614 Westwood Center Drive
    Suite 950
    Vienna, VA 22182
    (703) 821-2189
    **Counsel for Defendant**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 20, 2005, a copy of *Defendant Counterpart International's Answer* was served upon the following via first-class mail, postage pre-paid:

>Patricia D. Douglass
>98 Interpromontory Road
>Great Falls, Virginia 22066-3219


>_____/s/_____
>Michael N. Petkovich