# EXHIBIT A

# COUNTERPART

## EMPLOYMENT CONTRACT

THIS CONTRACT is made effective on the 1st day of October, 1994 by and between COUNTERPART Foundation, Inc., a U.S. non-profit corporation, herein after called "COUNTERPART", and Jay Cooper, hereinafter called "Employee", and is based on the following facts:

WHEREAS, COUNTERPART will operate the Counterpart Consortium Central Asia NGO Support Initiative based in Almaty, Kazakhstan with satellite offices in Bishkek, Kyrgyzstan, Tashkent, Uzbekistan and Dushanbe, Tajikistan and any other Central Asian countries covered by this program, and of necessity must employ qualified personnel to carry out its work;

WHEREAS, Employee desires to enter into an Agreement for the performance of professional services responsive to the needs of COUNTERPART and attests to his qualifications for the position of Kyrgyzstan Country Director and Regional Training Director as per Attachment One of this agreement "Job Description";

COUNTERPART hereby hires Employee to perform in the above capacity under the following terms and conditions:

1. Employee will receive a base salary in the amount of U.S. $46,800 per year, payable in the U.S. on the fifteenth and last day of the month.

2. COUNTERPART will provide Employee with a health benefits package as per COUNTERPART's Employee Handbook and Manual of July, 1994. (see attachment two)

3. COUNTERPART will provide internal transportation on business only within and between Kazakhstan, Kyrgyzstan, Uzbekistan, Tajikistan, Turkmenistan, and the United States

3. If approved by the COUNTERPART Chief of Party for the NGO Support Initiative and COUNTERPART Headquarters, Employee may travel to Counterpart offices in Russia and Ukraine to become familiar with NGO support resources of Counterpart and other international and local NGOs should such a trip be of demonstrable benefit to the Central Asia NGO Support Initiative. Employee is granted three weeks of vacation per year, unless otherwise amended to four weeks in COUNTERPART's Employee Handbook and Manual. Employee is welcome to take personal travel in Europe or the U.S. at his own expense during his own free time or vacation time as per COUNTERPART's Employee Handbook and Manual.

CP0064

4. The period of employment pursuant to this contract is for one and one half years, more particularly from October 1, 1995 through June 30, 1997. This contract is made subject to renewal by mutual agreement of Employee and COUNTERPART.

5. This contract is written specifically for the country and COUNTERPART field program previously described and pertains to the services of Employee at that program.

6. Employee understands and agrees to serve the full term of this contract at the field program assigned unless separated for reasons beyond Employee's control.

   a) If Employee fails to fulfill the full terms of the contract and/or voluntarily resigns before the expiration date of this agreement, and this separation is not beyond the Employee's control, and therefore not approved by COUNTERPART's Executive Director, the CAR Program Director (at headquarters) or the Director of Finance and Administration, then the Employee is liable and must reimburse COUNTERPART for all monies expended in transferring the Employee to and from the home of record (e.g. Kyrgyzstan) , briefing(s) and the field program.

   b) Employee understands, unlikely as it may be, that if COUNTERPART funds for any specific field programs are cancelled or curtailed for any reason making it necessary to reduce staff, and a transfer of the employee is not made, then the terms of this contract as they relate to the employment termination date may, at COUNTERPART's discretion, be null and void. (If a reduction in force is necessary, COUNTERPART reserves the right to cancel this agreement with proper notice...from two to four weeks, depending on financial circumstances.) In that event, the cost of Employee's return transportation to home of record (e.g. Kyrgyzstan) will be paid by COUNTERPART as well as compensation for accrued, unspent vacation and salary, up to and including the final work day.

   c) "At will" Employment: The employee understands that if in the course of events personnel changes are made in connection with program restructuring, or any other changes are made organizationally wherein the employee must be terminated, COUNTERPART will provide 14 days (two weeks) and provide for relocation to home of record (e.g. Kyrygzstan) the same as in a lay-off for reduction in force.

7. Employee agrees to expend every effort in the performance of duties and to act at all times in the best interests of COUNTERPART. Employee will disclose no information by any method to persons not associated with COUNTERPART which is of a confidential nature to COUNTERPART, its employees, or recipients of assistance. Employee agrees not to disclose non-confidential information which is not beneficial to the goals of COUNTERPART.

8. Employee agrees to be governed and will abide by the policies of COUNTERPART, and will conform to the rules and regulations governing employees and volunteers in Kazakhstan, Kyrgyzstan, Uzbekistan, Turkmenistan, and Tajikistan and any other countries in the former Soviet Union visited by employee under the auspices of COUNTERPART.

Employee understands that in a cross-cultural setting there may be acceptable and unacceptable modes of dress and appearance. Employee agrees to abide by the necessary requirements for acceptable appearance and attire as they relate to local conditions; i.e., in the area of employment.

Employee understands that as a representative of COUNTERPART in the country or locale of service that it is the responsibility of the employee to represent the organization, its personnel and purposes to all persons outside the organization in a positive and professional way. Employee understands, from reading the Employee Handbook and Manual, that there are causes for discharge and that there exists a continuing need to maintain professional competence and the ability to satisfy and maintain the confidence of those the employee is hired to serve or work with, be they counterparts, patients or other indigenous people and entities.

The employee understands that failure to fulfill these responsibilities will result in termination in the country or locale of assignment and make the terms and conditions of this agreement null and void.

9. Employee agrees to provide COUNTERPART with all necessary and final reports, both programmatic and financial, as per Cooperative Agreement No. 110-0007-G-00-4020-00, and subsequent commitments to USAID as well as a personal written evaluation of the assignment within sixty (60) days after conclusion of the term hereinabove stated or extended. The Employee also agrees to visit headquarters, at COUNTERPART expense, to personally debrief.

10. Any tape recordings, speeches, photographs, manuals, plans, model program designs, proposals, research materials, charts, audio-visual presentations and other training material or devices, articles or manuscripts, or public relations materials or any other products requested by COUNTERPART as part of the Employee's job will remain, in their entirety, as the exclusive property of COUNTERPART.

11. If the Employee is so inclined COUNTERPART encourages Employee to write public relations-type or technical articles and reports or/and book-length manuscripts for publication on a personal basis.

COUNTERPART has no property rights to any such writing instigated by the Employee for personal use and which was not the direct result of an official assignment. (On the other hand, that "assigned" material is the exclusive property of COUNTERPART.)

