**EXHIBIT L**

## DECLARATION OF ARLENE LEAR

1. My name is Arlene Lear. I am over 18 years of age and have personal knowledge of the facts contained in this declaration.

2. I am employed by Counterpart International ("Counterpart") as the Senior Vice President in Counterpart's Washington D.C. office.

3. Counterpart is a nonprofit development organization that manages a variety of development projects around the world. Counterpart is organized into several program divisions, including the Civil Society Division which has developed and overseen all civil society support projects in the Central Asian Republics since 1994.

4. I have overseen all civil society support programs, including Civil Society Support Initiative and the Healthy Communities Program, since inception.

5. I have final authority over all Counterpart personnel for civil society support programs, including hiring and firing of employees, negotiating employee contracts, and reviewing employee job performance.

6. In 2004, Jay Cooper served under my supervision as Chief of Party for the Civil Society Support Initiative and the Healthy Communities Program. His responsibilities included effective implementation of program goals, objectives, and related results indicators for each program.

7. Cooper was based in Counterpart's Almaty Office in Kazakhstan.

8. In 2004, several expatriate employees working with Cooper in Almaty reported to me that Cooper was ineffective as a leader. In the past, I had discussed with Cooper on occasion his need to improve as a leader and reduce his defensiveness regarding other employees.

9. When I visited Cooper in the Spring of 2004, I perceived that he was not adequately transmitting to key project staff the overall vision of the program. I also felt Cooper was distracted and unfocused.

10. I also perceived the general tone of the Almaty office as flat and that the local staff seemed withdrawn with little interaction with Cooper, other than to be responsive to questions.

11. In discussions with field staff, I came to believe that Cooper was inaccessible to his employees and that he often stayed behind closed doors.

12. In prior visits, I had personally witnessed Cooper being controlling and intimidating toward Counterpart employees. Cooper's managerial style and need for tight control over his staff concerned me because, in my view, this was counterproductive to Counterpart's broad mission of empowering the local individuals, institutions and communities where Counterpart focused its work.

13. I also observed that Cooper had inefficiently structured Counterpart programs so that all administrative functions had been placed under his direct authority and supervision. I believed he was too engrossed in minor administrative tasks.

14. I believed Cooper's consolidation of administrative functions under his direct supervision diverted him from his primary responsibilities as a leader, and that his management approach compromised Counterpart's ability to achieve program goals.

15. I concluded Cooper was failing to effectively implement the objectives of Counterpart's programs and I felt compelled to revisit his management structure and job responsibilities.

16. I decided it would be beneficial to place Cooper under the direct supervision of Regional Director Michael Kunz, who was assigned to oversee all of Counterpart's expatriate employees working in Central Asia.

17. During a professionally facilitated meeting in Washington, D.C. on August 18, 2004, which included myself, Cooper and Mr. Kunz, I explained to Cooper the management changes that I intended to implement. During the meeting, I also decided to shift some of Cooper's administrative duties to Bob Abma, who was Counterpart's Director of Finance and had at one time been Director of Finance and Administration under Cooper. Cooper on several occasions expressed his desire to leave Counterpart due to discomfort with the new management structure at the field level.

18. Relying on the professional facilitator at the meeting, Barbara Sloan, I sought to give Cooper an opportunity to voice his concerns and to seek a resolution that would be acceptable to all persons involved while also serving the needs of the organization. I agreed to give Cooper some time to think about the new management structure and determine whether he wanted to continue his role at Counterpart.

19. I was concerned about Cooper's performance, but I encouraged Cooper to remain in the hope that he could work cooperatively under the new management structure and offered him a liberal separation agreement should he decide to separate from Counterpart. I proposed a timetable for him to decide whether separation would be the best option.

20. I am aware that, on October 4, 2004, Cooper e-mailed then-Human Resources Manager, Kelli Boyer, to discuss a possible departure from Counterpart. In

3

response, I agreed that Ms. Boyer would address Cooper's request on a trip she was planning to take to Almaty in late-October, early-November.

21. I believed Ms. Boyer did a good job handling personnel issues and I trusted her ability to investigate employee performance issues and report back accurately to me.

22. Ms. Boyer reported that Cooper was behaving erratically and indicating his desire to leave Counterpart, only to change his mind shortly thereafter. She said Cooper described work-related problems with Mr. Abma, but that he refused to participate in an arranged mediation because it was scheduled to take place in Mr. Kunz's office. Ms. Boyer informed me that Cooper screamed at her, "I will not meet with Michael."

23. Ms. Boyer reported that Cooper said he could not work within the current organizational structure, and that he felt it was time to move on. She relayed that Cooper refused the option to work as a consultant so long as Mr. Kunz was his supervisor.

24. Ms. Boyer finally reported that Cooper stated he would perform the bare minimum of his job responsibilities until the expiration of his contract in 2006.

25. I felt that Cooper's applying only minimal effort to his job responsibilities was unacceptable, especially when, in my opinion, he had been failing to fulfill his leadership responsibilities for some time.

26. Cooper's behavior towards Ms. Boyer and his refusal to meet with Counterpart staff also led me to believe he was no longer a good fit at Counterpart.

27. Because of Cooper's on-going performance deficiencies, I felt I had no choice but to terminate his employment.

28. On November 12, 2004, I terminated Cooper's employment out of dissatisfaction with his job performance.

29. The contract executed on December 21, 2003 was in effect at the time of Cooper's termination.

30. At the time of Cooper's termination, it was standard Counterpart practice to request that the terminated employee leave his or her office. It also was standard practice to retrieve the employee's office keys and lock up the employee's computer. It was an additional practice not to allow the terminated employee to return to Counterpart offices except in the presence of designated personnel. As with many organizations, Counterpart informs other Counterpart staff of an employee's departure.

31. The only exception to the above practices that I am aware of is when Counterpart terminates employees as part of a reorganization or a loss of position due to a lack of available grant funds, neither of which was the case with Cooper.

32. In my conversations with Cooper about Mr. Kunz, he waivered between expressing admiration or resentment for Mr. Kunz' communication and management style. He also on more than one occasion mentioned letters of complaint he had gathered from Mr. Kunz's staff.

33. I did not ask him about financial irregularities, nor did the subject of financial irregularities ever arise.

34. At no time did I believe Cooper possessed information about financial irregularities nor did I believe Cooper ever intended to report financial irregularities.

35. Cooper never expressed to me that he intended to report financial irregularities to Counterpart management or government authorities.

I, Arlene Lear, declare under penalty of perjury that the foregoing paragraphs are true and correct.

Dated: January 12, 2007

_____
Arlene Lear