UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 05-1598 (RMC-JMF) |
| COUNTERPART INTERNATIONAL, | ) |
|     Defendant. | ) |

**DECLARATION OF OWEN GOLDFARB**

I, Owen Goldfarb, depose and declare as follows, based on my personal knowledge, for use in the captioned case.

1. I am currently the director of the Local Government Assistance Project at the State University of New York at Albany's Rockefeller College of Public Affairs and Policy. I have over thirty years of experience in local governance, NGO development, and community development, with extensive international experience including SRI International in China, and USAID projects in Bosnia, Kazakhstan, Poland, Russia, and Turkmenistan.

2. I first met Jay Cooper in 2000 when I was working in Almaty, Kazakhstan as Resident Advisor for the USAID Local Government Initiative and he relocated there to replace David Smith as Counterpart International's regional director. He was based in Counterpart's Almaty office and our daughters attended school together. We became professional colleagues and personal friends.

3. Jay's dedication, enthusiasm, respect, and aspirations for Counterpart's efforts in Central Asia, and the Counterpart team, were as energizing they were inspiring. I learned that Jay had, essentially, been in Central Asia since in early 1990's. I often sought Jay's advice on matters related to Central Asia, USAID, and international development.

4. After I left Kazakhstan in mid 2001, Jay and I corresponded regularly while I was working on a community building partnership in seven municipalities around Benton Harbor, Michigan to develop inter-municipal plans, devise funding strategies, and develop community-based leadership.

5. As the Benton Harbor project ended, Jay and I discussed the possibility of a similar "coaching and mentoring" effort in Turkmenistan where I would collaborate with Counterpart's acting country director, a Turkmen national named Yazgylych Charyev. The plan was that I would act not as a co-director, but as an advisor. Jay was clear that his hope was to provide Mr. Charyev with personal and professional development opportunities without diluting his stature or authority. On the day that Jay and I arrived in Ashgabat, Jay announced that Mr. Charyev, who had been "acting" country director, had been made permanent country director.

6. I was impressed, and delighted, by Jay's foresight and willingness to devote resources to supporting and developing indigenous leadership. I was also looking forward to working with Jay because of his reputation for professional competency and cultural acumen.

7. I have been told by Jay's counsel that a witness in this case has testified that she was told by several members of Jay's staff that Jay was overly controlling and intimidating to the staff. That reported conduct is contrary to my recollections of Jay's working style in Counterpart's office in Turkmenistan. Jay had spent years working shoulder-to-shoulder with many of the regional office and country staff throughout Central Asia. In Turkmenistan I saw him enthusiastically greeted and welcomed into after work casual gatherings. Women staff members often greeted him with hugs, a highly unusual act in that culture, and a clear indication to me of their comfort with Jay. During that period, Jay was preparing Counterpart's proposal for the renewal of its CSSI Cooperative Agreement. Although preoccupied with the scope and importance of the proposal, Jay continued to exhibit his good nature, good humor, and professional demeanor during a most stressful and trying time. Given all the pressures of continuing the daily routine and writing the proposal, I do not recall Jay as being short of patience, grumpy, or ill humored.

8. Jay's counsel told me that the same witness reported that some members of Jay's staff who were country nationals felt that Jay did not do enough to empower them or encourage their professional development. That, of course, is inconsistent with the efforts Jay made to engage my services to develop and mentor Mr. Charyev in Turkmenistan. It is also inconsistent with an effort that I undertook, supported by Jay, to work with a Turkmen colleague to collect the views of each staff person in the Ashgabat hub and regional offices in Turkmenistan about who they are, how they felt about their work, how they felt about the team, and what they would like to be different. This report was shared with Mr. Charyev and the Turkmenistan staff.

9. As part of my advisory, I worked with the financial staff in Almaty and I became acquainted with Bob Abma, first through the controls, procedures, and manuals he devised for the country offices, and then in person. Bob was responsible for disbursing and accounting for hundreds of thousands of dollars of cash in a porous and unregulated setting. I was impressed by the systems that he developed and took the effort to get to know him better, both professionally and personally. I now consider Bob to be a good friend.

10. It was not unknown that Bob and Jay had their differences. To this day, I'm still not sure I know what those differences were or how they came about. Bob and I talked openly about many subjects; I do not recall him mentioning his relationship with Jay or complaining about Jay. Although I discussed financial management issues with Jay and learned that Jay and Bob had not always agreed, my recollections are that the discussions with Jay were about substance, not personalities. I do not recall Jay referring to Bob's sexual orientation or personal life. I did not know Bob's sexual orientation until Bob mentioned his partner in passing.

11. Jay's departure from Counterpart came as a surprise. I gathered that he had left sometime in the late fall of 2004, but I did not learn more until January 2005 at a get-together in Philadelphia for a friend from Almaty.

12. Later that year, Jay began to be somewhat more forthcoming, although still guarded, about his separation from Counterpart. He seemed puzzled, dismayed, and hurt. More profoundly, he grieved the loss of years of dedication, collegiality, friendship, and mutual respect with both the Washington-based administration and the Central Asian regional team.

13. I provided Jay some leads for jobs in the international development field at his request. Apparently none turned into an employment opportunity for him.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 23 August 2006

*(signature)*
Owen Goldfarb