## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAY W. COOPER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) |
| **COUNTERPART INTERNATIONAL,** | ) |
| | ) |
| Defendant. | ) |

### Declaration of Stephen J. Larrabee

1) I, Stephen J. Larrabee, depose and swear as follows for use in the case of Cooper V. Counterpart pending in federal court in the District of Columbia.  I make the statements below based on my personal knowledge.

2) During June of 2004 until June of 2006 I worked as the Regional Director in Central Asia for the International Center for not-for-profit Law (ICNL). ICNL was a sub-contractor on a civil society project to Counterpart International. Both Jay Cooper and I worked in the same office in Almaty, Kazakhstan from June 2004 until November of 2004.

3) As part of my job as Regional Director for ICNL, I interfaced with Mr. Cooper and the Counterpart staff in the Almaty office on a daily basis. Since Counterpart was our prime, I was responsible for reporting program details, objectives and activities to Mr. Cooper. I found Mr. Cooper to be a very competent, insightful individual who was extremely easy to work with and who always found time to discuss program matters. Anytime I stopped by his office, his door was open and he welcomed me in and took the time to talk about any issues I had.

4) Mr. Cooper was enthusiastic about the program he was helping to manage and, as far as I could tell, always had the program goals in mind. He worked hard to accomplish the objectives of the program.

5) I also attended meetings with Mr. Cooper at USAID where he conducted himself in an extremely professional manner, providing program updates and partaking in discussions facilitated by USAID staff.

6) During my time working in the Almaty office and visiting the offices in the two other countries where ICNL was a sub-contractor to Counterpart, Kyrgyzstan and Turkmenistan, I never once heard a negative word from local staff concerning Mr.

Cooper. On the contrary, any information I received regarding Mr. Cooper, his management style, or his personality was always positive.

7) In addition, I never once witnessed an incident where, in my opinion, Mr. Cooper treated his staff inappropriately. I never once heard Mr. Cooper raise his voice or not meet with local staff to discuss a problem. On the contrary, Mr. Cooper always seemed positive about his staff and worked to help them become better professionals.

8) On November 12th, 2004, I was told by either Bob Abma or Michael Kunz that the office would be closed for the weekend and that the ICNL staff should not come to the office. Having a responsibility to my staff and organization, I asked the reason why since we occasionally worked on the weekends. I was told that Mr. Cooper had been relieved of his duties and that they did not want anyone in the office in case Mr. Cooper decided to come to the office. They said that they thought that maybe there could be problems if Mr. Cooper did decide to come to the office.

9) When Mr. Cooper was relieved of his duties I was surprised and saddened to see him go. We had an excellent working relationship and I respected him as a colleague and partner on our mutual project.

I declare under penalty of perjury that foregoing it true and correct.

_____          02/05/07          ADA  OH
Stephen J. Larrabee                Date              Place