UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 05-1598 (RMC-JMF) |
| COUNTERPART INTERNATIONAL, | ) ) ) |
| Defendant. | ) ) |

### DECLARATION OF SUSAN KOSINSKI FRITZ

Susan Kosinski Fritz, being duly sworn, declares as follows:

1. I have personal knowledge of the matters set forth in this Declaration, and if called as a witness I could and would competently testify to them. I submit this Declaration in support of Jay Cooper's Opposition to Defendant's Motion for summary Judgment.

2. I am a United States Agency for International Development Regional Democracy Officer for Europe and Eurasia, based in Sofia, Bulgaria.

3. Between June of 2001 and July of 2005, I held the position of Director of the Office of Democracy and Conflict Mitigation in the United States Agency for International Development's Mission for the Central Asia Region, based in Almaty, Kazakhstan. As such I had supervisory responsibility over the Cognizant Technical Officer (CTO) who managed the project known as the Civil Society Support Initiative (CSSI) which was being conducted by Counterpart International under a Cooperative Agreement with USAID.

4. In that capacity I came to learn of Jay Cooper who was managing CSSI for Counterpart. It is my opinion, and the opinion of those who reported to me as they expressed their opinions to me from time to time, that Jay Cooper was a solid manager of the CSSI project.

5. In November of 2004 Igor Tupitsyn, the CTO for the CSSI project, received a telephone call from Jay Cooper telling him that he had been fired by Counterpart.

6. Jay requested to meet with Igor Tupitsyn and me, and we did so on two separate occasions, once including John Griffin, the Contracting Officer, and once with only Igor and me. Although I cannot distinguish what happened at which meeting, in general I can say that Jay was extremely upset. He told us that he did not know why he had been fired. He also told us that Counterpart had locked him out of his office and barred him from all of Counterpart's offices in the region. I did not believe that Jay had been treated fairly by Counterpart given that he had worked for Counterpart for so long, and that to be locked out of the office after ten years of service seemed excessive. I was shocked. I told Jay that I would be willing to write him a letter of recommendation for future jobs if it would be helpful

7. Either during those meetings or in his telephone call to Igor Tupitsyn, Jay discussed some financial matters that he had expressed concern about related to Counterpart. More specifically, he raised questions about Counterpart allocating CSSI grant funds for new project development elsewhere in the region. In addition, I remember that during one of the meetings he showed us some documents that contained

complaints from staff members about the temperament of Michael Kunz, with whom Jay expected Counterpart would replace him.

8.　After Counterpart formally nominated Michael Kunz to take over for Jay Cooper, Igor Tupitsyn followed up with discussions with several Counterpart and partner organization staff to determine whether we should be concerned about Michael Kunz's temperament. Michael Kunz continued as Chief of Party for CSSI beyond an initial trial period and we did not find problems with his temperament during the management of CSSI while I was the Director of the Office of Democracy and Conflict Mitigation.

9.　Regarding CSSI, at least during the time that I was in Central Asia, the change in Chief of Party from Jay Cooper to Michael Kunz, in my opinion, did not significantly alter the impact of CSSI in either direction.

10.　I have been told by Jay Cooper's counsel that it has been reported that George Deikun has voiced criticism of Jay Cooper. I have heard that George Deikun thought that Jay could be a better, stronger advocate for the NGO sector more broadly. I believe that Mr. Deikun's impression was based more on Jay's public persona at public meetings and conferences than on his management of the project per se, because George Deikun did not manage projects such as CSSI on a day-to-day basis. As someone who was more familiar with the CSSI project on a day-to-day basis, I thought that Jay Cooper was an effective manager of the CSSI project.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____    _____
Susan Kosinski Fritz    Executed at    2/12/07 Date