**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAY W. COOPER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 1:05-cv-01598-RMC |
| | ) | |
| COUNTERPART INTERNATIONAL | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S REQUEST FOR ADMISSIONS**

Defendant Counterpart International ("Counterpart") responds to plaintiff's request for admissions as follows:

**General Objections and Responses**

1.      Counterpart has made good faith efforts to respond to plaintiff's requests for admissions.  Counterpart reserves the right to supplement these responses.

2.      Counterpart objects to plaintiff's requests for admissions to the extent they seek the disclosure of information and communications protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity.

3.      Counterpart objects to plaintiff's requests for admissions to the extent they seek private, privileged and confidential commercial and/or proprietary business information.

4.      Counterpart objects to the instructions and definitions contained in plaintiff's requests for admissions to the extent they impose obligations greater than those

required by the Federal Rules or the Local Rules of the U.S. District Court for the District of Columbia.

<u>**Specific Objections and Responses**</u>

**REQUEST NO. 1:** Documents bearing Bates stamp numbers CP0001 through CP1073, CP1346 through CP2466 and CIC1470 through CIC1524 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 2:** Documents bearing Bates stamp numbers CP1074 through CP1345 are incomplete financial records of Counterpart, which Counterpart has agreed to replace with true, accurate and complete records as created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:**  Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that documents bearing Bates stamp numbers CP1074 through CP1345 are Counterpart financial records maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rule of Evidence, a portion of which were inadvertently cut off in the copying process. Counterpart further admits it has agreed to produce complete copies of said financial

records including the portions that were inadvertently cut off in the copying process. Counterpart denies the remainder of Request No. 2.

**REQUEST NO. 3:** Documents bearing Bates stamp numbers 49-61, 64-98, 108, 112-15, 221-260, 266-86, 295-98 and 3457 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits documents bearing Bates stamp numbers 49-61, 65-68, 75-76, 78-89, 92, 96-98, 221-223, 225-227, 229, 231-233, 241-243, 247-248, 251-260 and 284-286 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence. Counterpart denies the remainder of the allegations in Request No. 3.

**REQUEST NO. 4:** Documents bearing Bates stamp numbers CP1490 through CP2466 are true, accurate and complete photographic copies of the files that Kelli Boyer found in Jay Cooper's office after his termination that she characterized as "secret files" at pages 93-103 of her deposition.

**RESPONSE:** Counterpart objects to Request No. 4 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 4.

**REQUEST NO. 5:** The "secret files" are comprised of files on fourteen individuals and one file labeled "computer consultants" concerning a local firm.

**RESPONSE:** Counterpart objects to Request No. 5 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits that documents Kelli Boyer characterized as "secret files" during her deposition are comprised of files on fourteen individuals and one file labeled "computer contractors" (not "computer consultants").

**REQUEST NO. 6:** Jay Cooper at one time or another was charged with the supervision of each of the fourteen individuals for whom a "secret file" was found, with the exception of Michael Kunz.

**RESPONSE:** Counterpart objects to Request No. 6 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 6, except that Counterpart is still in the process of confirming if Jay Cooper was ever charged with the supervision of Natalia (Natasha) Bougaets.

**REQUEST NO. 7:** With the exception of the file on Michael Kunz, the "secret files" are comprised of the sort of documents routinely kept by a manager about the people he supervises, such as contracts of employment or consulting agreements, job descriptions or documents setting of the scope of work of consultants, resumes, performance evaluations and self-evaluations, periodic progress reports against objectives, and routine emails asking for and sharing information.

**RESPONSE:** Counterpart objects to the term "the sort of documents routinely kept by a manager" as vague and ambiguous. Counterpart further objects to Request No. 7 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 7.

**REQUEST NO. 8:** The "secret files" on nine of these fourteen individuals (Anika Ayrapetyants, Yazgylych Charyev, Natalia (Natasha) Bougaets, Gavin Helf, Rosalie Yasquez-Yetter, Roberta Talmage, Bob Abma, Ara Nazinyan and Erkin Kasybekov) and the computer consultants file contain employment or consultancy agreements.

**RESPONSE:** Counterpart objects to Request No. 8 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 8.

**REQUEST NO. 9:** The "secret files" on nine of these fourteen individuals (Kim Alter, Soroush Javadi-Matlagh, Yazgylych Charyev, Natalia (Natasha) Bougaets, Gavin Helf, Roberta Talmage, Bob Abma, Ara Nazinyan and Erkin Kasybekov) contain job descriptions and/or documents setting out the Scope of Work expected in connection with a consultant arrangement.

**RESPONSE:** Counterpart objects to Request No. 9 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 9.

**REQUEST NO. 10:** The "secret files" on six of these individuals contain job performance appraisals completed by Jay Cooper and/or self appraisals by that individual.

