UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 1:05-cv-01598-RMC |
| ) | |
| COUNTERPART INTERNATIONAL ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS

Defendant Counterpart International ("Counterpart") responds to plaintiff's second request for the production of documents as follows:

### General Objections and Responses

1. Counterpart objects to plaintiff's requests for production to the extent they seek the disclosure of documents that are protected by the attorney-client privilege, the attorney work-product doctrine, the common interest/joint defense privilege or any other applicable privilege or immunity.

2. Counterpart objects to the instructions contained in plaintiff's requests for production to the extent they impose obligations beyond those imposed by the Federal Rules of Civil Procedure and/or Local Rules of the District Court for the District of Columbia.

3. Counterpart objects to plaintiff's requests for production to the extent they seek documents containing proprietary business information, trade secrets or other confidential or personal information.

4. Counterpart will produce responsive, non-privileged documents for inspection and copying at a mutually convenient time and location and as they are maintained in the ordinary course of business.

5. Counterpart has made all good faith efforts to locate documents responsive to plaintiff's requests. Counterpart reserves the right to supplement its document production if it locates additional documents or, as this action progresses, Counterpart determines that documents which have been located but appear non-responsive are actually responsive to plaintiff's requests.

6. Counterpart will produce documents only in its possession, custody, or control or in the possession, custody, control of its agents or employees.

## Specific Objections and Responses

**REQUEST NO. 1:** Please produced all of the "secret files" you discovered in Jay Cooper's office in Almaty after his termination as described by Ms. Kelli Boyer in her deposition on March 28, 2006.

**RESPONSE:** Subject to the general responses and objections stated above, Defendant responds as follows: Defendant has not yet been able to locate Jay Cooper's "secret files" as described by Kelli Boyer during her March 28, 2006 deposition. Defendant will continue to search for the files and will supplement this response if and when such files are located.

**REQUEST NO. 2:** Please produce all amendments to the March 2001 edition of Counterpart's Manual for Employees in Foreign Areas that was marked as Exhibit 4 to Cooper's Rule 30(b)(6) deposition of Counterpart International that were in force as of Fall 2004, including an amendment concerning whistleblower protection discussed by

# NOTES FROM CC MANAGEMENT TEAM MEETING
Almaty, Kazakhstan - October 23 and 27, 2000
Attending: Arlene Lear, Tom Carmody, Jay Cooper, Bob Abma, Beth Comolli

**Step 1.** After clarifying our expectations for the meeting, we brainstormed a list of the strengths and limitations of CC and CI, as follows:

### Brainstorming CC/CI Strengths and Limitations/Areas For Improvement

| Strengths | Limitations/Areas for Improvement |
|---|---|
| - Relationship w/USAID<br>- Motivated staff<br>- Experienced staff<br>- Regional reputation<br>- Hub offices and some SCs established<br>- Commitment of staff to excellence<br>- Management team<br>- KG staff experience<br>- KG Country Director<br>- TM program implementation; motivated staff | - Weak expat recruitment process<br>- Lack of expat resources and skills<br>- Financial info not available to Bob for analysis (system doesn't provide timely info) CA and DC both<br>- Local staff skills and experience<br>- No strategic and business plans in SCs<br>- Lack of resources for oversight<br>- All Counterpart Central Asia programs perceived as CC<br>- Lack of coordination among CI divisions<br>- Lack of clarity about available budget<br>- Lack of coordination between CC & DC; lack of understanding of roles<br>- Not enough $ for hiring technical expertise<br>- Not enough $ for travel<br>- CI self-image as small organization, not an institution<br>- Low visibility – lack of expat-driven public education component (no materials)<br>- KZ staff skills<br>- A lot of new staff people (8+ in KZ and regional office)<br>- Not recognizing and/or tolerating poor performance<br>- No performance management system<br>- No coordinated long-term vision for CI<br>- No permanent UZ Country Director for one year<br>- Lack of focused management in TJ<br>- Lack of time for coaching by Regional Director<br>- Inadequate skills of program articulation<br>- Us vs. them<br>- Lack of expat staff for Community Outreach/Mobilization |

**Step 2.** Next, we grouped most of the limitations into five broad categories.

### Grouping Limitations/Areas For Improvement

- Staff skills and recruitment problems
- Performance management
- $, budgeting/financial management
- lack of coordination/information
- lack of expat skills/people

**Step 3.** We then brainstormed possible solutions for each of the five categories.

### Brainstorming Possible Solutions To Limitations/Areas For Improvement

**Staff skills and recruitment problems**
- Get qualified UZ Country Director
- Use job descriptions for recruitment
- Revise expat recruitment process
  - Provide more information to hiring manager in the field

CIC 1470