Employee, however, agrees that before Employee will submit any publishable-type material to an agent or publisher that Employee will first submit the original or true copy of the final draft, in its entirety, to COUNTERPART at headquarters, Washington, D.C., for editorial review. COUNTERPART will review all such written material to assure accuracy regarding corporate philosophy, facts, and the overall impact on the good name of the employer. Employee, therefore, agrees to abide by COUNTERPART requests to correct material to reflect facts accurately and to protect the good name of COUNTERPART, ever mindful that COUNTERPART deserves recognition for its role and works wherever such recognition is due.

12. Though full discussion will always be made, COUNTERPART reserves the right to transfer Employee when and where necessary as a condition of continued employment. Employee should understand that the nature of COUNTERPART's work may necessitate such transfer. This is particularly true during a second contract period and beyond. Employee must be willing and able to transfer with or without a promotion. There would be no demotion in salary in any case.

13. Employee understands the need for photos and stories from the field programs as they relate to Public Relations needs. Employee agrees to assist in this area when requested to do so.

14. It is understood COUNTERPART has the option and authority to occasionally use the Employee's name and title, as an Employee (only while in the employment of COUNTERPART) in Direct Mail letter appeals that have the goal of informing our constituency of our work and obtaining funds with which to sustain the organization.

In most cases it is anticipated that this use will consist primarily of quoting statistics, and some narrative, often rewritten from the program's monthly, or other reports.

There may be some synthesis and generalization for the purposes of clarity and necessary brevity, but not to the point of misrepresentation.

It is further understood that the restrictive time element normally precludes the possibility of advance approval by field staff so mentioned. (There also exists the possibility that the Employee will not, in fact, be mentioned at any time in appeals, or other published materials.)

15. Employee agrees to the use, without remuneration by COUNTERPART, (at its discretion) of reports, tapes, slides, film and photos turned in by Employee to COUNTERPART and for which Employee may be described, recorded or pictured. Employee shall have no property right in any such reports, tapes etc.

16. The Employee understands the limits of COUNTERPART group insurance coverage and attendant responsibility. Medical coverage is to begin January 1, 1996.

17. The Employee understands that in field assignments in COUNTERPART's typical foreign areas, including Central Asia, there are, or could be inherent physical risks, though all possible precautions have been observed to avoid areas or activities of certain risk.

COUNTERPART locations that are not unstable now could become so. The Employee affirms that this factor is understood and although COUNTERPART will not willingly put an employee in jeopardy should such a threat to safety develop (and harm be threatened or actually occur) the Employee does not, nor will not hold COUNTERPART responsible or accountable for the acts of third parties who are beyond the control or influence of COUNTERPART or its agents, employees, affiliates and associates.

It is further understood that this acknowledgement by the Employee does not preclude the awarding of any normal benefits such as Group insurance coverage if applicable, return transportation, etc

The Employee agrees to exercise prudent caution in the country of assignment.

18. The Employee understands the doctrine of fiduciary responsibility: If Employee is a signatory on an COUNTERPART bank account(s) the Employee is responsible for the reasonable security of that account. Should there be an unexplained, unaccountable, unauthorized shortage in a COUNTERPART account under the Employee's control (petty cash, bank-savings, checking, etc.), the Employee is responsible and will be held financially accountable if the shortage cannot be satisfactorily reconciled. In the case of dual signature accounts both parties would be held equally responsible and accountable.

19. COUNTERPART has a vital interest in maintaining safe, healthful and efficient working conditions. It is the right, obligation and intent of COUNTERPART to protect its programs.

Accordingly, the Employee is required to take pre and post physical examinations. Employment is contingent on being deemed physically fit for employment by a U.S.-licensed physician. COUNTERPART will reimburse employee for this examination. Employee understands Employer has a drug and alcohol-free work place policy, as described in the employee manual and agrees to the conditions set forth in it.

Employee initials: ________

20. The Employee understands that he/she is being hired by COUNTERPART to implement and sustain COUNTERPART program policy, strategies and procedures as formulated and directed by COUNTERPART.

Though the employee is advised to always strive to be cooperative with other entities or individuals that COUNTERPART may associate itself with in the course of its business, (or even receive funds from) the employee fully understands that his responsibility and loyalty in business, professional and social aspects is focused on the employer that provides salary, benefits, supervision and other support to the employee, namely COUNTERPART, not another organization or branch of government, or individual so-connected. Therefore, the employee agrees to maintain these high ethical standards and to protect and defend the interests and reputation of COUNTERPART by always carefully acting and speaking in the best interests of COUNTERPART.

21. This Agreement will be null and void if a U.S.-licensed physician determines, after a physical examination and evaluation, that the Employee is not physically fit for field assignment, nor likely to be within the time frame required by COUNTERPART to place or maintain an employee in the designated position within the period established as necessary for program maintenance and integrity.

22. This contract may be terminated:

a) by COUNTERPART if A.I.D. fails to provide funding herefore;

b) by COUNTERPART if employee fails to fulfill his obligations hereunder;

c) by mutual agreement of the parties.

This contract is made subject to the laws of the District of Columbia where COUNTERPART is located and has its headquarters and where jurisdiction lies in the event of any dispute. IN WITNESS WHEREOF, the undersigned have subscribed their names in duplicate the day and year first written above.

Stanley W. Hosie
Chief Executive Officer
COUNTERPART

12/05/95
DATE

Jay Cooper
Kyrgyzstan Country Director & Regional Training Director
Central Asia NGO Support Initiative

Nov 12, 1995
DATE

ATTACHMENTS:

1.) Chief of Party Job Description
2.) COUNTERPART Foundation, Inc. Employee Handbook and Manual, July 1994
3.) COUNTERPART Manual of Medical Benefits

Counterpart International, Inc.

EMPLOYMENT CONTRACT FOR EMPLOYEES HIRED TO WORK IN FOREIGN AREAS

THIS CONTRACT is made effective on the 1st day of July, 1997 by and between Counterpart International, Inc., a U.S. non-profit corporation, ("Counterpart"), and Jay Cooper ("Employee"), and is based on the following facts:

WHEREAS, Counterpart operates the Central Asia NGO Support Initiative (the "Program") based in Almaty, Kazakstan with offices in Kyrgyzstan, Uzbekistan, Tajikistan, and Turkmenistan (collectively "Central Asia") and desires to employ qualified personnel to carry out its work; and

WHEREAS, Employee desires to enter into an Agreement for the performance of professional services responsive to the needs of Counterpart and attests to his qualifications for the position of Regional Deputy Director as set forth in the Job Description attached to this Agreement as Exhibit 1.