**RESPONSE:** Counterpart objects to Request No. 10 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 10.

**REQUEST NO. 11:** The "secret files" on two of these individuals (Randall Olson and Rosalie Vasquez-Yetter) contain emails and memos concerning the

employment failings of these two individuals and various options to improve that performance or terminate their employment.

**RESPONSE:** Counterpart objects to Request No. 11 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Counterpart further objects to the terms "employment failings" and "various options to improve" as vague and ambiguous.  Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remainder of the allegations in Request No. 11.

**REQUEST NO. 12:** Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director of Turkmenistan in the Fall of 2001 upon instructions from Arlene and Lelei Lelaulu after her husband created a public scene offensive to a US government official based in that country.

**RESPONSE:** Counterpart objects to Request No. 12 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director of Turkmenistan in the Fall of 2001 upon instructions from Arlene Lear.  Counterpart denies the remainder of the allegations in Request No. 12.

**REQUEST NO. 13:** Jay Cooper demoted Randall Olson from his position as Country Director of Tajikistan due to poor performance with the concurrence of Arlene Lear.  That poor performance is documented in emails, memos, notes, comments on monthly reports and the performance reviews contained in the file on him.

**RESPONSE:**  Counterpart objects to Request No. 13 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 14:** The "secret file" on Kim Alter contains lengthy memoranda by Kim Alter concerning her goals and objectives and progress, the ownership of her work product, and her discontent with attempts to supervise her work.

**RESPONSE:**  Counterpart objects to Request No. 14 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Counterpart further objects to the term "lengthy memoranda" as vague and ambiguous.  Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 14.

**REQUEST NO. 15:** Kim Alter resigned from employment with Counterpart in 2004.

**RESPONSE:** Counterpart objects to Request No. 15 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 16:** Counterpart was dissatisfied with Kim Alter's relationships with her supervisors by the time she resigned.

**RESPONSE:** Counterpart objects to Request No. 16 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 17:** In 2003, Cooper, as Chief of Party for CSSI and HNCBI, had responsibility for Counterpart's office in Uzbekistan during a period when that operation acted as a sub-contractor to an organization named CHF International in the

running of a program known as CAIP (Community Action Investment Program).  During

that period, Michael Kunz served as the Deputy Chief of Party working for Counterpart,

while the Director of the CAIP project worked for CHF.  Kunz was based in the CHF

office in Tashkent.  During the CAIP project, Counterpart's Uzbekistan staff sent several

written complaints (and also complained orally) to Cooper about Kunz' behavior.

**RESPONSE:**  Counterpart objects to Request No. 17 on the grounds that it seeks

information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as

follows:

Counterpart denies that during the CAIP project, Counterpart's Uzbekistan staff

sent "several" written complaints to Cooper about Kunz' behavior.  Counterpart lacks

sufficient information to either admit or deny Counterpart's Uzbekistan staff "complained

orally" to Cooper about Kunz' behavior.  Counterpart admits the remaining allegations in

Request No. 17.

**REQUEST NO. 18:** Documents bearing Bates stamp numbers CP1889-1893 and

CP1898-1905 (contained in the "secret file" for Michael Kunz) are examples of the

written complaints Jay Cooper received from his staff in Uzbekistan.

**RESPONSE:**  Counterpart objects to Request No. 18 on the grounds that it seeks

information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as

follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart is unable to deny or admit the remaining allegations in Request No. 18 because it has no way of knowing whether the documents referenced in Request No. 18 constitute "examples of the written complaints Jay Cooper received from his staff in Uzbekistan."

**REQUEST NO. 19:** The documents referred to in the preceding paragraph (with different Bates stamp numbers) were marked as Exhibit 33 (bearing Bates stamp number 49-51) and Exhibit 34 (bearing Bates stamp number 52-60) to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 19 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.  The documents referred to in the proceeding paragraph, though similar to those marked as Exhibits 33 and 34 to the Lear deposition, also include unidentified handwritten notations.

**REQUEST NO. 20:** Cooper sent the document bearing Bates stamp number 251 to Arlene Lear on April 8, 2003, with a copy of the document now marked as Exhibit 34 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 20 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

     Admitted.

     **REQUEST NO. 21:** The "secret file" on Michael Kunz also contains documents bearing Bates stamp numbers CP1895-96 (concerning a traffic accident in Uzbekistan), CP1897 (concerning the accident and Kunz' complaints about a Counterpart employee named Azam), and CP1906-07 (Cooper's handwritten notes of a conversation with Azam in which Azam complains about Kunz).

     **RESPONSE:** Counterpart objects to Request No. 21 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

     Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 21.