Therefore, Counterpart agrees to employ Employee to perform in the above capacity under the following terms and conditions:

1. Term

The intended Term of this Agreement is twenty-seven (27) months beginning July 1, 1997, subject to termination as provided below. The parties understand that the Program has tentatively been extended for an additional three (3) months. If the Program in fact continues for the additional three (3) months, the Term shall be thirty (30) months, subject to termination as provided below. Counterpart shall notify Employee promptly when it learns whether the extension will occur.

2. Compensation.

(a) Salary. Employee will receive a base salary in the amount of U.S. $5,167.00 per month (U.S. $62,000 annually), payable as earned on the fifteenth and last day of each month. Employee shall comply with the time sheet procedure set forth in the Manual for Employees Hired to Work in Foreign Areas, a copy of which is provided at the commencement of employment.

(b) Housing Allowance. Employee agrees that he is not eligible for a housing allowance.

(c) Standard Benefits. Employee shall be eligible to receive the benefits offered to Counterpart's regular full-time employees hired to work in foreign areas, including, among others, health insurance, paid holidays and paid annual leave (vacation, sick and personal) as described more fully in Counterpart's Manual for Employees Hired to Work in Foreign Areas. These benefits are subject to change, or discontinuance at Counterpart's discretion.

JC

DEPOSITION EXHIBIT 2 Reporter: Joseph Inabnet Cooper 1/4/06

(d) Special Benefits. (1) During the first and second year of the Term, Counterpart will reimburse Employee up to U.S. $8,400.00 for personal vacation-related transportation (R&R) expenses incurred by himself and his wife and two dependent children and discretionary travel mutually agreed upon on a case by case basis. To receive reimbursement for covered expenses, Employee must provide documentation of covered expenses incurred in accordance with Counterpart's travel-related expense reimbursement policies.

(2) During the second year Employee is eligible for a consultation visit to Counterpart Headquarters, Counterpart will reimburse Employee for actual airfare costs and per diem expenses for time spent in Washington, D.C. on Counterpart business, up to a combined total of $3,000.00. Employee understands that all reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

(3) Employee is eligible to receive a domestic and international shipping allowance in accordance with the policies set forth in the Manual for Employees Hired to Work in Foreign Areas, providing that the total shall not exceed $5,000.

(4) Employee and dependents are eligible to receive Medical Evacuation Insurance coverage for the full term of contract.

3. Employee Obligations.

(a) Job Duties. Employee agrees to competently perform his responsibilities as set forth in the Job Description attached as Exhibit 1 to this Agreement, as well as any other responsibilities which may be assigned from time to time by his supervisor or others at Counterpart Headquarters.

(b) Fiduciary Responsibilities. Employee understands the doctrine of fiduciary responsibility. As a signatory on Counterpart bank account(s) in Central Asia, Employee is responsible for the security of the account(s). Employee shall take necessary steps to assure that access to the account is restricted to trustworthy individuals, and shall cooperate with Headquarters to implement procedures to account for deposits and withdrawals from the account(s). If there is a shortage in a Counterpart account under Employee's control (petty cash, bank-savings, checking, etc.), Employee is responsible for explaining and justifying the shortage, and will be held liable if the shortage cannot be satisfactorily accounted for.

( c ) Reports. Employee shall provide Counterpart with all necessary reports, both programmatic and financial, required by the Program or Counterpart, as well as a personal written evaluation of the assignment within sixty (60) days after conclusion of the Term. Upon separation from employment, Employee agrees to visit Headquarters, at Counterpart expense, to personally debrief.

4. Termination. This Agreement may be terminated without liability to either party in the following circumstances:

(a) By Counterpart, upon fourteen (14) days notice, if funding for the position



or the Program is lost;

(b) By Counterpart, immediately upon notice, if employee fails to fulfill his obligations under this Agreement or fails to perform his job duties satisfactorily;

(c) By either party, upon thirty (30) days written notice, for any lawful reason; and

(d) At any time, by mutual agreement of the parties.

If Employee quits employment or is terminated from employment pursuant to subsection (b) above, Employee shall reimburse Counterpart for all monies expended in relocating Employee and/or his family members to Dushanbe, Tajikistan, including airfare and shipping costs, and Counterpart shall have no responsibility to pay to relocate Employee or his family to his Home of Record: Eugene, Oregon.

5. Notice of Risks. Employee understands that in field assignments in Counterpart's typical foreign areas, including Central Asia, there are, or could be inherent physical risks, though reasonable precautions have been observed to avoid areas or activities of certain risk. Counterpart maintains workers compensation insurance for its employees, but Employee voluntarily assumes the risks inherent in living and working in Bishkek, Kyrgyzstan. Employee shall exercise, and shall cause his family members to exercise prudent caution in the country of assignment and while traveling on Counterpart business.

6. Physical Examination. Employment is contingent upon Employee receiving certification from a U.S. licensed physician, after a physical examination and evaluation, that Employee is able to perform the essential functions of the position, and has completed all necessary vaccinations for admission to Central Asia. Accordingly, this Agreement shall not become effective unless and until Employee presents a valid physician's certificate to Counterpart. Counterpart will reimburse Employee for the reasonable cost of the examination by a physician of Employee's choosing.

7. Choice of Law. This Contract is entered into in the District of Columbia, and shall be subject to the laws of the District of Columbia where Counterpart is located and has its Headquarters, and where jurisdiction lies in the event of any dispute.