     **REQUEST NO. 22:** There are no other documents in the "secret file" on Michael Kunz other than those described in paragraphs 18 and 21.

     **RESPONSE:** Counterpart objects to Request No. 22 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remaining allegations in Request No. 22.

**REQUEST NO. 23:** Of the 15 employees and consultants about whom a "secret file" was found, only eight (Michael Kunz, Randall Olson, Gavin Helf, Rosalie Vasquez-Yetter, Roberta Talmage, Bob Abma, Maura Corkery and Kim Alter) were ex-pats (Americans living abroad).

**RESPONSE:**  Counterpart objects to Request No. 23 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remainder of the allegations in Request No. 23, except Counterpart is still in the process of confirming the status of Natalia (Natasha) Bougaets.

**REQUEST NO. 24:** No "secret file" on Arlene Lear was discovered among the other "secret files" found by Kelli Boyer in Jay Cooper's office after his termination.

**RESPONSE:** Counterpart objects to Request No. 24 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 24.

**REQUEST NO. 25:** Only two of the "secret files" (Rosalie Vasquez-Yetter and Randall Olson) contain any handwritten memos of conversations between Jay and whatever person's file it was in.

**RESPONSE:** Counterpart objects to Request No. 25 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "whatever person's file it was in" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 25.

**REQUEST NO. 26:** Only one of the "secret files" (Randall Olson) contain any non-handwritten memos of conversations between Jay and whatever person's file it was in.

**RESPONSE:**  Counterpart objects to Request No. 26 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "whatever person's file it was in" as vague and ambiguous.  Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remaining allegations in Request No. 26.

**REQUEST NO. 27:** The "secret files" concerning two individuals (Anika Ayrapetyants and Roberta Talmage) contain only materials relevant to brief projects for which they were hired as consultants.

**RESPONSE:**  Counterpart objects to Request No. 27 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "materials relevant to brief projects for which they were hired" as vague and ambiguous.  Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remainder of the allegations in Request No. 27.

**REQUEST NO. 28:** The "secret file" of Maura Corkery contains only one sheet of paper, a memo from her asking about time sheets.

**RESPONSE:**  Counterpart objects to Request No. 28 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remaining allegations in Request No. 28.

**REQUEST NO. 29:** Maura Corkery was retained briefly on a consulting basis to serve as an advisor to the Country Director in Tajikistan.

**RESPONSE:** Counterpart objects to Request No. 29 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 30:** The "secret file" on Anika Ayrapetyants contains only a consulting agreement.

**RESPONSE:** Counterpart objects to Request No. 30 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 30.

**REQUEST NO. 31:** The "secret file" on Yazgylych Charyev contains a lengthy report by a management consultant brought in by Cooper to improve Charyev's performance. Charyev remained as Counterpart's Country Director in Uzbekistan at the time of Cooper's termination.

**RESPONSE:** Counterpart objects to Request No. 31 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "lengthy report" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it

characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remainder of the allegations in Request No. 31.

**REQUEST NO. 32:** Erkin Kasybekov remained as Counterpart's Country Director in Krygyzstan at the time of Cooper's termination.

**RESPONSE:**  Counterpart objects to Request No. 32 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 33:** The "secret file" labeled "computer consultants" contains a contract with a local firm to supply consulting services, a list of overtime hours for which the consultants sought reimbursement and an analysis by one of the accountants of documentation.

**RESPONSE:**  Counterpart objects to Request No. 33 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart

admits the remaining allegations pertaining to the file labeled "computer contractors" (not "computer consultants") in Request No. 33.

**REQUEST NO. 34:** With only the possible exception of the file on Michael Kunz, none of the documents contained in any of the "secret files" can fairly be construed to "maybe harm the person maybe at a later date."

**RESPONSE:**  Counterpart objects to Request No. 34 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the phrase "can be fairly construed" as vague and ambiguous.  Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits that during her deposition Kelli Boyer testified that she believed the documents she identified as "secret files" were "designed to maybe harm the person maybe at a later date."  Counterpart denies the remaining allegations in Request No. 34.

**REQUEST NO. 35:** Arlene Lear prepared and signed the Performance Review bearing Bates stamp numbers CP82-90 which is Exhibit 9 to the Lear deposition on or before March 19, 2002.

**RESPONSE:**  Counterpart objects to Request No. 35 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 36:** Arlene Lear sent the Performance Review bearing Bates stamp numbers CP82-90 which is Exhibit 9 to the Lear deposition to Counterpart's Human Resources Department on March 19, 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 37:** The document bearing Bates stamp numbers CIC 1470-73 is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 53-56.

**RESPONSE:** Counterpart objects to Request No. 37 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 38:** Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73 before preparing the Performance Review that bears Bates stamp numbers CP82-90 and is Exhibit 9 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 38 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73. Counterpart denies the remaining allegations in Request No. 38.