8. Modification. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.



IN WITNESS WHEREOF, the undersigned have subscribed their names in duplicate the day and year first written above.

| | |
|---|---|
| Gregory T. Touma<br>Chief Operating Officer<br>Counterpart International, Inc. | Jay Cooper<br>Regional Deputy Director<br>Central Asia NGO Support Initiative |
| Dated: 2-27-98 | Dated: 26.02.98 |

Attachment:

1. Regional Deputy Director/ Job Description

DRAFT

## EMPLOYMENT CONTRACT FOR EMPLOYEES IN FOREIGN AREAS

THIS CONTRACT is made effective on the 1st of April, 2000 by and between Counterpart International, Inc., a U.S. non-profit corporation, ("Counterpart"), and Jay Cooper ("Employee"), and is based on the following facts:

WHEREAS, Counterpart operates the Counterpart Consortium Program for Civil Society and NGO Development in Central Asia (the "Program") based in Almaty, Kazakhstan with offices in Kyrgyzstan, Tajikistan, Turkmenistan, and Uzbekistan (collectively "Central Asia") and desires to employ qualified personnel to carry out its work; and

WHEREAS, Employee desires to enter into an Agreement for the performance of professional services responsive to the needs of Counterpart and attests to his qualifications for the position of Regional Director as set forth in the Position Description attached to this Agreement as Exhibit One (1).

Therefore, Counterpart agrees to employ Employee to perform in the above capacity under the following terms and conditions:

1. Term

(a) The Term of this Agreement is 36 months beginning April 1, 2000 and ending March 31, 2003, subject to termination and/or renewal as provided below.

(b) (1) If one party desires to create a new term of employment, the party shall give written notice to the other party at least 60 days prior to the expiration of this Agreement. The party receiving notice shall then notify the first party within 10 business days as to whether the second party also wishes to negotiate a new agreement. Neither party shall be obligated to negotiate a new agreement. If no new agreement is reached by the expiration of this Agreement, this Agreement shall expire without further obligation between the parties.

(2) If the parties reach an agreement for a new term, the Employee shall be eligible to take a Home Leave prior to the commencement of the new term, or as soon after the commencement of the new term as is reasonably practicable, subject to the operating needs of Counterpart. Home Leave shall be subject to Counterpart's Home Leave policy in effect at the time Employee becomes eligible to take such a leave.

2. (a) Salary. Counterpart agrees to pay employee U.S.$3,333.33, semi-monthly as earned, on the 15th and last day of each month (U.S. $80,000 per year). Employee shall comply with the time sheet procedure set forth in the Manual for Overseas Employees, a copy of which is provided at the commencement of employment.

(b) Housing Allowance. Employee is eligible for a housing allowance to cover his actual housing costs, including utilities, furnishings and/or reasonable related living expenses in the field, up to U.S. $15,000 per year. Counterpart reserves the right to determine what is reasonable for purposes of related living expenses.

(c) Relocation Benefits. Employee is eligible for certain relocation benefits including actual travel expenses for relocating Employee to Kazakhstan and back to his Home of Record. Employee's eligibility for relocation benefits shall be subject to the limitations set forth in Section 4, below.

DEPOSITION EXHIBIT 3 Reporter: Joseph Inabnet Cooper 1/4/06

(d) Standard Benefits. Except as expressly provided in this Agreement, Employee shall be eligible to receive the benefits offered to Counterpart's regular full-time employees, including, among others, health insurance, paid holidays, paid annual leave (vacation, sick and personal). These benefits and others are described more fully in Counterpart's Manual for Overseas Employees, and are subject to change, or discontinuance at Counterpart's discretion, without notice.

(e) Taxation of Benefits. All amounts paid pursuant to Section 2 shall be subject to payroll taxes and withholding as required by law.

(f) Special Benefits. In addition to standard benefits outlined above and in Counterpart's Employee Manual, Employee is eligible to receive the following benefits:

(1) Employee is eligible for reimbursement of educational expenses for dependent children, not to exceed $10,000 a year. Employee understands that all reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

(2) During the second year, Employee is eligible for a consultation visit to Counterpart Headquarters, Counterpart will reimburse Employee for actual airfare costs and per diem expenses for time spent in Washington DC on Counterpart business, up to a combined total of $2,000, contingent upon availability of funds. Employee understands that all reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

3. Employee Obligations.

(a) Job Duties. Employee agrees to competently perform his responsibilities as set forth in the Job Description attached as Exhibit One (1) to this Agreement, as well as any other responsibilities which may be assigned from time to time by his supervisor or others at Counterpart Headquarters.

(b) Reports. Employee shall provide Counterpart with all necessary reports, both programmatic and financial, required by the Program or Counterpart, as well as a personal written evaluation of the assignment within twenty (20) days after conclusion of the Term. Upon separation from employment upon Counterpart's request, Employee agrees to visit Headquarters, at Counterpart expense, to personally debrief.

4. Termination. This Agreement may be terminated without liability to either party in the following circumstances:

(a) By Counterpart, upon fourteen (14) days notice, if funding for the position or the Program is lost;

(b) By Counterpart, immediately upon notice, if employee fails to fulfill his obligations under this Agreement or fails to perform his job duties to Counterpart's satisfaction;

(c) By Counterpart, upon ninety (90) days notice, if in Counterpart's sole discretion, the financial situation in Kazakhstan deteriorates to the point that it is no longer practical to operate the Program.

(d) By either party, upon thirty (30) days written notice, for any lawful reason; and

(e) At any time, by mutual agreement of the parties.

If Employee quits employment or is terminated from employment pursuant to subsection (b) above, Employee shall reimburse Counterpart for all monies expended in relocating Employee to Kazakhstan, including airfare and freight costs, and Counterpart shall have no responsibility to pay for Employee's relocation to his Home of Record: **Medford, Oregon..**

5. Notice of Risks. Employee understands that in field assignments in Counterpart's typical foreign areas, including Kazakhstan, there are, or could be inherent physical risks that are not within Counterpart's control. Counterpart maintains workers compensation insurance for its employees, but in entering this contract of employment, Employee voluntarily assumes the risk of injury arising outside the scope of his employment, including, among others, risks from environmental factors, or from political or civil unrest, and Employee agrees to exercise prudent caution while residing in the country of assignment.

6. Physical Examination. Employment is contingent upon Employee receiving certification from a U.S. licensed physician, after a physical examination and evaluation, that Employee is able to perform the essential functions of the position, and has completed all necessary vaccinations for admission to Kazakhstan. Accordingly, this Agreement shall not become effective unless and until Employee presents a valid physician's certificate to Counterpart. Counterpart will reimburse Employee for the reasonable cost of the examination by a physician of Employee's choosing.