**REQUEST NO. 39:** The document bearing Bates stamp numbers CIC1474-1524 is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 81-83.

**RESPONSE:** Counterpart objects to Request No. 39 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 40:** Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1474-1524 before preparing the Performance Review that bears Bates stamp numbers CP82-90 and is Exhibit 9 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 40 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73.  Counterpart denies the remaining allegations in Request No. 40.

**REQUEST NO. 41:** The document bearing Bates stamp numbers 91-92 and is marked as Exhibit 14 to the Lear deposition is a true, correct and complete photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Cooper prepared, and Arlene Lear received, the document bearing Bates stamp numbers 91-92.  Counterpart can neither admit nor deny the remaining allegations in Request 41 because Counterpart does not have any records that indicate, and Arlene Lear does not recall, when Lear received the document.

**REQUEST NO. 42:** Arlene Lear received and reviewed the document referenced in the preceding paragraph before March 18, 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document referenced in the preceding paragraph. Counterpart can neither admit nor deny the remaining allegations in Request 42 because Counterpart does not have any records that indicate, and Arlene Lear does not recall, when Lear received and reviewed the document.

**REQUEST NO. 43:** The document referenced in paragraph 41 was also received in Counterpart's Human Resources Department in March of 2002.

**RESPONSE:** Counterpart objects to Request No. 43 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the HR Department received the document referenced in paragraph 41.  Counterpart can neither admit nor deny the remaining allegations in Request 43 because Counterpart does not have any records that indicate when the HR Department received the document.

**REQUEST NO. 44:** The document bearing Bates stamp numbers CP82-83 that is Exhibit 13 to the Lear deposition is a true and correct photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002.

**RESPONSE:**  Counterpart objects to Request No. 44 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 45:** The document referenced in the previous paragraph was attached to an email from Arlene Lear to Kate Gottschal (forwarding an email from Cooper to Arlene Lear) that bears Bates stamp number 81 and is Exhibit 10 to the Lear deposition.

**RESPONSE:**  Counterpart objects to Request No. 45 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 46:** Counterpart has published no whistleblower protection policy to its employees at any time after August of 2004.

**RESPONSE:**  Counterpart objects to Request No. 46 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 47:** Counterpart has published no whistleblower protection policy to its employees at the time of Jay Cooper's termination on November 12, 2004.

**RESPONSE:** Counterpart objects to Request No. 47 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO 48:** As of the date of these Requests for Admissions, Counterpart has failed to produce any written Counterpart whistleblower protection policy.

**RESPONSE:** Counterpart objects to Request No. 48 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 49:** Kelli Boyer's email on the page that bears the Bates stamp number 230 and is on the first page of Exhibit 37 to the Lear deposition is the first time Counterpart announced to its employees that its Grievance Policy had been rescinded.

**RESPONSE:** Counterpart objects to Request No. 49 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 50:** At a meeting of Counterpart's Senior Management Team held on October 26, 2004, it was announced that two members of Counterpart's Program Management Team were revising the company's Open Door Policy to include greater specificity, which was lost when the Grievance Policy was rescinded.

**RESPONSE:** Counterpart objects to Request No. 50 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that at a meeting of Counterpart's Senior Management Team held on October 26, 2004, it was announced that two members of Counterpart's Program Management Team were revising the company's Open Door Policy. Counterpart denies the remaining allegations in Request No. 50.

**REQUEST NO. 51:** As of the date of these Requests for Admissions, Counterpart has failed to produce any revision of Counterpart's Open Door Policy that modifies that policy as set forth in Exhibit 7 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 51 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the terms "revision" and "modifies" as vague and ambiguous. Subject

to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it has not produced documentation which rescinds, and therefore revises and modifies, the Open Door Policy set forth in Exhibit 7 to the Lear deposition.

**REQUEST NO. 52:** Jay Cooper hired Gavin Helf as a consultant to provide guidance and management support to Yazgylych Charyev, Counterpart's Country Director for Turkmenistan, on two occasions, once for a three-month period in 2003 and again for a three-week period in 2004.

**RESPONSE:** Counterpart objects to Request No. 52 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 53:** The documents bearing the Bates stamp numbers 2009 and 2010 are contained in the "secret files" on Gavin Helf and are true and correct photographic copies of an exchange of correspondence between Cooper and Mr. Helf concerning the scope of work to be performed by Mr. Helf on his second visit, as well as the reasons why that second consultancy was warranted.