7. Choice of Law. This Contract is entered into in the District of Columbia, and shall be subject to the laws of the District of Columbia where Counterpart is located and has its Headquarters, and where jurisdiction lies in the event of any dispute.

8. Modification. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.

IN WITNESS WHEREOF, the undersigned have subscribed their names in duplicate the day and year first written above.

| ______________________________ | ______________________________ |
|---|---|
| Gregory T. Touma<br>Chief Operating Officer | Jay Cooper<br>Regional Director, Central Asia |
| Dated:____________________ | Dated:____________________ |

Exhibits:

1. (Title) Position Description

# COUNTERPART INTERNATIONAL

1200 Eighteenth Street, NW ~ Suite 1100 ~ Washington, DC 20036-2561
Tel: 202 296-9676 Fax: 202 296-9679 email: info@counterpart.org website: www.counterpart.org

OFFICERS
Elizabeth B. Silverstein, President
Lelei LeLaulu, Vice President
Lee N. Steiner, Esq, Secretary
Dr. Bryant George, Treasurer
Stanley W. Hosie, Chief Executive Officer
Gregory T. Touma, Chief Operating Officer

BOARD OF DIRECTORS
Elizabeth B. Silverstein, Chairperson/Founder
John H. Costello, President, CNFA
Perry Eaton, Alyeska Pipeline Services, Co.
Charles Eddy, President, Eddy Associates, Inc.
Dr. Bryant George, Clergyman
Eva Haller, UCSB Foundation
Stanley W. Hosie, Chief Executive Officer
John A. Hoyt, President, ERC
Paul G. Irwin, President/CEO, HSUS
Lelei LeLaulu, VP, Counterpart International
Janice Manley, Motion Picture Executive
Mark Silverstein, Dir., Corp. Fnd. Rel., ARCGNY
Lee N. Steiner, Esq, Attorney, Loeb and Loeb

INTERNATIONAL ADVISORY BOARD
Fred Brumbaugh, Second National Bank Corp
Hon. Frank C. Carlucci, Carlyle Group
Brenda Broz Eddy, Eddy Associates, Inc.
Takashi Endo, President, TE Concepts
Yoel Haller, MD
Mariette Hartley, Actress, Author
James M. Keegan, MD
Mary Barden Keegan, Houston End Hunger Network
Eamon M. Kelly, PhD, Nat'l Science Foundation
Irina Kozyrev, Founder, Russian Care
Raymond Liesegang, VC, Standard Parking West
Josephine Lyons, Producer/Writer
Hon. La'ulu Fetaui Mata'afa, President, National Council of Women, Samoa
Hon. Shellyn G. McCaffrey, McCaffrey-Braley, Inc
Mervyn Meggitt, PhD, Anthropologist
Hon. Cranwell Montgomery, Baker-Worthington
Sally Montgomery-Brumbaugh, USAID, Retired
Lewis Perinbam, Commonwealth of Learning
Jose Ramos-Horta, Nobel Laureate
Gordon Riess, Intercontinental Enterprises
Harvey Silver, Exec. VP, Hobart West Group
Tom Spencer, President, Public Focus Limited
Margaret Taylor, International Finance Corp.
Randal C. Teague, Vorys, Sater, Seymore & Pease
Sharon B. Webster, PhD, A.A. Global Financial, Inc

August 25, 2000

DEPOSITION EXHIBIT
4
Reporter: Joseph Inabnet
Witness: Cooper
Date: 1/4/06

Mr. Jay W. Cooper
2431 Pinebrook Circle
Medford, OR 97504

Dear Jay:

Subject to the terms and conditions outlined below ("Agreement"), Counterpart is pleased to renew your position as Regional Director for the Counterpart Consortium Program for Civil Society and NGO Development and other similar programs in Central Asia (the "Programs"). The position is based in Almaty, Kazakhstan and includes oversight for a regional network of civil society support centers in Kazakhstan, Kyrgyzstan, Tajikistan, Turkmenistan, and Uzbekistan (collectively "Central Asia"). The Position is supervised by Counterpart's Senior Vice President for Programs, and requires you to reside in Almaty, Kazakhstan.

The Position is a full-time salaried position, for which you will earn $3,437.5 semi-monthly, ($82,500 annually) payable on the 15th and the 30th day of each month. In addition, you will receive a housing allowance of $15,000.00 annually.

The term of your employment shall be thirty-six (36) months, and shall begin on April 1, 2000 and end March 31, 2003, unless terminated earlier as provided below. The term of your employment shall be subject to a renewal, at the sole discretion of Counterpart. Counterpart agrees to pay all fees required by Kazakhstan law in order to effectuate the receipt of the necessary work authorization, resident visa or other requirements necessary for you to lawfully reside and work in Kazakhstan.

You are expected to comply with the procedures outlined in Counterpart's Manual for Overseas Employees ("Overseas Manual"), including without limitation the time sheet procedure. In addition, as a regular full-time employee of Counterpart, you will be eligible to participate in the same benefits offered to all regular full time employees, including, among others, health insurance, paid holidays, vacation time and sick leave. These benefits are described more fully in Counterpart's Overseas Manual. Please direct any questions on policies or procedures to the Human Resources Director.

In addition to standard benefits outlined above and in Counterpart's Overseas Manual, you are eligible to receive: a) reimbursement of educational expenses for dependent children, not to exceed $11,000 a year; and b) in the second year, in addition to the *rest and recuperation allowance*, a consultation visit to Counterpart Headquarters for which Counterpart will reimburse actual airfare costs and per diem expenses for time spent in the US on Counterpart business, up to a total of $3,000, contingent upon availability of funds. These benefits are provided with the understanding that reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

Via your acceptance of this document, you agree to competently perform your responsibilities

Founded in 1965 as The Foundation for the Peoples of the South Pacific
Tax exempt under Internal Revenue Tax Code Section 501 (c)(3)
Member of IUCN

CP0048

as set forth in the job description for the Position which will be provided to you under separate cover, as Exhibit 1, as well as any other responsibilities which may be assigned from time to time by Counterpart. It is understood that you shall provide Counterpart with all necessary reports, both programmatic and financial, as required by the Program or Counterpart, as well as a personal written evaluation of the Program within twenty (20) days after expiration of the term of your employment. Upon separation from employment with Counterpart and if requested by Counterpart, you agree to visit Counterpart headquarters, at Counterpart's expense, to personally debrief.