**RESPONSE:** Counterpart objects to Request No. 53 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the document bearing the Bates stamp number 2010 is a true and correct photographic copy of an exchange of correspondence between Cooper and Mr. Helf, concerning the scope of work to be performed by Mr. Helf on his second visit, as well as the reasons why that second consultancy was warranted. Counterpart is unable to admit or deny the remainder of the allegations in Request No. 53 with regarding to the document bearing the Bates stamp number 2009 because there is no indication on the document itself that it is a copy of any exchange of correspondence.

**REQUEST NO. 54:** Arlene Lear approved hiring Mr. Helf for the purposes described in Request No. 52 and in the documents referenced in Request No. 53.

**RESPONSE:** Counterpart objects to Request No. 54 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 55:** Sometime after December 31, 2005, Counterpart prepared and submitted to USAID a Final Program Report on one of the programs Jay Cooper had managed between January 1, 2003 and the date of his termination, the HNCBI, which had

been operated in five countries in Central Asia.  A true and correct photographic copy of that report, minus its attachments, is Exhibit A to these Requests.

**RESPONSE:**  Counterpart objects to Request No. 55 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 56:** In its Final Program Report on the HNCBI, Counterpart concluded:  "Despite challenging operating environments in some of the countries, the program has proved to be resilient and extremely successful in terms of outreach and producing significant health impact at the community level . . . . It has by far exceeded the target indicators under each of the objectives . . . ."

**RESPONSE:**  Counterpart objects to Request No. 56 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the text of the Final Program Report on the HNCBI, attached as Exhibit A to these Requests, speaks for itself and is accurately quoted herein.

**REQUEST NO. 57:** In August of 2004, Don Feil held the position of Vice President (Small Business Development) with Counterpart.

**RESPONSE:** Counterpart objects to Request No. 57 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 58:** In August of 2004, Harry Dorcus held the position of Vice President and Chief Financial Officer with Counterpart.

**RESPONSE:** Counterpart objects to Request No. 58 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 59:** Lelei LeLaulu does not weigh 350 pounds.

**RESPONSE:** Counterpart objects to Request No. 59 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 60:** Arlene Lear does not weigh 350 pounds.

**RESPONSE:** Counterpart objects to Request No. 60 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 61:** Exhibit B is a true, accurate and correct photographic copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2004 to September 30, 2005.

**RESPONSE:** Counterpart objects to Request No. 61 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO 62:** The document marked as Exhibit 49 to the deposition of Harry Dorcus is a true and correct photographic copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2003 to September 30, 2004, with the sole exception of a blacked out portion of page 6.

**RESPONSE:** Counterpart objects to Request No. 62 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document marked as Exhibit 49 to the deposition of Harry Dorcus appears to be a copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2003 to September 30, 2004, with the sole exception of a blacked out portion of page 6.

**REQUEST NO. 63:** The document bearing Bates stamp numbers CP852 through 972 is a true, accurate and complete copy of a Mid-Term Evaluation Report on CSSI, prepared for Counterpart, dated May 11, 2005 and is the Mid-Term Evaluation Report referred to by Christopher Szscsey in his deposition in this case taken on September 6, 2006.

**RESPONSE:** Counterpart objects to Request No. 63 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp numbers CP852-CP972 is a true, accurate and complete copy of a Mid-Term Evaluation Report on CSSI, prepared for Counterpart, dated May 11, 2005. Counterpart can neither admit nor deny the remaining allegations in Request No. 63 because Counterpart's counsel had no way to

verify what documents were being viewed by Christopher Szscsey when he referred to documents he was viewing during his telephone deposition.

**REQUEST NO. 64:** The document bearing Bates stamp numbers 282-83 is a true and correct photographic copy of an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004.

**RESPONSE:**  Counterpart objects to Request No. 64 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp numbers 282-83 appears to be an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004. Counterpart denies the remaining allegations in Request No. 64.

**REQUEST NO. 65:** The reference in the document described in the preceding paragraph to deficits in "HQ" refers to spending of dollars from the CSSI and NHCBI programs as direct program costs by Counterpart employees based in Counterpart's headquarters in Washington, D.C.

**RESPONSE:** Counterpart objects to Request No. 65 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 66:** The reference in the document described in paragraph 64 to deficits in "The Regional Office" refers to spending of dollars from the CSSI and NHCBI programs as direct program costs on items such as the salaries, fringe benefits, and travel of Cooper, Bob Abma, Michael Kunz and several other Almaty-based Counterpart employees.

**RESPONSE:** Counterpart objects to Request No. 66 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 67:** Bob Abma suggests in the document described in paragraph 64 above that funds from the NHCBI project be used for CSSI projects and for other projects in countries where CSSI had no projects.

**RESPONSE:** Counterpart objects to Request No. 67 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 68:** Bob Abma suggests in the document described in paragraph 64 above that NHCBI project funds be used for other projects in the Regional Office.