This Agreement may be terminated without liability to either party in the following circumstances: 1) by Counterpart, upon fourteen (14) days notice, if funding for the Position or the Program is lost, 2) by Counterpart, immediately upon notice, if you fail to fulfill your obligations under this Agreement or fail to perform your job duties to Counterpart's satisfaction, 3) by either party, upon thirty (30) days written notice, for any lawful reason; or 4) by mutual agreement of the parties at any time.

Because there are inherent physical risks that are associated with living in Kazakhstan, it is understood that you are voluntarily assuming the risk of injury arising from environmental factors, political or civil unrest or other circumstances outside of Counterpart's control. Accordingly, we encourage you to exercise prudent caution both during and outside of working hours.

In the event a dispute arising during the term of this employment, this Agreement shall be subject to the laws of the District of Columbia where Counterpart is located and has its headquarters, and where jurisdiction lies in the event of any dispute. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.

If you are in agreement with the terms and conditions of this Agreement, please sign below to indicate your acceptance of the terms, and return the original to me. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Gregory T. Touma KMG

Gregory T. Touma
Chief Operating Officer

AGREED TO, this ____ day of August, 2000

______________________________

Jay Cooper

Cc: Arlene Lear, Senior Vice President for Programs
Kate Gottschall, Human Resources Director

January 26, 2001

Mr. Jay W. Cooper
2431 Pinebrook Circle
Medford, OR 97504

Dear Jay:

Subject to the terms and conditions outlined below ("Agreement"), Counterpart is pleased to renew your position as Regional Director for the Counterpart Consortium Program for Civil Society and NGO Development and other similar programs in Central Asia (the "Programs"). The position is based in Almaty, Kazakhstan and includes oversight for a regional network of civil society support centers in Kazakhstan, Kyrgyzstan, Tajikistan, Turkmenistan, and Uzbekistan (collectively "Central Asia"). The Position is supervised by Counterpart's Senior Vice President for Programs, and requires you to reside in Almaty, Kazakhstan.

The Position is a full-time salaried position, for which you will earn $3,437.5 semi-monthly, ($82,500 annually) payable on the 15th and the 30th day of each month. In addition, you will receive a housing allowance of $15,000.00 annually.

The term of your employment shall be thirty-six (36) months, and shall begin on April 1, 2000 and end March 31, 2003, unless terminated earlier as provided below. The term of your employment shall be subject to a renewal, at the sole discretion of Counterpart. Counterpart agrees to pay all fees required by Kazakhstan law in order to effectuate the receipt of the necessary work authorization, resident visa or other requirements necessary for you to lawfully reside and work in Kazakhstan.

You are expected to comply with the procedures outlined in Counterpart's Manual for Overseas Employees ("Overseas Manual"), including without limitation the time sheet procedure. In addition, as a regular full-time employee of Counterpart, you will be eligible to participate in the same benefits offered to all regular full time employees, including, among others, health insurance, paid holidays, vacation time and sick leave. These benefits are described more fully in Counterpart's Overseas Manual. Please direct any questions on policies or procedures to the Human Resources Director.

In addition to standard benefits outlined above and in Counterpart's Overseas Manual, you are eligible to receive reimbursement of educational expenses for dependent children as follows: in the year ending March 31, 2001, Counterpart will provide reimbursement for actual educational expenses for your son, up to $4,500, and up to $11,000 for your daughter. In all subsequent years of employment through March 31, 2003, Counterpart will provide reimbursement for actual educational expenses up to $10,000 per child per year. In each year of employment though March 31, 2003, Counterpart will provide an annual *rest and recuperation allowance* for you and your family of up to $5,000. These benefits are provided with the understanding that reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

CP0042

DEPOSITION EXHIBIT
5
Reporter: Joseph Inabnet

Via your acceptance of this document, you agree to competently perform your responsibilities as set forth in the job description for the Position which will be provided to you under separate cover, as Exhibit 1, as well as any other responsibilities which may be assigned from time to time by Counterpart. It is understood that you shall provide Counterpart with all necessary reports, both programmatic and financial, as required by the Program or Counterpart, as well as a personal written evaluation of the Program within twenty (20) days after expiration of the term of your employment. Upon separation from employment with Counterpart and if requested by Counterpart, you agree to visit Counterpart headquarters, at Counterpart's expense, to personally debrief.

This Agreement may be terminated without liability to either party in the following circumstances: 1) by Counterpart, upon fourteen (14) days notice, if funding for the Position or the Program is lost, 2) by Counterpart, immediately upon notice, if you fail to fulfill your obligations under this Agreement or fail to perform your job duties to Counterpart's satisfaction, 3) by either party, upon thirty (30) days written notice, for any lawful reason; or 4) by mutual agreement of the parties at any time.

Because there are inherent physical risks that are associated with living in Kazakhstan, it is understood that you are voluntarily assuming the risk of injury arising from environmental factors, political or civil unrest or other circumstances outside of Counterpart's control. Accordingly, we encourage you to exercise prudent caution both during and outside of working hours.

In the event a dispute arising during the term of this employment, this Agreement shall be subject to the laws of the District of Columbia where Counterpart is located and has its headquarters, and where jurisdiction lies in the event of any dispute. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.

If you are in agreement with the terms and conditions of this Agreement, please sign below to indicate your acceptance of the terms, and return the original to me. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Helen Benz
Chief Financial Officer

AGREED TO, this ____ day of January, 2001

______________________________

Jay Cooper

Cc: Arlene Lear, Senior Vice President for Programs
Kate Gottschall, Human Resources Director



# COUNTERPART International

Member of the Counterpart Global Network

1200 Eighteenth Street, NW Suite 1100 Washington, DC 20036 Tel: [1] 202.296.9676 Fax: [1] 202.296.9679

BOARD OF DIRECTORS
Elizabeth B. Silverstein, Founder and Honorary Chair
Stanley W. Hosie, Chairman
Lelei LeLaulu, President and CEO
Bryant George, Secretary
Sally M. Brumbaugh, Advisory Committee on Voluntary Foreign Aid
Perry Eaton, Alyeska Pipeline Service Co.
Charles Eddy, President, CEI Resources
Eva Haller, USBC Foundation
John A. Hoyt, Commissioner, Earth Charter
Lekha Singh, i2 Foundation/AidMatrix
Paul G. Irwin, President and CEO, The Humane Society of the U.S.
David M. Sloan, Scowcroft Group
Eamon M. Kelly, Chairman, National Science Foundation
Barbara Pyle, Journalist and Filmmaker
Mark Silverstein, Skin Cancer Foundation