**RESPONSE:** Counterpart objects to Request No. 68 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 69:** As the document bearing Bates stamp number 3452 indicates, on September 24, 2004, Michael Kunz sent an email to Cooper thanking him for "today's meeting" which he (Kunz) described as "really productive."

**RESPONSE:** Counterpart objects to Request No. 69 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 70:** The document bearing Bates stamp number 3452 is a true and correct photographic copy of an email from Michael Kunz to Cooper dated September 24, 2004.

**RESPONSE:** Counterpart objects to Request No. 70 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 71:** Irina Kolmakova, the HR and Administrative Manager of Counterpart's office in Almaty, Kazakstan, received an email from Michael Kunz on or before October 6, 2004, requesting that Jay Cooper and Bob Abma prepare an agenda of the major topics they would like to cover at the Monday staff meeting by close of business on the previous Thursday and stating that he is not going to participate in those meetings until topics are up for discussion that may be of interest to him.

**RESPONSE:** Counterpart objects to Request No. 71 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that on October 6, 2004, Kolmakova sent an e-mail to Cooper and Abma that stated "Michael wrote that he is not going to participate in our meetings until we discuss topics that may be of interest for him." Counterpart lacks sufficient information and knowledge to admit or deny the remaining allegations in Request No. 71.

**REQUEST NO. 72:** The document bearing Bates stamp number 3457 is a true and correct photographic copy of an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004.

**RESPONSE:** Counterpart objects to Request No. 72 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 3457 appears to be an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004. Counterpart denies the remaining allegations in Request No. 72.

**REQUEST NO. 73:** Irina Kolmakova was Counterpart's HR and Administrative Manager in its Almaty office in 2004, with supervisory responsibility for the receptionist, the drivers and the security guards that worked out of that office.

**RESPONSE:** Counterpart objects to Request No. 73 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 74:** The document bearing Bates stamp number 3453-56 is a true and correct photographic copy of email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings.

**RESPONSE:** Counterpart objects to Request No. 74 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Countepart admits the document bearing Bates stamp number 3453-56 appears to be email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings. Counterpart denies the remaining allegations in Request No. 74.

**REQUEST NO. 75:** The document bearing Bates stamp number 284, which is Exhibit 23 to the Lear deposition, is a true and correct photographic copy of an email written by Michael Kunz to Cooper and Yazgylych Charyev on October 6, 2004.

**RESPONSE:**  Counterpart objects to Request No. 75 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 76:** The document bearing Bates stamp number 230-32, which is Exhibit 32 to the Lear deposition,  is (with the exception of the email forwarding notice from Cooper to Pat Douglass on the top of page 230) a true and correct photographic copy of an email sent to Counterpart's Headquarters Staff from its Human Resources Department on October 6, 2004.

**RESPONSE:**  Counterpart objects to Request No. 76 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies the document bearing Bates stamp number 230-32 is Exhibit 32 to the Lear deposition.  Counterpart admits the remaining allegations in Request No. 37.

**REQUEST NO. 77:** The document bearing Bates stamp number 69-73, which is Exhibit 46 to the Dorcus deposition, is a true and correct photographic copy of an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet.

**RESPONSE:**  Counterpart objects to Request No. 77 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 69-73, which is Exhibit 46 to the Dorcus deposition, appears to be an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet.  Counterpart denies the remaining allegations in Request No. 77.

**REQUEST NO. 78:** The reference to "Eurasia Regional" on the spreadsheet attached to Dorcus Exhibit 46 is to a fund designed to support efforts by Michael Kunz to travel to Armenia and other countries in an attempt to procure new programs for Counterpart, as well as travel by Bob Abma to Iraq, Turkey and perhaps Afghanistan on short-term assignments for Counterpart including training sessions.

**RESPONSE:**  Counterpart objects to Request No. 78 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

At this time, Counterpart lacks sufficient information to admit or deny the allegations in Request No. 78.  Counterpart is in the process of researching the information to respond to this Request and will supplement its response as soon as possible.

**REQUEST NO. 79:** The document bearing Bates stamp number CP 21-23 that is Exhibit 17 to the Cooper deposition is a true, correct and complete copy of a resume that accurately sets out the responsibilities that Michael Kunz had in his position as Counterpart's Regional Director for Counterpart's Civil Society Division in Eurasia, the Middle East and South East Asia as of September 1, 2004.

**RESPONSE:**  Counterpart objects to Request No. 79 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number CP21-23 that is Exhibit 17 to the Cooper deposition is a job description for Michael Kunz's position as Regional Director of Counterpart's Civil Society Division in Eurasia, the Middle East and South East Asia as of September 1, 2004.  Counterpart denies the remaining allegations in Request No. 79.