INTERNATIONAL ADVISORY COUNCIL
Linda Brolly Hathaway, Photographer, Indigenous Tribes
Brenda Broz Eddy, Eddy Associates, Inc.
Alexandra Cousteau, Oceans Advocate
James G.P. Dehlsen
Elizabeth Dowdeswell, Nuclear Waste Management Organization
Senator J. Kalani English, State of Hawaii
Cary Fields, President, We Media
Yoel Haller, M.D.
Hon. Jose Ramos-Horta, Nobel Laureate
Amb. James Joseph, Duke University
Craig Kielburger, Free the Children
Mary Lewis, Jane Goodall Institute
Raymond Liesegang, Standard Parking West
Idelisse Malave, Executive Director, Tides Foundation
Rose Marshall, Media Consultant
Hon. Cranwell Montgomery, Baker-Worthington
Victoria Stack, Environmentalist
Randal C. Teague, Vorys, Sater, Seymore, & Pease
Melanne Verveer, Chair of the Board, Vital Voice Global Partnership

OFFICERS
Elizabeth B. Silverstein, Honorary Chair for Life
Stanley W. Hosie, Chairman of the Board
Lelei LeLaulu, President and CEO
Harry Dorcus, Treasurer
Bryant George, Secretary
Arlene Lear, Senior Vice President
Raymond Chavez, Vice President
Don Fell, Vice President
Brian Propp, Vice President

September 24, 2003

Mr. Jay W. Cooper
2431 Pinebrook Circle
Medford, OR 97504

Dear Jay:

Subject to the terms and conditions outlined below ("Agreement"), Counterpart is pleased to renew your position as Regional Director for the Counterpart Consortium Program for Civil Society and NGO Development and other similar programs in Central Asia (the "Programs"). The position is based in Almaty, Kazakhstan and includes oversight for a regional network of civil society support centers in Kazakhstan, Kyrgyzstan, Tajikistan, Turkmenistan, and Uzbekistan (collectively "Central Asia"). The Position is supervised by Counterpart's Senior Vice President for Programs, and requires you to reside in Almaty, Kazakhstan.

The Position is a full-time salaried position, for which you will earn $4,055.15 semi-monthly, ($97,323.60 annually) payable on the 15th and the 30th day of each month. In addition, you will receive a housing allowance of $1,600.00 per month ($19,200.00 annually).

The term of your employment shall be thirty-six (36) months, and shall begin on July 1, 2003, and end June 30, 2006, unless terminated earlier as provided below. The term of your employment shall be subject to a renewal, at the sole discretion of Counterpart. Counterpart agrees to pay all fees required by Kazakhstan law in order to effectuate the receipt of the necessary work authorization, resident visa or other requirements necessary for you to lawfully reside and work in Kazakhstan.

You are expected to comply with the procedures outlined in Counterpart's Manual for Overseas Employees ("Overseas Manual"), including without limitation the time sheet procedure. In addition, as a regular full-time employee of Counterpart, you will be eligible to participate in the same benefits offered to all regular full time employees, including, among others, health insurance, paid holidays, vacation time and sick leave. These benefits are described more fully in Counterpart's Overseas Manual. Please direct any questions on policies or procedures to the Human Resources Director.

In addition to standard benefits outlined above and in Counterpart's Overseas Manual, you are eligible to receive reimbursement of educational expenses for dependent children as follows: In all years of employment through June 30, 2006, Counterpart will provide reimbursement for actual educational expenses up to $10,000 per child per year. In each year of employment though June 30, 2006, Counterpart will provide an annual *rest and recuperation allowance* for you and your family of up to $5,000. These benefits are provided with the understanding that reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

CP0037

DEPOSITION EXHIBIT
6
Reporter: Joseph Inabnet
Cooper
1/4/06

Via your acceptance of this document, you agree to competently perform your responsibilities as set forth in the job description for the Position which will be provided to you under separate cover, as Exhibit 1, as well as any other responsibilities which may be assigned from time to time by Counterpart. It is understood that you shall provide Counterpart with all necessary reports, both programmatic and financial, as required by the Program or Counterpart, as well as a personal written evaluation of the Program within twenty (20) days after expiration of the term of your employment. Upon separation from employment with Counterpart and if requested by Counterpart, you agree to visit Counterpart headquarters, at Counterpart's expense, to personally debrief.

This Agreement may be terminated without liability to either party in the following circumstances: 1) by Counterpart, upon fourteen (14) days notice, if funding for the Position or the Program is lost, 2) by Counterpart, immediately upon notice, if you fail to fulfill your obligations under this Agreement or fail to perform your job duties to Counterpart's satisfaction, 3) by either party, upon thirty (30) days written notice, for any lawful reason; or 4) by mutual agreement of the parties at any time.

Because there are inherent physical risks that are associated with living in Kazakhstan, it is understood that you are voluntarily assuming the risk of injury arising from environmental factors, political or civil unrest or other circumstances outside of Counterpart's control. Accordingly, we encourage you to exercise prudent caution both during and outside of working hours.

In the event a dispute arising during the term of this employment, this Agreement shall be subject to the laws of the District of Columbia where Counterpart is located and has its headquarters, and where jurisdiction lies in the event of any dispute. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.