**REQUEST NO. 80:** Exhibit 17 to the Cooper deposition describes Michael Kunz' responsibilities as of September 1, 2004 as overseeing current programs in Armenia, Bulgaria and Vietnam.

**RESPONSE:**  Counterpart objects to Request No. 80 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Exhibit 17 to the Cooper deposition describes some of Michael Kunz' responsibilities as of September 1, 2004, including overseeing current programs in Armenia, Bulgaria and Vietnam.

**REQUEST NO. 81:** In the Fall of 2004, Michael Kunz was cultivating new program opportunities in the Central Asia Region, including those in countries in which Counterpart had no existing programs such as Armenia.

**RESPONSE:**  Counterpart objects to Request No. 81 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 82:** In October of 2004, Bob Abma held the position of Counterpart's Regional Finance Director for the Central Asian Region, with

responsibility for financial matters in various existing and proposed projects outside the five countries in which the programs managed by Cooper operated.

**RESPONSE:** Counterpart objects to Request No. 82 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 83:** During 2004, Bob Abma traveled extensively, purportedly on Counterpart business. Among the countries he visited were Armenia, Iraq and Turkey on training missions; he also traveled to Tajikistan to perform services on a Counterpart agricultural projects.

**RESPONSE:** Counterpart objects to Request No. 83 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits during 2004, Bob Abma traveled on Counterpart business, including to Armenia and Iraq. Counterpart denies the remaining allegations in Request No. 83.

**REQUEST NO. 84:** Counterpart's vision for Bob Abma is that he would live in Central Asia but travel all over that part of the world as a consultant to perform services in connection with various Counterpart programs and proposals.

**RESPONSE:** Counterpart objects to Request No. 84 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 85:** Before October 8, 2004, Bob Abma and Michael Kunz proposed a budget that allocated to the CSSI project and the NHCBI project a portion of salary costs for a new assistant to support Michael Kunz in the activities described in the paragraphs 78 through 81.

**RESPONSE:**  Counterpart objects to Request No. 85 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 86:** Cooper expressed to Bob Abma and Michael Kunz  his objections to the use of funds from the CSSI and HNCBI projects to fund the proposed salary described in the previous paragraph as well as the travel by Kunz and Abma designed to develop new programs unrelated to the mission of CSSI and NHCBI.

**RESPONSE:**  Counterpart objects to Request No. 86 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Jay Cooper stated in an e-mail to Bob Abma and Michael Kunz that he did "not agree to approve funds from CSSI or HNCBI to be used for anything other than those projects." Counterpart denies the remaining allegations in Request No. 86.

**REQUEST NO. 87:** None of the activities described in paragraphs 78 through 84 fell within the program parameters of CSSI or NHCBI.

**RESPONSE:** Counterpart objects to Request No. 87 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 88:** The document bearing Bates stamp number 285 is a true, accurate and complete photographic copy of an email Cooper sent Bob Abma and Michael Kunz in response to Exhibit 46 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 88 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 285 appears to be an email Cooper sent Bob Abma and Michael Kunz in response to Exhibit 46 to the Dorcus deposition.  Counterpart denies the remaining allegations in Request No. 88.

**REQUEST NO. 89:** The document bearing Bates stamp number 74, which is Exhibit 45 to the Dorcus deposition, was received by Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on October 21, 2004.

**RESPONSE:** Counterpart objects to Request No. 89 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 74 includes what appears to be an e-mail send from Jay Cooper to Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on October 21, 2004.  Counterpart denies the remaining allegations in Request No. 89.

**REQUEST NO. 90:** Counterpart never assigned the full time financial person to track closely all the costs for the CSSI and NHCBI projects, as had been requested by Cooper in Exhibit 45 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 90 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it never assigned a full time financial person to track closely all the costs for the CSSI and NHCBI projects.  Counterpart admits the remaining allegations in Request No. 90.

**REQUEST NO. 91:** At no time before Cooper's termination on November 12, 2004, did Counterpart assign the full time financial person to track closely all the costs for the CSSI and NHCBI projects, as had been requested by Cooper in Exhibit 45 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 91 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it never assigned a full time financial person to track closely all the costs for the CSSI and NHCBI projects prior to Cooper's termination on November 12, 2004.  Counterpart admits the remaining allegations in Request No. 91.

**REQUEST NO. 92:** Counterpart entered into an agreement with its former Chief Operating Officer Greg Touma in connection with his resignation from Counterpart's employment under the terms of which he is not allowed to discuss events surrounding his employment with Counterpart or its termination.

**RESPONSE:**  Counterpart objects to Request No. 92 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 93:** Counterpart has refused to waive the confidentiality provision in its agreement with Greg Touma to allow him to give information or testimony in this case.

**RESPONSE:** Counterpart objects to Request No. 93 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it refused to waive the confidentiality provision of its agreement with Greg Touma.