If you are in agreement with the terms and conditions of this Agreement, please sign below to indicate your acceptance of the terms, and return the original to me. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Harry Dorcus
Chief Financial Officer

AGREED TO, this ____ day of ________________, 2003

_______________________________________
Jay Cooper

Cc: Arlene Lear, Senior Vice President
Kelli Boyer, Human Resources Manager

# COUNTERPART International

Member of the Counterpart Global Network

*1200 Eighteenth Street, NW Suite 1100 Washington, DC 20036 Tel: [1] 202.296.9676 Fax: [1] 202.296.9679*

**BOARD OF DIRECTORS**
Elizabeth B. Silverstein, Founder and Honorary Chair
Stanley W. Hosie, Chairman
Lelei LeLaulu, President and CEO
Bryant George, Secretary
Sally M. Brumbaugh, Advisory Committee on Voluntary Foreign Aid
Perry Eaton, Alyeska Pipeline Service Co.
Charles Eddy, President, CEI Resources
Eva Haller, USBC Foundation
John A. Hoyt, Commissioner, Earth Charter
Lekha Singh, i2 Foundation/AidMatrix
Paul G. Irwin, President and CEO, The Humane Society of the U.S.
David M. Sloan, Scowcroft Group
Eamon M. Kelly, Chairman, National Science Foundation
Barbara Pyle, Journalist and Filmmaker
Mark Silverstein, Skin Cancer Foundation

**INTERNATIONAL ADVISORY COUNCIL**
Linda Brolly Hathaway, Photographer, Indigenous Tribes
Brenda Broz Eddy, Eddy Associates, Inc.
Alexandra Cousteau, Oceans Advocate
James G.P. Dehlsen
Elizabeth Dowdeswell, Nuclear Waste Management Organization
Senator J. Kalani English, State of Hawaii
Cary Fields, President, We Media
Yoel Haller, M.D.
Hon. Jose Ramos-Horta, Nobel Laureate
Amb. James Joseph, Duke University
Craig Kielburger, Free the Children
Mary Lewis, Jane Goodall Institute
Raymond Liesegang, Standard Parking West
Idelisse Malave, Executive Director, Tides Foundation
Rose Marshall, Media Consultant
Hon. Cranwell Montgomery, Baker-Worthington
Victoria Stack, Environmentalist
Randal C. Teague, Vorys, Sater, Seymore, & Pease
Melanne Verveer, Chair of the Board, Vital Voice Global Partnership

**OFFICERS**
Elizabeth B. Silverstein, Honorary Chair for Life
Stanley W. Hosie, Chairman of the Board
Lelei LeLaulu, President and CEO
Harry Dorcus, Treasurer
Bryant George, Secretary
Arlene Lear, Senior Vice President
Raymond Chavez, Vice President
Don Fell, Vice President
Brian Propp, Vice President

November 25, 2003

Mr. Jay W. Cooper
2431 Pinebrook Circle
Medford, OR 97504

Dear Jay:

Subject to the terms and conditions outlined below ("Agreement"), Counterpart is pleased to renew your contract as Chief of Party (COP) for the Civil Society Support Initiative, the Healthy Communities Program in Central Asia, and other similar projects which may develop during your tenure, as agreed upon with Arlene Lear, Senior Vice President and your direct supervisor. The Position requires you to reside in Almaty, Kazakhstan and assumes travel throughout the region.

The Position is a full-time and salaried, for which you will earn $4,055.15 semi-monthly, ($97,323.60 annually) payable on the 15th and the 30th day of each month. In addition, you will receive a housing allowance of $1,600.00 per month ($19,200.00 annually), and a Representational Allowance of $1,200 per year. You will also receive a 5% merit bonus ($4,866.18) for your commitment to maintaining Counterpart's reputation and competitiveness in Central Asia.

The term of your employment shall be thirty-six (36) months, and shall begin on July 1, 2003, and end June 30, 2006, unless terminated earlier as provided below. The term of your employment shall be subject to a renewal, at the sole discretion of Counterpart. Counterpart agrees to pay all fees required by Kazakhstan law in order to effectuate the receipt of the necessary work authorization, resident visa or other requirements necessary for you to lawfully reside and work in Kazakhstan.

You are expected to comply with the procedures outlined in Counterpart's Manual for Overseas Employees ("Overseas Manual"), including without limitation the time sheet procedure. In addition, as a regular full-time employee of Counterpart, you will be eligible to participate in the same benefits offered to all regular full time employees, including, among others, health insurance, paid holidays, vacation time and sick leave. These benefits are described more fully in Counterpart's Overseas Manual. Please direct any questions on policies or procedures to the Human Resources Director.

In addition to standard benefits outlined above and in Counterpart's Overseas Manual, you are eligible to receive reimbursement of educational expenses for dependent children as follows: In all years of employment through June 30, 2006, Counterpart will provide reimbursement for actual educational expenses up to $12,000 per child per year. These benefits are provided with the understanding that reimbursement of expenses is subject to compliance with Counterpart's documentation and reporting requirements.

Via your acceptance of this document, you agree to competently perform your responsibilities

as set forth in the job description for the Position which will be provided to you under separate cover, as Exhibit 1, as well as any other responsibilities which may be assigned from time to time by Counterpart. It is understood that you shall provide Counterpart with all necessary reports, both programmatic and financial, as required by the Program or Counterpart, as well as a personal written evaluation of the Program within twenty (20) days after expiration of the term of your employment. Upon separation from employment with Counterpart and if requested by Counterpart, you agree to visit Counterpart headquarters, at Counterpart's expense, to personally debrief.

This Agreement may be terminated without liability to either party in the following circumstances: 1) by Counterpart, upon fourteen (14) days notice, if funding for the Position or the Program is lost, 2) by Counterpart, immediately upon notice, if you fail to fulfill your obligations under this Agreement or fail to perform your job duties to Counterpart's satisfaction, 3) by either party, upon thirty (30) days written notice, for any lawful reason; or 4) by mutual agreement of the parties at any time.

Because there are inherent physical risks that are associated with living in Kazakhstan, it is understood that you are voluntarily assuming the risk of injury arising from environmental factors, political or civil unrest or other circumstances outside of Counterpart's control. Accordingly, we encourage you to exercise prudent caution both during and outside of working hours.

In the event a dispute arising during the term of this employment, this Agreement shall be subject to the laws of the District of Columbia where Counterpart is located and has its headquarters, and where jurisdiction lies in the event of any dispute. This Agreement may be modified, amended, extended or renewed only by the express written agreement of the parties.

If you are in agreement with the terms and conditions of this Agreement, please sign below to indicate your acceptance of the terms, and return the original to me. If you have any questions or concerns, please do not hesitate to contact me.

Very truly yours,

Harry C. Dorcus
Vice President, Finance and Administration

AGREED TO, this ____ day of ________________, 2003

_______________________________________
Jay Cooper

Cc: Arlene Lear, Senior Vice President
Kelli Boyer, Human Resources Manager
Maria Stoneham, Finance