**REQUEST NO. 94:** Aaron Chassey was terminated from his position as Director of Counterpart's Civil Society Program in the Spring of 2003. He was not locked out of his office following that termination.

**RESPONSE:** Counterpart objects to Request No. 94 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 95:** Counterpart entered into an agreement with Aaron Chassey, its former Director of Civil Society, in connection with the termination of his Counterpart employment, under the terms of which he is not allowed to discuss events surrounding his employment with Counterpart or its termination.

**RESPONSE:** Counterpart objects to Request No. 95 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it entered into an agreement with Aaron Chassey, its former Director of Civil Society, in connection with the termination of his Counterpart employment. Counterpart denies the remaining allegations in Request No. 95.

**REQUEST NO. 96:** Counterpart has refused to waive the confidentiality provision in its agreement with Aaron Chassey to allow him to give information or testimony in this case.

**RESPONSE:** Counterpart objects to Request No. 96 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it has refused to waive the confidentiality provision in its agreement with Aaron Chassey.

**REQUEST NO. 97:** Counterpart used NICRA funds generated from grants from USAID to subsidize losses in its for-profit subsidiary Enviroventure.

**RESPONSE:** Counterpart objects to Request No. 97 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 98:** The document marked as Exhibit 41 to the Dorcus deposition is a true, correct and complete copy of OMB Circular A-122, Cost Principles for Non-Profit Organizations.

**RESPONSE:** Counterpart objects to Request No. 98 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document marked as Exhibit 41 to the Dorcus deposition is a true, correct and complete copy of a 75-page document available on the website: http://www.whitehouse.gov/omb/circulars/a122/print/a122html, entitled OMB Circular A-122, Cost Principles for Non-Profit Organizations.

**REQUEST NO. 99:** Counterpart investigated various allegations against Cooper made by Kim Alter and determined that they were without merit.

**RESPONSE:** Counterpart objects to Request No. 99 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term "various allegations" as vague and ambiguous. Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 100:** Kelli Boyer's explanation for the reason why she found Kim Alter's allegations to be without merit on page 21-23 of her deposition demonstrates her unfamiliarity with basic principles of the law of sexual harassment.

**RESPONSE:** Counterpart objects to Request No. 100 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 101:** Counterpart did not credit allegations about Cooper made by Aaron Chassey, and such allegations played no role in Counterpart's decision to terminate Cooper.

**RESPONSE:** Counterpart objects to Request No. 101 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term "allegations" as vague and ambiguous. Subject to these

objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 102:** Counterpart has paid no reimbursement to Cooper for the business expenses for which reimbursement was requested in documents bearing Bates stamp numbers 89, 92, 96 and 98.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 103:** Accountants in Counterpart's Almaty office possessed records sufficient to verify the amounts reflected in the documents referenced in the previous paragraph.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

At this time, Counterpart lacks sufficient information to admit or deny the allegations in Request No. 103. Counterpart is in the process of researching the information to respond to this Request and will supplement its response as soon as possible.

**REQUEST NO. 104:** The documents bearing Bates stamp numbers 100-107 and 111 reflect expenses incurred by Cooper in returning himself and his possessions to his Home of Record from Central Asia after his termination.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart lacks sufficient knowledge to either admit or deny the allegations in Request No. 104.

**REQUEST NO. 105:** The documents bearing Bates stamp numbers 100-107 and 111 reflect reasonable expenses incurred by Cooper in returning himself and his household and personal effects to his Home of Record from Central Asia after his termination.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 106:** Counterpart has taken no steps to verify the reasonableness of the expenses reflected in the documents referred to in paragraph 104.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 107:** Counterpart has paid no reimbursement, in whole or in part, for the travel and shipping expenses reflected in the documents referred to in paragraph 104.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 108:** It is a policy or practice of Counterpart not to reimburse outstanding business expenses or relocation costs for terminated employees unless they release Counterpart from all liabilities associated with the termination.

**RESPONSE:**  Subject to the general objections and responses stated above,

Counterpart responds as follows:

Denied.

Respectfully submitted,

**JACKSON LEWIS LLP**

By: _____
    Tyler A. Brown
      (D.C. Bar No. 480693)
    Kara M. Ariail
      (D.C. Bar No. 46817)
    8614 Westwood Center Drive
    Suite 950
    Vienna, VA 22182
    (703) 821-2189
    **Counsel for Defendant**

October 11, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on October 11, 2006, a copy of the foregoing

*Defendant's Response to Plaintiff's Request for Admissions* was served upon the

following via overnight delivery:

> Patricia D. Douglass
> 98 Interpromontory Rd.
> Great Falls, VA 222066
> Counsel for Plaintiff

_____
Kara M. Ariail