## JOINT PROPOSED JURY INSTRUCTIONS

## JOINT INSTRUCTION NO. 1
### ( Function of the Jury)

Your function as jurors is to decide the facts.  You are the exclusive judges of the facts.
You alone determine the weight, the effect and the value of the evidence, and the believability of
the witnesses.

You should decide the facts only from a fair evaluation of all the evidence, without
prejudice, sympathy, fear or favor.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.02

## JOINT INSTRUCTION NO. 2
### ( Juror's Duty to Deliberate)

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement.  You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors.  You should not hesitate to change an opinion when convinced that it is wrong.  You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own. You should reach an agreement only if you can do so in good conscience.  In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.


**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.04

**JOINT INSTRUCTION NO. 3**
**( Attitude and Conduct of Jurors)**

Remember that you are not advocates in this matter. You are neutral judges of the facts. The final test of the quality of your service will lie in the verdict which you return to this courtroom. You will make an important contribution to the cause of justice if you arrive at a just and proper verdict in this case. Therefore, during your deliberations in the jury room, your purpose should not be to support your own opinion but to determine the facts.


**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.05

**JOINT INSTRUCTION NO. 5**
**( Instructions to be Considered as a Whole)**

You must treat and consider all of these instructions as a whole. You must not single out any particular instruction or sentence while ignoring others. You must give each instruction equal importance and consider each one equally with all other instructions.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.06

## JOINT INSTRUCTION NO. 6
### ( Court's Commenting on the Evidence)

The law permits me to comment to you about the evidence in this case. My comments are only my opinions about the facts, and you are not bound by my opinions. If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard the comment. Remember, you are the sole and exclusive judges of all questions of fact in this case.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.07

## JOINT INSTRUCTION NO. 7
### ( Court's Questions to Witnesses)

During the course of the trial, I may have asked questions of a witness, to obtain information or to bring out facts. You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.08

## JOINT INSTRUCTION NO. 8
## ( Jury Not to Take Cue From Judge)

If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication.  Nothing I have said or done should influence or suggest to you that I favor any party in this case.

I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.09

## JOINT INSTRUCTION NO. 9
### ( Rulings on Objections)

There may have been times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness. It is the duty of a lawyer to make objections if the lawyer believes something improper is being done. When I sustained an objection to a question, the witness was not allowed to answer it. Do not attempt to guess what the answer might have been had I allowed the question to be answered. Similarly, when I told you to disregard a particular answer—when I ordered it stricken—you should have put that statement out of your mind, and you may not refer to that stricken answer during your deliberations.

While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations. Those interruptions concerned legal matters, while your job is to decide the facts. You should not be influenced by any of lawyers' objections, no matter how I ruled upon them.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.10

**JOINT INSTRUCTION NO. 10**
**(Evidence in the Case – Judicial Notice)**

Another type of evidence includes facts of which I take judicial notice.  I may take judicial notice of public acts, places, facts and events which I regard as matters of common knowledge.  When I take judicial notice of a particular fact, you may regard that fact as included in the evidence and proven.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia § 2.02

## JOINT INSTRUCTION NO. 11
## ( Inadmissible and Stricken Evidence)

It is the duty of the lawyers to object when the other side offers testimony or other materials that a lawyer believes are not properly admissible in evidence.

If, during the course of the trial, I sustained an objection by one lawyer to a question asked by the other lawyer, you are to disregard the question and you must not guess about what the answer would have been. If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had never been spoken.

[Likewise, if I sustained an objection to any exhibits or ordered them stricken, then those stricken exhibits are not evidence and you must not consider them.]

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.04

## JOINT INSTRUCTION NO. 12
### (Statements of Counsel)

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence.  They are intended only to help you understand and interpret the evidence from each party's perspective.

The questions that the lawyers ask are not evidence.  A lawyer's question that contains an assertion of a fact does not provide evidence of that fact.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.05

## JOINT INSTRUCTION NO. 13
### (Jury's Recollection Controls)

During this case, I or the lawyers may have called your attention to certain evidence.  If you remember that evidence differently from the way I or the lawyers stated it, then you should disregard our characterization of the evidence and rely upon your own memory.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.06

## JOINT INSTRUCTION NO. 14
### (Burden of Proof)

*The parties agree on this instruction except that Plaintiff recommends the bracketed language be removed from the instruction:*

The party who makes a claim has the burden of proving it.  This burden of proof means that the plaintiff must prove every element of his claim by a preponderance of the evidence.  To establish a fact by preponderance of the evidence is to prove that it is more likely so than not so.  In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty.  For example, it does not mean proof beyond a reasonable doubt as is required in criminal cases.

Whether there is a preponderance of the evidence depends on the quality and not the quantity, of evidence.  In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

If you believe that the evidence is evenly balanced, on an issue the plaintiff had to provide, then [the plaintiff has not carried the burden of proof and] your finding on that issue must be for the defendant.

[In this case, the defendant has asserted affirmative defenses that defendant must prove by a preponderance of the evidence.  When I discuss each of these defenses, I will instruct you on the defendant's burden of proof.]

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.08

**JOINT INSTRUCTION NO. 15**
**(Evidence Produced by Adversary)**

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is entitled to benefit from all evidence that favors him or it whether the party produced it or his or its adversary produced it.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.09

## JOINT INSTRUCTION NO. 16
## (Direct and Circumstantial Evidence)

There are two types of evidence: direct and circumstantial.  Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness.  Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from chain of other facts or circumstances.  For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow.  Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself.

You may consider both types of evidence equally. The law makes no distinction between the weight to given either direct or circumstantial evidence.  The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence.  You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with evidence.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.10

## JOINT INSTRUCTION NO. 17
### (Jury to Determine Credibility of Witness)

In evaluating the evidence and deciding what the facts are, you must consider and weigh the testimony of all the witnesses who have appeared before you.  You are the sole judges of the credibility of the witnesses.  In other words, you alone are to determine whether to believe any witness and to what extent any witness should be believed.  If there is any conflict in the testimony between a witness's testimony and other evidence, it is your function to resolve the conflict and to determine where the truth lies.

In deciding the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the appearance and the behavior of the witness on the witness stand; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case; or whether the witness has any friendship or animosity toward other persons in this case.

You may consider the reasonableness or unreasonableness, and the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or corroborated by other credible evidence.

If you believe that any witness has shown himself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth.

You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.01

**JOINT INSTRUCTION NO. 18**
**(Adopting Prior Inconsistent Statements)**

(This instruction should only be given if the evidence at trial supports it.)

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.09

## JOINT INSTRUCTION NO. 19
## ("If you find" and "if you decide")

When I instruct you that a party has the burden of proof on any proposition, or use the instruction "if you find" or "if you decide," I mean that you must be persuaded, considering all the evidence in the case that the proposition is more probably true than not.

**Authority**:  3 O'Malley *et al.*, Federal Jury Practice and Instructions (Civil) (5th ed.) § 104.04

**JOINT INSTRUCTION NO. 20**
**(Failure to Produce Stronger Available Evidence)**

(This instruction should only be given if the evidence at trial supports it.)

If a party to this case failed to produce relevant evidence which was peculiarly available to that party, and that party did not sufficiently explain why it was not produced, then you may infer that the evidence would have been unfavorable to that party.

If a party to this case failed to call a witness who could have given relevant testimony, even though the witness was peculiarly available to that party, and that party did not sufficiently explain why he or she was not called, then you may infer that the testimony would have been unfavorable to that party.

However, you should not draw such an inference from the absence of a material witness or evidence if he or she or it was equally available to both parties.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.04. The instruction set out above omits the final bracketed language of § 3.04, in accord with the Comment which suggest that to include this language permits the jury to invade the province of the Court in deciding what evidence is, or is not, "cumulative" or "material."

## JOINT INSTRUCTION NO. 21
### (Missing Witness)

(This instruction should only be given if the evidence at trial supports it.)

If a party does not call a witness who could have given relevant testimony on an issue in this case, when that witness was peculiarly available to the party, and if the witness's absence has not been sufficiently accounted for or explained, then you are allowed to conclude that the testimony of the witness would have been unfavorable to the party who failed to call the witness.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.06.

## JOINT INSTRUCTION NO. 22
### (Charts and Summaries)

(This instruction should only be given if the evidence at trial supports it.)

The lawyers or witnesses have shown you various charts and summaries to help explain the facts. The facts in these charts and summaries come from books, records, and other documents which are in evidence in the case. The charts or summaries themselves, however, are not evidence or proof of any facts. If any chart or summary does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

In other words, the charts or summaries are used only as a convenience; you should disregard entirely any chart or summary that does not state the truth based on the evidence.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.10

## JOINT INSTRUCTION NO. 23
### (Contract Defined)

A contract is an agreement between two or more parties to do or not to do something.


**Authority:** Standardized Civil Jury Instructions for the District of Columbia §11.01

## JOINT INSTRUCTION NO. 24
### (Extent of Damages – Proximate Cause)

The plaintiff is entitled to damages that the defendant's negligent or wrongful conduct proximately caused.  The defendant is liable only for the damages that his or her conduct caused. If you find that defendant's conduct caused only part of the plaintiff's damages, then the defendant is liable only for that part.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §12.02

**JOINT INSTRUCTION NO. 25**
**(Burden of Proof – Speculative Damages)**

The burden of proof is upon the plaintiff to establish all elements of his damages by a preponderance of the evidence.   The plaintiff must prove his damages with reasonable certainty. You may only award the plaintiff damages for past, present or future [detriment] [harm] [injury] [expenses] that [is] [are] not speculative.  Speculative damages are those that might be possible but are remote or based on guesswork.

The plaintiff does not have to prove his exact damages, however.  You may award the plaintiff damages that are based on a just and reasonable estimate derived from relevant evidence. Similarly, the plaintiff does not need to show that there is an absolute certainty that the injury or loss will continue into the future.  You may award damages to compensate the plaintiff for injury and losses that probably will continue.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §12.03

## JOINT INSTRUCTION NO. 26
### (Duty to Mitigate Damages)

When a person suffers breach of contract, that person has a duty to do all that is reasonably within his power to minimize the damages.  In this case, Counterpart International claims that Jay Cooper failed to reasonably minimize his damages.

Counterpart International has the burden of proving that Jay Cooper has failed to take reasonable action to lessen the damages.  If Counterpart International has proved by a preponderance of the evidence that Jay Cooper has not acted as an ordinarily prudent person could or should have acted to avoid or lessen the damages, then Jay Cooper may not receive those damages which could or should have been lessened or avoided.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §12.07

## PLAINTIFF'S PROPOSED DISPUTED JURY INSTRUCTIONS

### PLAINTIFF'S INSTRUCTION NO. 1
**(Equality of Litigants – Individuals and Corporations)**

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion.  It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.   All persons, including corporations, stand equal before the law and are to be treated as equals in this court.


**Support**:  The above instruction is an amalgam of Standardized Civil Jury Instructions for the District of Columbia (LexisNexis 2006 ed.) (hereinafter "SCJIforDC") §§ 1.11 and 1.12.  It simply removes two sentences (the fifth and seventh) from Instruction 1-11, both of which emphasize fairness to corporate parties.  There is no balancing language to tell the jury that the fact that Plaintiff is an individual litigant should not be held against him and that he has the same right to a fair trial as a corporation.  Removing those two sentences makes the instruction more neutral and removes what could be construed as an admonition to be more than fair to a corporation.  If one were to give both 1.11 and 1.12, one would still have omitted balancing language to remind the jury that Plaintiff as an individual should not be treated less well than is a corporation.

**Defendant's Objection:** Defendant objects to this instruction because Counterpart International is a nonprofit organization, not a corporation.  Defendant offers Defendant's Instruction No. 1, in lieu of Plaintiff's Instruction No. 1.

**<u>PLAINTIFF'S INSTRUCTION NO. 2</u>**
**(Consideration of the Evidence – Corporate Party's Agents and Employees)**

A corporation may act only through natural persons as its agents or employees.  In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.

**Support**:  3 O'Malley *et al.*, Federal Jury Practice and Instructions (Civil) (5th ed.) ("FJPI") § 103.31

**Defendant's Objection:** Defendant objects to this instruction because Counterpart International is a nonprofit organization, not a corporation.  Defendant will consent to this instruction if all references to "corporation" are changed to "nonprofit organization."

## PLAINTIFF'S INSTRUCTION NO. 3
### (Evidence in the Case)

You may consider only the evidence properly admitted in the case. Evidence includes the

sworn testimony of witnesses, exhibits admitted into evidence, deposition testimony read into the

record, and facts stipulated and agreed to by counsel. You may consider any facts to which all

counsel have agreed or stipulated to be undisputed evidence.

**Support**: This instruction is identical to SCJIforDC § 2.01, Instruction 2-1, with the addition of the words "deposition testimony read into the record" as an additional category of evidence. This language has been added because Plaintiff plans to read deposition testimony into the record. As an alternative, the Court might want to give Instruction 3.05 at this point (see discussion below).

**Defendant's Objection:** Defendant reserves the right to object to this instruction after reviewing Plaintiff's deposition testimony designations, to the extent Defendant objects to Plaintiff reading deposition testimony into the record.

## PLAINTIFF'S INSTRUCTION NO. 4
### (Evidence – Requests for Admission)

Plaintiff Jay Cooper has introduced into evidence certain "requests for admission," identified as "Plaintiff's Exhibit 131."    These are deemed to be admitted by defendant Counterpart International to the extent they have not been denied because defendant had the opportunity to deny or challenge them and did not do so.  You are to take the facts stated in Plaintiff's Exhibit    that have not been denied as true for purposes of this case.


**Support:**  FJPI § 104.70, amended to reflect that Defendant denied many of the Requests for Admissions in Plaintiff's Exhibit    .

**Defendant's Objection:** Defendant objects to this instruction because only those requests for admissions admitted to by Defendant should be shown to the jury.

31

**PLAINTIFF'S INSTRUCTIONS NO. 5**
**(Evidence – Answers to Interrogatories)**

Plaintiff has introduced into evidence certain interrogatories – that is, questions together with answers signed and sworn to by the Defendant.  The Defendant is bound by its sworn answers.

By introducing an opposing party's answers to interrogatories, that party – here the Plaintiff – does not bind itself to those answers.  The introducing party may challenge the opposing party's answers in whole or in part or may offer contrary evidence.

**Support:**   FJPI § 104.72, amended to reflect that only the Plaintiff has offered interrogatory answers into evidence, which is the only circumstance known to Plaintiff at the time of propounding these instructions.  If both parties do so, the Instruction should be returned to its model language.

**Defendant's Objection:** Defendant objects to this instruction because it excludes a key instruction to the jury.  The jury is not required to consider a party's answers to interrogatories as true, or required to give them any more weight than any other evidence. It is up to the jury to determine what weight, if any, should be given to any interrogatory answer that is admitted as evidence.  *See* 4-74 Model Federal Jury Instructions – Civil ¶74.07, 74-13.

**PLAINTIFF'S INSTRUCTION NO. 6**
**(Inferences)**

In arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence, however, you are not limited solely to the statements of the witnesses. In other words, you are not limited to what you see and hear as the witnesses testify. You are permitted to draw from the facts that you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.

**Support:**   This instruction is a combination of the clearest parts of two standard instructions:  SCJIforDC § 2.03, Instruction 2-3 and FJPI § 104.20

**Defendant's Objection:** Defendant objects to this instruction because Standardized Civil Jury Instructions for the District of Columbia §2.03 is sufficiently clear.  Defendant offers Defendant's Instruction No. 3 in lieu of Plaintiff's Instruction No. 6.

## <u>INSTRUCTION NO. 6a</u>
**(Number of Witnesses)**

The relative weight of the evidence on a particular issue is not determined by the number of witnesses testifying for either side.  You should consider all the facts and circumstances in evidence to determine which of the witnesses are worthy of greater belief.  You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side.  Indeed, the testimony of a single witness, which you believe to be the truth, is enough to prove any fact.

If, after considering all the evidence in the case, you hold a greater belief in the accuracy and reliability of one or a few witnesses' testimony, then you may base your verdict on that testimony, even though a larger number of witnesses may have testified to the contrary.

**Support**:  SCJIforDC § 3.02, Instruction 3-2

**Defendant's Objection**: Defendant objects to this instruction because it is unnecessary and confusing.  In the Joint Pretrial Statement, the parties designated the same number of witnesses.

## <u>PLAINTIFF'S INSTRUCTION NO. 7</u>
### (Suppression or Fabrication of Evidence)

If you should find that a party willfully suppressed evidence in order to prevent its being presented in this trial, you may consider such suppression in determining what inferences to draw from the evidence or facts in the case.

**Support:** FPJI § 104.27

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant in this litigation.

35

## PLAINTIFF'S INSTRUCTION NO. 8
### (Depositions as Evidence)

During the trial of this case, certain testimony has been read to you.  You should give to this testimony the same consideration as to its weight and credibility, as you give to the testimony of witnesses who testified here in court.  You must not discount any testimony merely because it was read to you.


**Support:**  SCJIforDC § 3.05, Instruction 3-5;  FJPI § 105.02

**Defendant's Objection:** Defendant reserves the right to object to this instruction after reviewing Plaintiff's deposition testimony designations, to the extent Defendant objects to Plaintiff reading deposition testimony into the record.

## <u>PLAINTIFF'S INSTRUCTION NO. 8.a</u>
### (Impeachment -- Inconsistent Statement or Conduct (Falsus in Uno Falsus in Omnibus))

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If the witness made the prior inconsistent statement at a deposition, then you may also treat that prior statement as evidence in this case – that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If the witness was not at a deposition when he or she made the statement, then you may not treat the prior statement as evidence of the facts in the statement.  You may consider the statement only to evaluate the witness's credibility, that is, you may use the prior statement only to determine whether to believe the witness's present testimony in court.


**Support**:  This Instruction is a combination of the clearest parts of FJPI §§ 105.04 and 105.09 and  SCJIfor DC §3.08, Instruction 3-8

**Defendant's Objection**: Defendant objects to this instruction because Standardized Civil Jury Instructions for the District of Columbia §3.08 is sufficiently clear.  Defendant offers Defendant's Instruction No. 3.a in lieu of Plaintiff's Instruction No. 8a.

## PLAINTIFF'S INSTRUCTION NO. 9
### (Contract Formation – Elements)

In this case, there is a claim for breach of contract. However, before deciding that claim, you must first determine if a contract was formed between the parties, and, if so, what the terms of that contract were.

To find that there was a contract, you must find three things. First, you must find that the parties came to a meeting of the minds on the terms and conditions of the contract. A "meeting of the minds" occurs when both parties have the same understanding of the essential terms of the contract and agree to those terms. Ordinarily, when one party makes an offer, and the other accepts that offer, there is a "meeting of the minds."

Second, you must find that the parties intended to be bound by the contract. Third, you must find that the contract was supported by consideration. I will explain more about "Intent" and "Consideration" in a moment. Just because the parties may have negotiated for a contract, or even signed a document that purports to be a contract, does not necessarily establish that an enforceable contract was created.

If you find that there was no contract, then your verdict must be for the defendant on the breach of contract claim. However, if you find that there was a contract, then you must consider what the terms of the contract were and whether there was a breach of those terms. In a moment, I will instruct you on how to determine the terms of a contract and whether there was a breach of those terms.

**Support**: SCJIforDC § 11.02, Instruction 11-2, omitting the optional language concerning a contract formed by the conduct or actions of the parties.

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unnecessary since the parties have agreed to stipulate that Cooper and Counterpart were parties to a written employment contract.

## PLAINTIFF'S INSTRUCTION NO. 10
### (Offer)

A person makes an offer when that person proposes certain contract terms and communicates them to another part for the purpose of entering into a contract. To be a valid offer, the terms of the offer must be clearly stated. Also, the offer must invite an acceptance by the party to whom the offer is made. If the other party accepts the offer, the each party has a legal duty to proceed with the contract.

**Support**: SCJIforDC § 11.03, Instruction 11-3

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unnecessary since the parties have agreed to stipulate that Cooper and Counterpart were parties to a written employment contract.

## PLAINTIFF'S INSTRUCTION NO. 11
### (Acceptance)

A person accepts an offer when that person makes an unconditional promise to be bound by the terms of the offer.  A person can make an acceptance by words or conduct.  Ordinarily, a person can make an acceptance in any reasonable manner designed to communicate to the offering party that he agrees with the offer's terms.

However, if the party making the offer requests that acceptance be made in a certain specified manner, then acceptance must be made in the requested manner.  Acceptance in any other manner constitutes a rejection of the offer or a counteroffer.

Some offers require performance of a specific act to constitute acceptance.  If the terms of the offer require the accepting party to perform an act rather than to make a promise, then the performance of the requested act constitutes acceptance of the offer.  If a person fails to perform in the manner requested by the offering party, then there is no acceptance regardless of the other's intent to accept.

**Support**:  SCJIforDC § 11.04, Instruction 11-4

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unnecessary since the parties have agreed to stipulate that Cooper and Counterpart were parties to a written employment contract.

## PLAINTIFF'S INSTRUCTION NO. 12
### (Consideration)

To decide if there is a contract, you must determine whether there was consideration for the contract.   Consideration is something of value given by each party to the contract. Consideration can fall into one of three categories.   Consideration can be a transfer of money or goods.   Consideration can be a promise to do or not do something.   Consideration can be the performance of a requested act.

You are not to concern yourself about whether the consideration given by one party was "adequate," "enough," or "fair."   You are only to consider whether there was any consideration for the contract.

In this case, if you find that there was not consideration, then you must find that no contract existed between there parties.  If you find that there was consideration, and that all of the other necessary elements to a contract existed, then you may find that a contract existed between the parties.

**Support**:  SCJIforDC § 11.05, Instruction 11-5

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unnecessary since the parties have agreed to stipulate that Cooper and Counterpart were parties to a written employment contract.

## PLAINTIFF'S INSTRUCTION NO. 13
### (Intent to Be Bound)

The parties must intend to be bound by the contract before a valid contract can exist.  In determining whether the parties intended to be bound, you may consider the words and conduct of the parties during the negotiation of the contract, as well as all surrounding circumstances.

**Support**:  SCJIforDC § 11.07, Instruction 11-7

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unnecessary since the parties have agreed to stipulate that Cooper and Counterpart were parties to a written employment contract.

## PLAINTIFF'S INSTRUCTION NO. 14
### (Express and Implied Contracts)

A contract may be express or implied. An express contract is a contract in which the terms are stated either orally or in writing. An implied contract is a contract in which the terms of the parties' agreement are inferred from the circumstances or conduct of the parties, even though the terms of the contract are not expressed in words.

An express contract may include terms that are implied. In addition, the relationship between contracting parties may be defined by the terms of both an express contract and an implied contract.

**Support:** the first two sentences of this Instruction are from SCJIforDC § 11.09, Instruction 11-9. The third and fourth sentences are to express the idea that implied terms such as the duty of good faith and fair dealing may be part of a written contract, to lead into the following instruction.

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant. There is no implied contract alleged in Plaintiff's Amended Complaint.

### PLAINTIFF'S INSTRUCTION NO. 15
### (Implied Contractual Terms – The Duty of Good Faith and Fair Dealing)

If you find that a contract or contracts existed between Jay Cooper and Counterpart International, you should next consider the terms of those contracts.

One matter to consider is whether those contracts contain implied terms and obligations not expressly set out.

One example of such an implied term is the duty of good faith and fair dealing, sometimes referred to as the implied covenant of good faith and fair dealing.

Every contract, including every contract that governs an employer-employee relationship, imposes upon each party a duty of good faith and fair dealing in its enforcement and in its performance.

Every contractual provision, including a provision permitting an employer to terminate a contract of employment under certain circumstances, is modified by the implied duty to exercise that provision in accordance with the obligation of good faith and fair dealing.

**Support:** Restatement (Second) Contracts § 205 & cmts a, d, e (1981); *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988) (*per curiam*); *Allworth v. Howard Univ.*, 890 A.2d 194, 201-02 (D.C. 2006); *Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991); *Wade v. Kessler Instit.*, 778 A.2d 582 (N.J. Super. 2001); *Sadowski v. Dell Computer Corp.*, 268 F. Supp.2d 129, 137 (D. Conn. 2003) (apparently unbridled discretion given by contract to one party to cancel must be exercised in good faith, and whether or not it has been is a jury question); *Communications Transmission, Inc. v. Tristar Communications, Inc.*, 798 F. Supp. 406 (W.D.Tex 1992) (party with unilateral right to decide the nature and extent of the other party's performance under a contract must exercise that power in good faith); *Fortune v National Cash Register Co.*, 364 N.E.2d 1251 (Mass 1977) (employer's decision to terminate a long-standing employee must be exercised in good faith even though the employment is at will); Perritt, H, Employee Dismissal Law & Practice § 6.29 (4th ed.)

**Defendant's Objection:** Defendant objects to this instruction because Counterpart's duty of good faith and fair dealing is not a separate claim in this litigation. The jury need not decide whether Counterpart violated its duty of good faith and fair dealing in order to decide if Counterpart is liable for breach of contract. Even if Plaintiff had pled a separate claim for breach of the implied covenant of good faith and fair dealing, that claim could not stand as an independent action because Plaintiff's breach of contract claim already incorporates the

supporting allegations.  *See WMATA v. Quik Serve Foods*, 2006 U.S. Dist. LEXIS 24510, *14 (U.S. D.C. 2006)(dismissing plaintiff's implied duty of good faith claim because the allegations of bad faith were already incorporated in plaintiff's breach of contract claim.); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.' ").

**PLAINTIFF'S INSTRUCTION NO. 16**
**(Good Faith – Defined)**

Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed

common purpose and consistency with the justified expectations of the other party; it excludes a

variety of types of conduct characterized as involving "bad faith" because they violate community

standards of decency, fairness or reasonableness.

**Support:**  Restatement (Second) Contracts § 205 at 100, cmt a (1981)

**Defendant's Objection:** Defendant objects to this instruction because Counterpart's duty
of good faith and fair dealing is not a separate claim in this litigation.  The jury need not decide
whether Counterpart violated its duty of good faith and fair dealing in order to decide if
Counterpart is liable for breach of contract. Even if Plaintiff had pled a separate claim for breach
of the implied covenant of good faith and fair dealing, that claim could not stand as an
independent action because Plaintiff's breach of contract claim already incorporates the
supporting allegations.  *See WMATA v. Quik Serve Foods*, 2006 U.S. Dist. LEXIS 24510, *14
(U.S. D.C. 2006)(dismissing plaintiff's implied duty of good faith claim because the allegations
of bad faith were already incorporated in plaintiff's breach of contract claim.); *Jacobsen v. Oliver*,
201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty
of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an
established cause of action.' ").

## PLAINTIFF'S INSTRUCTION NO. 17
### (Fair Dealing – Defined)

"Fair dealing" involves reasonable rather than arbitrary or capricious action.

      **Support**: *Allworth v. Howard Univ*., 890 A.2d 194, 202 (D.C. 2006)

      **Defendant's Objection**: Defendant objects to this instruction because Counterpart's duty of good faith and fair dealing is not a separate claim in this litigation. The jury need not decide whether Counterpart violated its duty of good faith and fair dealing in order to decide if Counterpart is liable for breach of contract. Even if Plaintiff had pled a separate claim for breach of the implied covenant of good faith and fair dealing, that claim could not stand as an independent action because Plaintiff's breach of contract claim already incorporates the supporting allegations. *See WMATA v. Quik Serve Foods*, 2006 U.S. Dist. LEXIS 24510, *14 (U.S. D.C. 2006)(dismissing plaintiff's implied duty of good faith claim because the allegations of bad faith were already incorporated in plaintiff's breach of contract claim.); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.' "). Defendant further objects to this instruction because under the contract at issue in this litigation, Counterpart had the right to terminate Cooper if it was not satisfied with his performance and that decision could be arbitrary. This instruction implies a "just cause" requirement that does not exist.

## PLAINTIFF'S INSTRUCTION NO. 18
### (Implied Contractual Terms – Evidence Absence of Good Faith and Fair Dealing)

You may find a failure to observe the implied duty of good faith and fair dealing if you find, for example, evidence of subterfuge and evasion, interference with or failure to cooperate with the other party's performance, bad faith assertion of defenses to contract claims, falsification of facts, rejection of performance for unstated reasons, or abuse of power to terminate a contract.

**Support:**  Restatement, Second, Contracts § 205, comments d and e; 82 Am. Jur.2d § 71.

**Defendant's Objection:** Defendant objects to this instruction because Counterpart's duty of good faith and fair dealing is not a separate claim in this litigation.  The jury need not decide whether Counterpart violated its duty of good faith and fair dealing in order to decide if Counterpart is liable for breach of contract. Even if Plaintiff had pled a separate claim for breach of the implied covenant of good faith and fair dealing, that claim could not stand as an independent action because Plaintiff's breach of contract claim already incorporates the supporting allegations.  *See WMATA v. Quik Serve Foods*, 2006 U.S. Dist. LEXIS 24510, *14 (U.S. D.C. 2006)(dismissing plaintiff's implied duty of good faith claim because the allegations of bad faith were already incorporated in plaintiff's breach of contract claim.); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.' ").

## PLAINTIFF'S INSTRUCTION NO. 19
### (Provisions of Statutes, Ordinance or Regulation)

Because everyone is required to act with knowledge of what the law forbids and what the law requires to be done, the provisions of law set forth in Office of Management and Budget, Circular A-122, Cost Principles for Non-Profit Organizations, Plaintiff's Exhibit 41, are to be considered by the jury as one of the circumstances in evidence in the case, surrounding the conduct of both the plaintiff and the defendant.

**Support:** FJPI § 120.40

**Defendant's Objection:** Defendant objects to this instruction because OMB Circular A-122 is not relevant to Plaintiff's breach of contract claim or false light claim. As stated in Defendant's Motion in Limine, the complaint alleges Counterpart terminated Cooper to "avoid the questions Cooper had raised" about financial irregularities and "to prevent Cooper from commencing a grievance procedure" to challenge his termination. Evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations, including OMB Circular A-122, and the grounds upon which Cooper intends to offer it, is irrelevant to Cooper's breach of contract claim for two reasons.

First, Cooper does not have to prove Counterpart violated any USAID regulations to establish breach of contract. Cooper does not even allege any such claim in the complaint. Cooper must prove that Counterpart terminated him even though it was "satisfied" with his performance. Whether or not Counterpart complied with USAID regulations is irrelevant to this issue. If Cooper proves he was terminated for making complaints instead of for unsatisfactory performance, Cooper is not obligated to prove his complaints were correct under the USAID regulations.

Second, evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations is irrelevant because the undisputed factual record reveals Cooper has no direct evidence Counterpart terminated him because he questioned Counterpart's compliance with USAID regulations. Cooper admitted in his deposition that he never had any evidence of any financial irregularities while he was employed and that it was standard industry practice for organizations to allocate USAID funds from one project to another. Most importantly, Cooper admitted that shortly after he was terminated he told a USAID official that Counterpart had not engaged in any financial practices that would warrant a government investigation. The undisputed facts further show Counterpart retains an independent outside auditor to audit Counterpart's financial practices for compliance with USAID regulations on a yearly basis. Shortly after Cooper was terminated, the auditors conducted an audit of the USAID funded programs and found Counterpart in compliance.

Allowing Cooper to introduce evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations will expand the focus of this straight-forward breach of contract case into a confusing, prejudicial and lengthy side trial involving thousands of financial documents, industry financial practices and extremely complex governmental regulations. Indeed, Counterpart produced over 6000 documents, most of which related to financial practices.

This lengthy side trial will prejudice Counterpart and confuse the jury by forcing them to assess extensive additional evidence and testimony relating to a matter that is irrelevant to the underlying breach of contract claim.

## PLAINTIFF'S INSTRUCTION NO. 20
### (Implied Contractual Terms – The Employee Handbook)

Contractual obligations and rights may be implied from an employee handbook or manual. It is up to you to decide, from all the evidence before you, whether the parties to this case intended that Counterpart International's Manual for Employees in Foreign Areas, Plaintiff's Exhibit 7, was intended to bestow rights and obligations on it and on its employees. Although an employer may attempt to provide language to disclaim any implied contractual rights arising from an employee handbook, such a disclaimer is but one piece of evidence and does not, by itself, answer the question of the intent of the parties concerning whether the handbook creates contractual obligations, which is for you to decide.

**Support:** *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731 (D. C. Cir. 1998); *Sisco v. GSA Nat. Capital Fed. Credit Union*, 689 A.2d 52 (D.C. 1997); *Strass v. Kaiser Foundation Health Plan of Mid-Atlantic*, 744 A.2d 1000, 1011-12 (D.C. 2000); *Nickens v. Labor Agency of Metro Washington*, 600 A.2d 813, 817 (D.C. 1991); H. Perritt, Employee Dismissal Law & Practice (4th ed.) § 6.31 at 397 & n. 462.

**Defendant's Objection:** Defendant objects to this instruction because in his Amended Complaint Plaintiff failed to allege his breach of contract claim was based on contractual obligations and rights created by Counterpart's employee handbook. The only contract at issue in this case is the December 2003 written agreement between the parties. Defendant further objects to this instruction because it is misleading and confusing.

## PLAINTIFF'S INSTRUCTION NO. 21
### (Oral Contracts)

The plaintiff has alleged that there was also an oral contract between Mr. Cooper and Counterpart International.

A valid oral contact can exist between parties.  The elements of an oral contract are no different from those of any other contract.

**Support:**  SCJIforDC § 11.10, Instruction 11-10 §  11.12

**Defendant's Objection:** Defendant objects to this instruction because in his Amended Complaint Plaintiff failed to allege the existence of an oral contract. The only contract at issue in this case is the December 2003 written agreement between the parties. Defendant further objects to this instruction because it is misleading and confusing.

**PLAINTIFF'S INSTRUCTION NO. 22**
**(Breach of Contract – Defined)**

In this case, Jay Cooper claims that there was a written contract between him and Counterpart International dated December 18, 2003. Jay Cooper also claims that there was an oral contract between him and Counterpart International entered into in August of 2004. Jay Cooper claims that both of these contracts contained an implied covenant or duty of good faith and fair dealing, which I have explained previously.

Jay Cooper claims that Counterpart International breached these contracts.

If you find that Counterpart International breached the contracts with Jay Cooper, then Counterpart International is liable to Jay Cooper for damages.

**Support:** This Instruction is based on the beginning of SCJIforDC § 11.17, Instruction 11-17. The last five paragraphs of Instruction 11-17 are not included as they appear to be making a distinction that is irrelevant in this case.

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant, misleading and confusing. Defendant further objects to this instruction because Counterpart's duty of good faith and fair dealing is not a separate claim in this litigation. The jury need not decide whether Counterpart violated its duty of good faith and fair dealing in order to decide if Counterpart is liable for breach of contract. Defendant further objects to this instruction because in his Amended Complaint Plaintiff failed to allege the existence of an oral contract. The only contract at issue in this case is the December 2003 written agreement between the parties.

## PLAINTIFF'S INSTRUCTION NO. 23
### (Anticipatory Breach – Defined)

A party who clearly indicates, by words or conduct, that it will not perform a duty under a contract, has breached that contract and is responsible for damages.  In addition, its breach may excuse the other party from performing under the contract.

If you find that Counterpart International clearly indicated to Jay Cooper that it would not perform under the contract, then you may find that Counterpart International breached the contract and excused Jay Cooper from performing under the contract.

**Support**: SCJIforDC § 11.18, Instruction 11-18

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant in this litigation.

## PLAINTIFF'S INSTRUCTION NO. 24
### (Excuse from performance)

If you find by a preponderance of the evidence that Jay Cooper made Counterpart International's performance impossible, or substantially contributed to preventing Counterpart International's performance, then Counterpart International is excused from performing under the contract.

If Jay Cooper's conduct merely made Counterpart International's performance more difficult, and not impossible, then Counterpart International is not excused from performance, and is liable to Jay Cooper.

**Support:**  SCJIforDC § 11.19, Instruction 11-19

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant in this litigation.

## PLAINTIFF'S INSTRUCTION NO. 25
### (Modification)

The law allows the parties to a contract to modify that contract later with an oral or written agreement. You must determine in this case whether the parties modified their contract. If you find that the parties entered into a later oral or written agreement with the intention of changing the terms of the original contract, you should find that the contract was modified.

Even if the written contract itself requires that all modification to it must be in writing, the law permits the parties to modify a written contract by a later oral agreement.

**Support:** SCJIforDC § 11.23, Instruction 11-23

**Defendant's Objection:** Defendant objects because it is irrelevant in this litigation.

## PLAINTIFF'S INSTRUCTION NO. 26
### (Damages – Jury to Award)

If you find for the plaintiff Jay Cooper, then you must award Cooper a sum of money which will fairly and reasonably compensate him for all the damage which he experienced which was proximately caused by Counterpart International.

**Support:** SCJIforDC § 12.01, Instruction 12-1, with the party names added for clarity.

**Defendant's Objection:** Defendant objects to this instruction because it duplicates other instructions proposed by the parties.

## PLAINTIFF'S INSTRUCTION NO. 27
### (Breach of Contract – Damages)

If you find that Counterpart International breached the contracts with Jay Cooper and that Counterpart's breach was not excused, then you must award Jay Cooper damages.

The measure of damages for a breach of contract is that amount of money necessary to place the injured party in the same economic position he would have been in if the contract had not been breached. To calculate the damages, first determine that amount of money the plaintiff would have received had the contract not been breached. Next, add both incidental damages and consequential damages, if any. Lastly, subtract from that any money Cooper saved because he did not have to complete the contract.

Incidental damages include any costs Jay Cooper incurred while making reasonable efforts to avoid losses, whether the efforts were successful or not.

Consequential damages include damages resulting from the breach, such as injury to persons or property.

Jay Cooper has the burden of proving all elements of damages by a preponderance of the evidence. You are to award Jay Cooper damages to fully compensate him for Counterpart International's breach. You must not award Jay Cooper damages for present or future harm which are speculative or remote, or which are based on guesswork or conjecture.

Jay Cooper is entitled to damages that were foreseeable at the time the contract was made. Damages are foreseeable if the are the sort that the parties would have reasonably envisioned, or are the sort that would flow naturally and obviously from the breach of the contract.

**Support:** SCJIforDC § 11.31, Instruction 11-31

**Defendant's Objection:** Defendant objects to this instruction because it is confusing and unclear. Defendant offers Defendant's Instructions Nos. 7 and 8 in lieu of Plaintiff's Instruction No. 27.

## PLAINTIFF'S INSTRUCTION NO. 28
### (Lost Earnings – Past and Present)

To determine the reasonable value of the lost wages and benefits suffered by Jay Cooper as a result of Counterpart's termination of his contract, you should consider Cooper's earnings and the value of the benefits he received before the termination and compute the amount that he would have earned had his contract run until the end of its term. If you find that Cooper has met his burden to prove by a preponderance of the evidence that he was to receive a raise at any time during the expected term of the contract, you should award him the financial benefit of that raise.

**Support:**  adapted for a contract action from SCJIforDC § 13.04, Instruction 13-4

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant and an inaccurate statement of the law regarding available damages for breach of contract.

## PLAINTIFF'S INSTRUCTION NO. 29
### (Lost Earnings – Future)

You may award Jay Cooper an amount that will reasonably and adequately compensate him for any loss of earnings which he is reasonably certain to suffer in the future.  In determining this amount, you are allowed to consider several factors:

1. Cooper's age, sex, health, physical and/or mental ability and earning capacity before the termination;

2. Cooper's likely future earnings for his remaining working life, if he had not been terminated under the circumstances of this case, reduced to present value;

3. Cooper's decreased earning capacity as a result of the termination and its surrounding circumstances;

4. Cooper's likely future earnings for his remaining working life, taking into account the termination and its surrounding circumstances, and how long it may affect both earnings and working life, reduced to present value;

5. The effects of inflation when estimating Cooper's future earnings.

**Support:**    SCJIforDC § 13.05, modified to reflect termination and surrounding circumstances rather than an injury

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant and an inaccurate statement of the law regarding available damages for breach of contract and false light invasion of privacy. Defendant further objects because any award of future damages would be speculative without expert testimony.

## PLAINTIFF'S INSTRUCTION NO. 30
### (Breach of Covenant of Good Faith and Fair Dealing – Tort Remedies Available)

If you find that Counterpart International breached its duty of good faith and fair dealing when it terminated Cooper's employment, you may consider whether contract damages are sufficient to hold Counterpart accountable or to make Cooper whole. If you find that contract damages are insufficient for these purposes, you may award Cooper compensatory and punitive damages that I will define for you.

In assessing this question you may consider whether there was a special element of trust and reliance in the employment relationship because of any or all of the following factors: 1) the length of Cooper's employment with Counterpart International. 2) the geographical location where Cooper was stationed to perform his duties for Counterpart; 3) the circumstances surrounding Counterpart's removal of its Grievance Procedure from its employee manual; 4) the opportunity, or lack thereof, that Counterpart gave Cooper to question, counter or explain his alleged job failings.

**Support:** *K Mart Corp v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1371-73 (1987) (finding the tort of bad faith discharge in an employer's breach of the covenant of good faith and fair dealing, a duty created by law; employer had fired the plaintiff to avoid vesting of his retirement benefits and denied him access to the procedures included in the company's manual; the court found contract damages inadequate to hold the employer accountable or to make the employee, dependent on the employer's good faith, whole); *Cleary v. American Airlines, Inc.*, 168 Cal. Rptr. 722 (Cal. App. 2 Dist. 1980) (citing as factors supporting the availability of tort damages longevity of service and failure to permit use of specific procedures it had for adjudicating disputes); *Wilder v. Cody Country Chamber of Commerce,* 868 P. 2d 211, 222 (Wyo. 1994) (permitting recovery of damages for tortious conduct arising from a breach of the implied covenant of good faith and fair dealing in an employment relationship because it "serves to balance the inherently unequal relationship between an employer and an employee;" the tort requires a special relationship of trust and reliance, such as longevity of employment or intent to avoid paying earned benefit); H. Perritt, Employee Dismissal Law & Practice (4th ed), § 6.29 at 391 & n. 419 and § 6.31 & n. 440.

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant and the damages proposed above are not available to Plaintiff under District of Columbia contract law.

## PLAINTIFF'S INSTRUCTION NO. 31
### (Wrongful Discharge)

In addition to his claim for breach of contract, Jay Cooper claims that Counterpart International should be liable to him for the tort of wrongful discharge because it terminated him for reasons that were contrary to public policy as expressed in the federal regulations that govern the accounting for government funds granted for use by particular projects.

If you find by a preponderance of the evidence 1) that Cooper was protesting to his superiors Counterpart's violation of the provisions of Plaintiff's Exhibit 41, Office of Management and Budget, Circular A-122, Cost Principles for Non-Profit Organizations, and 2) that Counterpart International terminated Cooper's employment solely because he protested a program of wrongful inflation of expenses charged to the federally-funded programs he managed in violation of Exhibit 41,  you may find Cooper's discharge unlawful and award him compensatory tort damages, as will be defined below.

**Support**: *Liberatore v. Melville Corp*., 168 F.3d 1326 (D.C. Cir.1999) (wrongful termination claim survives a Rule 12(b)(6) motion when the termination was because of the employee's threat to lodge a complaint of the employer's violation of federal and state law governing the storage of drugs); *Carl v. Children's Hospital*, 702 A.2d 159, 161 (D.C. 1997) (en banc) (the public policy exception to the employment at will doctrine is broadened to include discharge in response to giving public testimony); *Adams v. George W. Cochran & Co., Inc.,* 597 A.2d 28, 34 (D.C. 1991) (wrongful discharge for refusal to drive a truck without an inspection sticker in violation of a municipal regulation); *Holman v. Williams*, 436 F. Supp. 2d 68, 76-78 (D.D.C. 2006) (the tort of wrongful termination will lie when an employee is fired for repeatedly raising concerns to colleagues and supervisors about illegal steering of government contracts, although employee did not report this activity to law enforcement or threaten to do so): *MacIntosh v. Building Owners & Manager's Ass'n*, 355 F.Supp.2d 223,   (D.D.C. 2005) (wrongful termination claim based on firing for failure to fraudulently inflate expenses under a government contract survives a Rule 12(b)(6) motion, despite Plaintiff's failure to cite the False Claims Act; court relies on the liberal pleading requirements of the FRCP); *Compare*, *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 34 (D.C. 1991) (tort action for wrongful discharge is narrowly defined, such as when the discharge is caused solely by the employee's refusal to violate the law)

Although this theory of recovery was not pled in the complaint, it should be allowed to go to the jury by virtue of Rule 15(b), FRCivP, which permits amendments to pleadings to conform to evidence at trial and states that the court "shall do so freely when the presentation of the merits

of the action will be subserved thereby . . . ."   In this case the evidence will show that traditional contract remedies are insufficient to make Cooper whole or to hold Counterpart accountable. Defendant can claim no prejudice, since the same evidence of underlying fact supports this theory of recovery as supports plaintiff's breach of contract claim.  That evidence has been the focus of pre-trial discovery in this case, with Defendant having taken advantage of the opportunity to advance its denial of the operative facts.  Defendant surely has known that the underlying facts supporting a wrongful discharge claim have been the subject of discovery and would be litigated at trial.  See *Kirkland v. District of Columbia*, 70 F. 3d 629 (D.C. Cir. 1996)  Defendant's objection to such evidence has simply been founded on its attempts to read "good faith and fair dealing" out of the contract.  That position failed in this Court's ruling on Defendant's Motion for Summary Judgment.

**Defendant's Objection:** Contrary to Plaintiff's Jury Instruction, Plaintiff has not plead a claim for wrongful termination.

**PLAINTIFF'S INSTRUCTION NO. 32**
**(Compensatory Damages – Wrongful Discharge)**

If you find in favor of Jay Cooper on his claim for wrongful discharge, then you should

consider whether he is entitled to any damages.   You may award damages for any of the

following items that you find, by a preponderance of the evidence, that Counterpart International

proximately caused.

1.   any emotional distress that the plaintiff  has suffered in the past;

2.   any emotional distress that the plaintiff may suffer in the future;

3.   any inconvenience the plaintiff has experienced;

4.   any inconvenience the plaintiff may experience in the future;

5.   any loss of earnings incurred by the plaintiff;

6.   any loss of earnings or earning capacity that the plaintiff may incur in the future;

7.   any damage or loss to plaintiff's personal property

**Support:**   adapted from SCJIforDC § 13.01, Instruction 13-1, omitting the elements
centered on physical injuries; *Adams v. George W. Cochran & Co*., 597 A.2d 28 (D.C. 1991)
(plaintiff may recover damages for emotional distress unaccompanied by physical injury)

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant and
because the Amended Complaint does not include a claim for wrongful termination.  Plaintiff has
had ample opportunity to file a motion for leave to amend his complaint to include a claim for
wrongful termination and never did so. Plaintiff cannot include a new claim in this case at this
late stage in the litigation through jury instructions.

## PLAINTIFF'S INSTRUCTION NO. 33
### (Additional remedies available by virtue of 31 U. S. C. § 3730(h))

If you find by a preponderance of the evidence that Cooper was terminated by Counterpart International because of his lawful acts in furtherance of an action under the Civil False Claims Act, 31 U.S.C. § 3730(h), Cooper shall be entitled to additional relief, including two times the amount of back pay, interest on the back pay, litigation costs and reasonable attorneys' fees.

The False Claims Act, 31 U.S.C. 3729(a), is a federal statute which criminalizes making a false claim to induce inflated payment from the Government.

The False Claims Act contains a provision known as the Civil False Claims Act, 31 U.S.C. § 3730(h), which permits a citizen to bring a civil action in the name of the Government against a party it believes to have submitted false claims for payment to the Government of the United States and thereby violated the False Claim Act.

Lawful acts in furtherance of an action under the Civil False Claims Act include investigation into whether an employer is filing false claims with the government. In order to have engaged in acts in furtherance of the Civil False Claims Act a person need not have actually started a lawsuit under the act or complained to the Government. It is sufficient to show acts in furtherance of the Act if you find that Cooper complained to his superiors at Counterpart about activities that would be false claims within the meaning of the False Claims Act.

In order to find that Cooper is entitled to the additional remedies set out above, you must find by a preponderance of the evidence not only that Cooper was engaged in lawful acts in furtherance of an action under the Civil False Claims Act, and that Cooper was terminated because of those activities, but also that Cooper in good faith believed that Counterpart submitted false claims to the Government.

**Support:**

**Expected Proof at trial relevant to the question presented:**[1]

- Counterpart receives a large portion of its revenue from contracts awarded by USAID. Counterpart is required by the terms of its agreements with USAID and with applicable regulations to spend the money awarded under each such agreement for the benefit of the project for which it was awarded, plus a negotiated percentage for overhead.
- Under applicable regulations, Counterpart is required to apportion funds spent for costs (including salaries) that benefit more than one program to each particular program in proportion to the benefit accorded each such program.
- Counterpart has during the relevant period consistently used funds awarded for programs managed by Cooper for the following improper purposes, not apportioned to any benefit they provide to Cooper's programs:
  - o Funds for which fraudulent claims have been made and which have been received include claims to cover the salary of the supervisor who terminated Cooper (Arlene Lear) as well as two other employees who pushed for his termination.
  - o Funds for which fraudulent claims have been made and which have been received include claims for monies to support the development of new proposals designed to position Counterpart to receive future grants from USAID;  Arlene Lear receives salary and bonuses in substantial part based on her ability to bring in new grants from USAID to Counterpart.
- Failure to apportion such costs accurately has caused Counterpart to disregard its own time records and file claims for and receive from USAID funds for services it has not rendered to programs managed by Jay Cooper for which those funds were granted.  We contend these are false and fraudulent claims.[2]
- Jay Cooper complained about these matters before his termination.[3]
- Cooper was fired after refusing to agree to a budget that allowed funds from a project he managed to be used for salaries and expenses to be used to develop new grant proposals for Counterpart.
- Cooper contemplated before his firing what he could do to prevent the looting of his projects and consulted a publication put out by the USAID Inspector General about accounting principles and fraud awareness.
- Counterpart officials instrumental in Cooper's termination were concerned that Cooper was maintaining "secret files" that might reveal their wrongdoing; their perceived need to

---

[1] The proof listed above has been developed in discovery in this case and trial evidence can be expected to follow suit.   See generally, Plaintiff's Opposition to Defendant's Motion for Summary Judgment (D. 27) at Part II and its Attachments 1-3 (Plaintiff's Statement of Genuine Issues) at ¶¶ 7, 11-16 and Declaration of Jay Cooper at ¶¶ 12-16, 20-23, 27-30, 45d, 45f, 46, 51.

[2]   Mr. Dorcus, Counterpart CFO, explained how he makes the claims that allows Counterpart to draw down on the funds from each program grant.

[3]   The evidence of Cooper's specific complaints and to whom they were delivered is set out at D 27, attachments 1-2 (genuine Issues nos. 11, 12, 22).  Cooper did not have the specific evidence of the extent to which Lear's salary was charged to his projects until discovery in this case.

search for and seize those "secret files" motivated the actions giving rise to Cooper's tort claim and serves to prove that Counterpart was on notice of Cooper's investigations.

- Days before he was fired, Cooper reported to Counterpart's Director of Human Resources that he had found financial hanky-panky and it was possible that he would report it to the USAID's Inspector General's office. Counterpart relied on a report by this HR Director in deciding to fire Cooper.

- "Cooper's job responsibilities did not include monitoring Counterpart's compliance with USAID accounting regulations; nor did it include notifying the company's CFO of improper budgets prepared by the Region's Finance Director..

**Relevant authorities:**

**The Statute:** Section 3730(h) of Title 31 which permits the remedies we seek does not limit itself to persons who file civil actions for false claims. It could easily have done so with limiting language such as that in Section 3730(g), which refers to "civil action brought under this section." Instead, it speaks of "any employee" who is, inter alia, discharged because of acts "in furtherance of an action under this section."

**Cases:** The leading authority in this Circuit interpreting what actions are in furtherance of an action under the False Claims Act and thus "protected actions" giving rise to a right to remedies for retaliation under § 3730(h), as well as the necessary elements of that cause of action, is *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C.Cir. 1998), a case widely cited with approval in other Circuits. *Yesudian* draws the following conclusions relevant to Cooper's situation:

- "protected activity" need not involve filing a qui tam case, or even developing a completed or winning qui tam action[4]

- "protected activity" can encompass mere investigation into matters as long as those matters involve "false or fraudulent" claims

- "protected activity" can be present even if a Plaintiff has not gathered all the evidence of the false or fraudulent claims at the time of the retaliation

- "protected activity" need not encompass an intention to file a qui tam action, as long as the matter being investigated "reasonably could be filed"

- Congressional intent behind enactment of §3730(h) is that "protected activity" should be interpreted broadly

- The plaintiff need not communicate the results of his investigation to anyone outside of his employing institution; pursuing internal remedies is consistent with the purposes of the statute

- The plaintiff need not threaten to report his findings outside the institution,[5] as long as the employer knows that what the employee is looking into reasonably could be filed as a qui tam suit

- The fact that an employer is distressed by a plaintiff's whistleblowing activities is competent evidence of notice

---

[4]  It is significant that in *Yesudian* the retaliation claim was allowed to proceed after the dismissal of the *qui tam* action itself was affirmed. See also on this point the cases cited below.
[5] See *Yesudian*, Note 9.

*Yesudian* has been widely followed in this jurisdiction:  See  *Shekoyan v. Sibley Int'l Corp.,* 409 F.3d 414 (D.C. Cir 2005) (§3730(h) claim brought although no qui tam action ever brought; summary judgment entered for Defendant on particular facts, although *Yesudian* principles recognized); *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004);*United States ex rel. Barrett v. Columbia/HCA Healthcare,* 251 F. Supp.2d 28 (D.D.C. 2003)

Rulings from other circuits are consistent with the major teachings of *Yesudian. See, e,g,* *United States ex rel. Karvelas v. Melrose-Wakefield Hospital et al.,* 360 F.3d 220 (1st Cir. 2004) (summary judgment for Defendant due to lack of allegations of fact supporting the element of causation; Yesudian principles applied); *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861 (4th Cir. 1999); *Neal v. Honeywell, Inc.,*826 F. Supp. 266, 272 (N. D. Ill. 1993)*, aff'd,* 33 F.3d 860 (7th Cir. 1994) (§3730(h) action stands although no qui tam action ever brought); *Childree v. UAP/GA AG Chem. Inc.,* 92 F.3d 1140 (11th Cir. 1996) (no qui tam action ever filed or contemplated, yet §3730 action stands)

**Prayers for relief:**
Cooper's Amended Complaint seeks contract and tort damages, as well as "such other amounts as shall be proven at trial" and "such other and further relief as the Court deems just and proper."   It is wholly proper to permit amendment of a complaint to match proof under Rule 15(b) of the Federal Rules of Civil Procedure.  (See discussion of Rule 15(b) under the previous instruction for Wrongful Discharge.)   In addition, Rule 54(c) of the FRCP is additional support for the availability of the remedies sought.  That section provides that, with the exception of a judgment by default, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

**No surprise to Defendant:**
Counterpart has had a spreadsheet including a line item for attorney's fees since service of Plaintiff's Initial Disclosures on October 21, 2005.   Counterpart's fraudulent use of program funds has been the subject of extensive inquiry in two separate depositions of Counterpart's CFO Harry Dorcus.  Defendant certainly has known that the factual issues underlying §3730(h) were at issue in this case.   Defendant should not be surprised and is not prejudiced in facing the possibilities of these remedies.  See *Minebea. Ltd. v. Papst*, 444 F. Supp.2d 68, 396 (D.C. 2006) (party given leave to amend complaint post-trial when it gave the other party some notice of this claim a year in advance of trial, when the facts involved in the claim were brought out in the course of trial and because the claim was tried on the merits; for all these reasons the other party was not prejudiced); *Johnston v. Specialty Restaurants Corp.*, 628 F. Supp. 32 at n. 1 (W.D. Mo. 1985) (award upheld on unpled theory of recovery when the factual issues were tried and defendant offered proof to rebut that theory); *Troutman v. Moolin*, 353 F.2d 382 (8th Cir. 1965) (award of additional element of damages in excess of ad damnum upheld under rules 54(c) and 15(b)).

     **Defendant's Objection:** Defendant objects to this instruction because it is irrelevant and because the Amended Complaint does not include a claim that Counterpart terminated Cooper because of his lawful acts in furtherance of an action under the False Claims Act.  Plaintiff has had ample opportunity to file a motion for leave to amend his complaint and never did so.

Plaintiff cannot include a new claim in this case at this late stage in the litigation through jury instructions.

The Amended Complaint merely alleges Plaintiff complained to his supervisor about purported misappropriation of USAID funds. Plaintiff exclusively claims that Defendant breached Plaintiff's employment contract to avoid Plaintiff's internal questions and to prevent him from using Defendant's internal grievance procedure. There is no reference in the complaint to any action that would suggest a retaliation claim under the FCA. Under D.C. law, complaining to a supervisor about an employer's billing practices is not sufficient to establish a plaintiff acted in furtherance of an FCA action.

In *Shekoyan v. Sibley International Corp.*, 309 F. Supp. 2d 9 (U.S.D.C. 2004), as here, plaintiff claimed he was terminated in retaliation for complaining about Sibley's misuse of USAID funds to his supervisors. In upholding the dismissal of plaintiff's FCA claim, the D.C. Circuit noted:

> Courts have drawn the line at what is considered 'protected activity' when it comes to a plaintiff simply reporting his concerns to a supervisor, finding that in such circumstances the plaintiff is not acting in furtherance of a qui tam action.

*At* 913. The Court reasoned that the plaintiff's actions were not "reasonably connected to the FCA,… but were merely efforts to alert Sibley about possible improprieties." *At* 920.

In *Shekoyan,* the complaint did include a claim for retaliatory discharge under the FCA and the court dismissed that claim as noted above. Here, unlike *Shekoyan*, the instant Amended Complaint does not even mention the FCA or articulate any related claim of retaliation under that Act. However, even if we ignore this fatal flaw, here, as in *Shekoyan,* the Amended Complaint merely alleges Plaintiff raised questions internally to his supervisors about billing practices associated with USAID funding. Plaintiff does not allege he engaged in any actions in furtherance of a qui tam action. In fact, Plaintiff admitted he was not aware of any billing practices would warrant any investigation by the government at any point during his employment. Therefore, as a matter of undisputed fact, Plaintiff could not been taking any action in furtherance of a qui tam action. Similarly, Defendant could not have terminated Plaintiff for doing something he has admitted he was not doing. As the D.C. Circuit Court of Appeals held in *Shekoyan,* these allegations fail to state any claim under the FCA as a matter of law.

To state a claim under the FCA, a complaint must not only include a cause of action under the FCA, but it must also allege specific fact in support of this claim. As a matter of law, notice pleading is insufficient for these claims. In *Shekoyan*, the D.C. Circuit also upheld the dismissal of plaintiff's complaint because it did not allege with specificity the facts that support the retaliatory discharge claim under the FCA:

> In *Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220 (1st Cir. 2004), the First Circuit recently commented that "in order to state a claim for retaliation, [under the FCA] [a plaintiff] must also alleged that he was terminated *because* of his protected conduct." In that case, in which the district court had granted the defendant's motion to dismiss, the Karvelas Court found that the plaintiff had

failed to satisfy his pleading requirements because "nowhere in his complaint does [he] allege a factual predicate concrete enough to support his conclusory statement that he was retaliated against because of conduct protected under the FCA." *Id.* Here, after allowing the plaintiff to file an amended complaint to conform with FRCP 9(b), there is nothing in the record to support the plaintiff's claim that he was terminated because of his participation in protected activity under the FCA. The plaintiff states in a conclusory fashion in his amended complaint that 'in return for his efforts to eradicated corruption and protect Sibley International from liability, he was fired. Plaintiff Shekoyan's termination was, in part, effected in retaliation for his reporting violations of the False Claims Act"…. Thus, there is nothing in the record to establish that the plaintiff has raised a genuine issue of material fact that he suffered an adverse employment action as a result of engaging in any protected activity in furtherance of an FCA action."

*At* 921 (*emphasis in the original*).

Like *Shekoyan*, Cooper fails to allege any facts indicating he was terminated *because* he engaged in protected activity under the FCA. Cooper alleges Counterpart terminated Cooper "to avoid the questions Cooper had raised" and to "prevent Cooper from commencing a grievance proceeding." (Amended Complaint, Paras. 18 and 20). Cooper does not even state in a *conclusory* fashion that he was retaliated against because he engaged in protected activity, much less a "factual predicate concrete enough to support" a claim of retaliation. Even if Plaintiff had articulated a retaliatory discharge claim under the FCA, the Amended Complaint fails to allege with specificity the particular facts required to support this claim. Here, even more so than in *Shekoyan*, the Amended Complaint does not identify the FCA or allege any facts to support any such claim.

## PLAINTIFF'S INSTRUCTION NO. 34
("Proximate Cause" defined)

An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission

**Source:** FJPI § 120.60; SCJIforDC § 5.12, Instruction 5-12

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant in this litigation.

## PLAINTIFF'S INSTRUCTION NO. 35
### (Concurring Causes)

There may be more than one proximate cause of an injury. That is, several factors or circumstances, or the negligent acts or omission of two or more persons, may work at the same time, either independently or together, to cause an injury. Each of the contributing acts or omission is regarded in law as a proximate cause. This is true regardless or whether one of the participating acts or omission contributed more than another to causing the injury. Each person whose negligent act or omission is a proximate cause of an injury is liable for the resulting injury.


**Support:** SCJIforDC § 5.13, Instruction 5-13; see also FJPI § 120.61

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant in this litigation.

**PLAINTIFF'S INSTRUCTION NO. 36**
**(False Light Invasion of Privacy – Elements)**

Plaintiff Jay Cooper seeks compensatory and punitive damages from Counterpart International for allegedly committing the tort of invasion of privacy by false light in connection with its handling of his termination.

In order to prove the elements of his claim, Cooper must establish by a preponderance of the evidence each of the following elements:

(1) Counterpart made a public disclosure of a fact, statement or imputation about Cooper;

(2) The fact disclosed was false and portrayed Cooper in a false light;

(3) The false light in which Cooper was placed would be highly offensive to a reasonable person in Cooper's position;

(4) Counterpart had knowledge of or acted in reckless disregard of the falsity of the disclosure and the false light in which Cooper would be placed;

(5) This disclosure caused Cooper damage.

In determining whether Counterpart placed Cooper in a false light that would be highly offensive to a reasonable person you should determine whether Cooper was given publicity that attributed to him characteristics, conduct or beliefs that were so false as to constitute a major misrepresentation of his character, history, activities or beliefs, and that as a result it was foreseeable that a reasonable man in his position would take serious offense.

In considering the fourth element you should determine whether Counterpart knew or should have known that Cooper, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity it generated.

**Support:**  FJPI § 125.18.  The last two paragraph are based on Restatement, Second, Torts § 652E & cmts b & c.  *See generally*,   *Kitt v. Capital Concerts, Inc*., 742 A.2d 856, 859 (D.C. 1999); *Vassiliades v. Garfinkel's, Brooks Brothers, Miller & Rhoades, Inc*., 492 A.2d 580, 587 (D.C. 1985); *Weyrich v. New Republic, Inc*., 235 F.3d 617, 627 (D.C. Cir. 2001).

**Defendant's Objection:** Defendant objects to this instruction because it is unclear and confusing.  Defendant offers Defendant's Instructions Nos. 9, 10 and 11 in lieu of Plaintiff's Instruction 36.

**PLAINTIFF'S INSTRUCTION NO. 37**
**("Recklessly" or "Reckless Disregard" --   Defined)**

"Recklessly" means wantonly, with indifference to consequences.  If a person makes a representation without knowing whether it is true or not, or makes it without regard to its truth or falsity or to its possible consequences, he may be found to have made the representation recklessly.

**Source:** FJPI § 123.20, adapted to include the language of the previous instruction

**Defendant's Objection:** Defendant objects to this instruction because it is an inaccurate definition of reckless in the defamation and false light context.  *See* Restatement (Second) of Torts, § 580A, comment h ("Reckless disregard [is not] measured by whether a reasonable, prudent person would have published the statement without more investigation. Reckless disregard is said to exist, however, when there is a high degree of awareness of . . . probable falseness of the statement, or there are serious doubts as to [its] truth.").

## PLAINTIFF'S INSTRUCTION NO. 38
### (Compensatory Damages – False Light)

If you find that the defendant held the plaintiff up to a false light, then you must determine from the preponderance of the evidence what amounts, if any, to award to plaintiff as compensatory damages so as to fairly and adequately compensate him for actual injury caused by defendant.

The tort of invasion of privacy by false light permits recovery of damages for distress due to harm to reputation from the publicity as well as for redress of mental distress or personal humiliation from having been exposed to public view in a false way, as long as such distress is reasonable in its extent and proximately cause by defendant's actions. Such harm need not be based on pecuniary loss, and emotional distress may be shown simply by the plaintiff's testimony. To determine the amount of your verdict you must be guided solely by the evidence before you. You may consider, among other things, the seriousness of the false light, how widely the false light was distributed, the extent to which the communication was actually believed, and Cooper's prominence and professional standing in the community

You should award a sum of money that compensates (1) for any injury to the plaintiff's good name and reputation, and (2) for any mental anguish, distress, and humiliation, and (3) for any economic or monetary loss that the plaintiff suffered as a result.

You are not to return a separate sum for each element that I have mentioned. Rather, you should consider all of these elements to arrive at a single amount of compensatory damages.

**Support:**  SCJIforDC § 17.13, Instruction 17-13, modified to refer to false light rather than defamation.  The citations to follow support the second sentence of this Instruction. Vassiliades v. Garfinkle's, 492 A.2d 580 (D.C. 1985); Restatement, Second, Torts § 652H cmts a & b; White v. Fraternal Order of Police, 909 F.2d 512 (D.C. Cir. 1990);  [get more here]

**Defendant's Objection:** Defendant objects to this instruction because it is confusing, misleading and an inaccurate statement of the law regarding available damages for a false light

invasion of privacy claim. *See White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. Cir. 1990). Defendant offers Defendant's Instruction No. 14 in lieu of Plaintiff's Instruction No. 38.

## PLAINTIFF'S INSTRUCTION NO. 39
### (Punitive Damages Against a Corporation)

The Plaintiff is also requesting that the jury award punitive damages against the defendant corporation Counterpart International.

Punitive damages are damages above and beyond the amount of compensatory damages you may award.  Punitive damages are awarded to punish the defendant for its conduct and to serve as an example to prevent others from acting in a similar way.

You may award punitive damages against the defendant corporation only if the plaintiff has proved with clear and convincing evidence:

(1) that the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff; AND

(2) that the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff;  AND

(3) that the officers, directors or managing agents of the corporation participated in the act, authorized the act, or approved or ratified that act before or after it was done.

You may conclude that the defendant acted with a state of mind justifying punitive damages based on direct evidence or based on circumstantial evidence from the facts of the case.


**Support:**  This is a combination of SCJIforDC §16.01 and §16.02 to reflect that fact that plaintiff seeks punitive damages only from the corporation.  See also, FJPI § 120.51

**Defendant's Objection:** Defendant objects to this instruction because there is no request for punitive damages in the Amended Complaint and no evidence in this case warranting punitive damages.  Punitive damages are not available remedies for claims of breach of contract or false light invasion of privacy. Defendant further objects to this instruction because it is confusing, unclear and because Counterpart is a nonprofit organization, not a corporation.

## PLAINTIFF'S INSTRUCTION NO. 40
### ("Malice" and "Malicious" Defined)

The words "malice" and "malicious" mean a wish to vex, annoy, or injure another person. Malice means that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose.

Malice does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff. Malice, like any other fact, may be proved by direct or circumstantial evidence.

**Source:** FJPI § 121.23

**Defendant's Objection:** Defendant objects to this instruction because there is no request for punitive damages in the Amended Complaint and no evidence in this case warranting punitive damages. Punitive damages are not available remedies for claims of breach of contract or false light invasion of privacy.

## PLAINTIFF'S INSTRUCTION NO. 41
### (Punitive Damages on the Breach of Contact Claim)

If you find that Counterpart International breached its contract with Cooper and that this breach merges with and assumes the character of a willful tort, calculated rather than inadvertent, flagrant and in disregard of obligations of trust, you may award Cooper punitive damages on his breach of contract claim in accordance with the instructions I will give you on the computation of punitive damages.

**Support:** *Washington v. Geico*, 769 F. Supp. 383, 388 (D.D.C. 1991); *Washington v. Group Hosp.*, 585 F. Supp. 517 (D.D.C. 1984); *Central Armature Works, Inc. v. American Motorists Ins. Co.*, 520 F. Supp. 283, 291 (D.C. 1980), *quoting Brown v. Coates*, 253 F.2d 36, 39 (D.D.C. 1968)

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant. "Where the basis of a complaint is …a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton or malicious." *Sere v. Group Hospital, Inc*., 443 A.2d 33, 37 (D.C. 1982); *see also American National Red Cross v. Travelers*, 924 F. Supp. 304 (USDC 1986) (holding the mere allegation that a party breached the duty of good faith and fair dealing does not automatically entitle a litigant to submit a claim for punitive damages to the jury). Defendant further objects to this instruction because there is no request for punitive damages in the Amended Complaint. Similarly, there is not claim alleging breach of any duty of good faith and fair dealing.

**PLAINTIFF'S INSTRUCTION NO. 42**
**(Computation of Punitive Damage Award)**

If you find that the plaintiff is entitled to an award of punitive damages, then you must

decide the amount of the award.  To determine the amount of the award you may consider the

relative wealth of the defendant at the time of trial, the nature of the wrong committed, the state of

mind of the defendant when the wrong was committed, the cost and duration of the litigation, and

any attorney's fees that the plaintiff has incurred in this case.  Your award should be sufficient to

punish the defendant for his or her conduct and to serve as an example to prevent other from

acting in a similar way.


**Support:**  SCJIforDC § 16.03, Instruction 16-3

**Defendant's Objection:** Defendant objects to this instruction because there is no request
for punitive damages in the Amended Complaint and no evidence in this case warranting punitive
damages.  Punitive damages are not available remedies for claims of breach of contract or false
light invasion of privacy.

## PLAINTIFF'S INSTRUCTION NO. 43
### (Pre-judgment Interest)

If you find that an award of interest from the date monies were wrongfully withheld from

Cooper under his contract is necessary to fully compensate him, you may award him interest on

such funds as an element of damages.


**Support:**  D.C. Code § 15-109; *Burlington Inc. Co. v. Okie Dokie, Inc*., 358 F. Supp.2d 147, 158-59 (D.D.C. 2005); see also, *Nello L. Teer Co., v. Washington Metropolitan Area Transit Auth,* 921 F.2d 300 (D.C. Cir. 1990)

**Defendant's Objection:** Defendant objects to this instruction because it is unclear and fails to address Plaintiff's evidentiary burden. *See Dorocon, Inc. v. Burke*, 2005 U.S. Dist. LEXIS 38839, * 18  (U.S. D.C. 2005) (*citing Schwartz v. Swartz*, 723 A.2d 841, 843 (D.C. 1998)).

### PLAINTIFF'S INSTRUCTION NO. 44
**(Pre-Judgment Interest – Rate)**

If you determine that an award of interest is necessary to fully compensate Cooper, and you decide that Counterpart International was in anticipatory breach of its contract with Cooper as of a certain date, you may decide that interest as an element of damages should accrue on the damages that you award Cooper from the date of that anticipatory breach.

Any interest you award as part of Cooper's damages should be computed at the rate of six percent per annum.

**Source:** D.C. Code §28-3302(a); *District of Columbia v. Pierce Assoc.,* 527 A.2d 306 (D.C. 1987); Superior Court of DC, Civil Actions Branch, Frequently Asked Questions, Q&A # 3 – See http://www.dccourts.gov/dccourts/superior/civil/civil_actions.jsp

**Defendant's Objection:** Defendant objects to this instruction because it is irrelevant. The Amended Complaint does not allege an anticipatory breach.

## DEFENDANTS' PROPOSED DISPUTED JURY INSTRUCTIONS

## DEFENDANT'S INSTRUCTION NO. 1
### ( Function of the Court)

The function of the judge is to conduct the trial of the case in an orderly, fair, and efficient manner.  The judge also must rule upon questions of law arising during the trial, and must tell you the law that applied to this case. It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions.  In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.01

**Plaintiff's Objection**: None stated.

## DEFENDANT'S INSTRUCTION NO. 1.a
### ( Significance of Party Designations)

During the course of the trial, you [have heard] [will hear] references to the terms plaintiff and defendant.  To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.

During your deliberations, however, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant.  In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that his evidence is entitled to greater weight than the defendant's evidence.  A plaintiff must prove every element of his claim against a defendant by preponderance of the evidence before he is entitled to prevail.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.03

**Plaintiff's Objection**: None stated.

# DEFENDANT'S INSTRUCTION NO. 1.b
## (Equality of Litigants – Employers )

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion.  It is a violation of your sworn duty to base your verdict upon anything other than the evidence in this case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.  A corporation, whether large or small, has the same right to a fair trial as a private individual.  All persons, including corporations, stand equal before the law and are to be treated as equals in this court.  In other words, the fact that a plaintiff or a defendant is a corporation must not affect your decision.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §1.11

**Plaintiff's Objection:** Plaintiff objects and asks the Court to substitute the Instruction it has drafted entitled "Equality of Litigants – Individuals and Corporations."  The Standard Instruction § 1.11, as modified to refer to "employer" sought by Defendant, appears to be emphasizing to the jury that "employers" are to be treated equally.  We submit that if such an instruction is to be given, the jury should also be told that employees are equal to employers under the law as well,

Plaintiff has submitted an instruction entitled "Equality of Litigants – Individuals and Corporations."  It is more neutral.  We have no objection to changing, in that instruction, the word "corporations" to the words "employers and employees."

## DEFENDANT'S INSTRUCTION NO. 2
### (Evidence in Case)

You may consider only the evidence properly admitted in the case. Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated and agreed to by counsel. You may consider any facts to which all counsel have agreed or stipulated to be undisputed evidence.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.01

**Plaintiff's Objection:** Plaintiff has no objection to this Instruction as long as the phrase "deposition testimony read into the record" is added, as Plaintiff intends to introduce such evidence. Plaintiff has prepared such an instruction entitled "Evidence in the Case," and requests that it be substituted for standard instruction § 2.01.

## DEFENDANT'S INSTRUCTION NO. 3
### (Inferences)

In arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence, however, you are not limited solely to the statements of the witnesses. You are permitted to draw from the evidence any inferences or conclusions that reasons and common sense lead you to make.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §2.03

**Plaintiff's Objection:** Plaintiff prefers that the Court give the instruction it has proposed with the title "Inferences." The first sentence of Plaintiff's proposal is identical to what Defendant proposes. The remainder of the instruction clarifies the first sentence and defines the word inferences, from another standard instruction. Plaintiff believes that its proposed instruction is more complete and clearer.

**<u>DEFENDANT'S INSTRUCTION NO. 3.a</u>**
**<u>(Impeachment by Prior Inconsistent Statements)</u>**

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here.

If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his or her testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony he or she gave in court.

If the witness made a prior inconsistent statement under oath subject to the penalty of perjury or at a deposition, then you may also treat that prior statement as evidence in this case—that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If the witness was not under oath subject to the penalty of perjury or was not at a deposition when he or she made the statement, then you may not treat the prior statement as evidence of the facts in the statement. You may consider the statement only to evaluate the witness's credibility, that is, you may use the prior statement only to determine whether to believe the witness's present testimony in court.

If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §3.08

**Plaintiff's Objection:** Plaintiff prefers that the Court give the instruction it has proposed with the title "Impeachment -- Inconsistent Statement or Conduct (Falsus in Uno Falsus in Omnibus).

## DEFENDANT'S INSTRUCTION NO. 4
### (Contracts- Certainty)

To be legally enforceable, the essential terms of a contract must be reasonably certain. You may find that the terms are reasonably certain if they are definite and clear enough for both parties to understand them.  Not all of the contract terms need to be certain, only the essential terms need to be certain.

If the terms of a proposed agreement are vague and uncertain, then the parties may not understand the terms in the same way.  If, because of vagueness, the parties do not understand the terms in the same way, then they may not necessarily agree on whether the contract was adequately performed or breached.  If you find that the terms of the proposed agreement in this case were vague and uncertain, then you must find that the parties did not enter into a legally enforceable contract.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §11.08

**Plaintiff's Objection:** Plaintiff objects to this instruction.  We do not believe that there is any uncertain contract that will appear in evidence in this case.  Plaintiff believes that a decision on whether or not to give such an instruction should await hearing evidence received at trial.

## DEFENDANT'S INSTRUCTION NO. 4.a
### (Terms of Contract - Evidence)

In determining the terms of a contract, you should first consider what a reasonable person in the position of the parties would have believed was the meaning of the words.  Next, you may consider the circumstances that existed at the time the contract was made, including the apparent purpose of the parties in entering into the contract, the history of negotiations leading up to the contract and the statements of the parties about their understanding of the contract.  In addition, you may consider the statements of any agent for a party about his or her actions in negotiating or drafting the contract, or about his or her understanding of the language of the contract.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §11.13

**Plaintiff's Objection**: None stated.

<u>**DEFENDANT'S INSTRUCTION NO. 5**</u>
<u>**(Breach of Contract - Elements)**</u>

The parties agree Counterpart and Jay Cooper entered into a contract for Mr. Cooper's employment. The parties also agree the contract could be terminated (1) by Counterpart, immediately if Mr. Cooper failed to fulfill his obligations under his employment contract or failed to perform his job duties to Counterpart's satisfaction; or (2) by either party upon 30 days written notice for any lawful reason. The parties agree Counterpart's Executive Vice President Arlene Lear terminated Mr. Cooper on November 12, 2004.

To prevail on his breach of contract claim, Mr. Cooper must prove:

1)      that Counterpart terminating Mr. Cooper's employment constituted a breach of the terms of the contract;

2)      that Counterpart's breach caused Mr. Cooper damages; and

3)      the amount of those damages, including mitigation.

**Authority:** American Bar Association, Model Jury Instructions, Employment Litigation, §3.03[4][b], [c] (1994).

**Plaintiff's Objection:** The instruction as written omits an element crucial to Plaintiff's case – that Defendant was required to exercise its contractual powers in accord with the duty of good faith and fair dealing, which is an inherent term of every contract under D.C. and other law. Defendant conceded as much in its Memorandum in Support of its Motion for Summary Judgment in this case.

Plaintiff has provided a series of instructions that make it clear that 1) a contract may have implied terms, and 2) that one term implied in every contract is the duty of good faith and fair dealing. (See (1) Plaintiff's Instruction entitled Express and Implied Contracts; (2) Plaintiff's Instruction entitled Implied Contractual Terms – the Duty of Good Faith and Fair Dealing; (3) Plaintiff's Instructions setting out definitions of "good faith" and "fair dealing;" and (4) Plaintiff's Instruction entitled "Implied Contractual Terms – Evidence Absence of Good Faith and Fair Dealing. Plaintiff has cited support for each of those instructions.

The concept of the implied duty of good faith and fair dealing is also explored in depth in Plaintiff's Opposition To Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding Plaintiff's Alleged Damages Incurred After December 12, 2004, filed herewith.

Plaintiff believes the Instruction omitting these elements is essentially a charge to the jury to find no breach.   Accordingly, Plaintiff most strenuously objects to giving Defendant's Instruction No. 5 as now written.

## DEFENDANT'S INSTRUCTION NO. 6
## (Breach of Contract – Business Judgment)

The contract in this case allowed Counterpart to terminate Mr. Cooper's employment if it was not satisfied with his performance. Accordingly, to prevail on his breach of contract claim, Mr. Cooper must prove Arlene Lear was satisfied with Mr. Cooper's performance on November 12, 2004. Neither Counterpart's nor Ms. Lear's business judgment is on trial in this action. The law does not authorize courts or juries to judge the wisdom of an employer's business decisions. Even if you believe Counterpart or Ms. Lear exercised poor or questionable business judgment in deciding Mr. Cooper was not performing satisfactorily, or even if you feel you would have made different decisions under similar circumstances, you cannot find in favor of Mr. Cooper if he does not prove Ms. Lear was satisfied with his performance at the time she terminated his employment. In other words, if you find Ms. Lear was not satisfied with Mr. Cooper's performance, you must find for Counterpart on the breach of contract claim.

**Authority:** *Brown v. Brody*, 199 F.3d 466,458-9 (D.C. Cir. 1999); *Furnco Construction Corporation v. Waters*, 438 U.S. 567, 578 (1978); *Towson Univ. v. Conte*, 862 A.2d 941, 950 (2004); ABA Model Jury Instructions, Employment Litigation § 102[3][b] (1994).

**Plaintiff's Objection:** The proposed instruction is not supported by the cases cited and simply attempts to wipe out the good faith and fair dealing obligation by substituting the business judgment rule.

In *Brown v. Brody*, 199 F.3d 446, the Circuit Court upheld a grant of summary judgment for an employer whom an employee had sued for discrimination in assigning her new duties and giving her a "fully satisfactory" performance review. The Court found that 1) neither action was an adverse personnel action, 2) the employer had articulated reasons for its actions, and 3) that the plaintiff had failed to present any evidence beyond speculation to prove that those reasons were pretextual, thereby failing to raise genuine issues of material fact. The business judgment rule, developed in a very different context, had nothing to do with the Court's ruling.

The *Furnco* case holds that it is improper to impose a "best hiring practices" method on an employer, at least until after a Title VII violation has occurred. It says nothing about whether the business judgment rule should be announced to the jury as a defense to a claim of retaliatory discharge in violation of an employer's duty of good faith and fair dealing in exercising is contractual provisions to the detriment of an employee.

95

The *Towson University* case holds, under Maryland law, that in the case of a contract where an employer is entitled to terminate an employee when unsatisfied with his performance, the jury is entitled to determine whether the employer was acting in good faith or on the basis of arbitrary or illegal reason or on facts that the employer did not reasonably believe to be true. That is precisely what Plaintiff wishes to prove here – that Counterpart's motive was to protect itself from Cooper's complaints about its cost accounting practices. Yet the instruction says no such thing, and, instead, instructs the jury that the business judgment rule should be a defense for Counterpart. The business judgment rule and judging the wisdom of Counterpart's decision has nothing to do with what the jury should be asked to do here. The jury is free, under the *Towson* case, to weigh the good faith of whatever excuses the employer brings forth for its actions. In effect, this case simply goes off on the duty of good faith and fair dealing.

See a most insightful recent observation on the intersection of the business judgment rule and cases challenging employment decisions:

> "[O]ur Circuit has never adopted a "business judgment rule" which requires us to defer to the employer's "reasonable business judgment" in Title VII cases. Dissenting Op. at 23-24. Indeed, in most Title VII cases the very issue in dispute is whether the employer's adverse employment decision resulted from an objectively unreasonable business judgment, *i.e.,* a judgment that was based upon an impermissible consideration . . . ." *White c. Baxter Healthcare Corp.*, No. 07-1626 (6th Cir. July 3, 2008) at note 6.

This Instruction should be rejected.

## DEFENDANT'S INSTRUCTION NO. 7
### (Breach of Contract – Damages )

To establish his breach of contract claim, Mr. Cooper must also prove that he experienced damages as a result of Counterpart's breach and the amount of those damages.

The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty.  Although damages may be based on reasonable and probable estimates, you may not award damages on the basis of guess, speculation or conjecture.

Any damages that you award on Mr. Cooper's breach of contract claim should be equal to an amount no more and no less than the amount necessary to place Mr. Cooper in the same position that he would have been in if the contract had not been breached.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §11.31

**Plaintiff's Objection:** The Instruction is incomplete.  Plaintiff has presented more complete instructions entitled "Breach of Contract – Damages" and "Burden of Proof – Speculative Damages."

## DEFENDANT'S INSTRUCTION NO. 8
## (Breach of Contract – Limits on Damages)

The parties agree the contract between them could be terminated by either party upon 30 days written notice for any lawful reason.  The parties also agree Counterpart notified Mr. Cooper of his termination in writing on November 12, 2004.   If Mr. Cooper proves Counterpart breached the contract, the maximum amount of damages Mr. Cooper is entitled to for breach of contract is equal to no more than one month's salary and benefits as provided in the terms of the contract, minus any amount for mitigation.

**Authority:** Standardized Civil Jury Instructions for the District of Columbia §11.31

**Plaintiff's Objection:** Plaintiff objects to this Instruction for all the reasons set forth in Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding Plaintiff's Alleged Damages Incurred After December 12, 2004.  In short, the contractual clause cited, like the other contractual clause Defendant relies on (permitting termination if Defendant is unsatisfied with Plaintiff's performance), is equally subject to the good faith and fair dealing obligation.  Terminating Cooper in bad faith to prevent his reporting Counterpart to the Inspector General or for interfering in Abma's and Kunz's efforts to divert funds away from the programs Cooper managed is not a "lawful reason."

The instruction also ignores the oral contract entered into in August of 2004, which included no such term.

The instruction should be rejected.

## DEFENDANT'S INSTRUCTION NO. 9
### (False Light Invasion of Privacy - Elements)

To prevail on his false light invasion of privacy claim, Mr. Cooper must prove:

1)    Counterpart communicated to the public a statement or message about Mr. Cooper;

2)    Counterpart's public communication was knowingly false or made with reckless disregard by Counterpart as to whether the communication was true or false; and

3)    Counterpart's public communication would be highly offensive to a reasonable person.

**Authority:**    *Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) (quoting *Moldea v. New York Times Co.*, 15 F.3d 1137, 1150-51 (D.C. Cir. 1994).

**Plaintiff's Objection:** The *Weyrich* case does not support the instruction.  That case discusses the law of defamation.  The only discussion of the tort of false light in the opinion occurs at page 627  where the Court simply quotes the elements of the false light tort as set out in RESTATEMENT (SECOND) TORTS § 652E.

We have submitted a proposed false light instruction that mirrors the language of § 652E and includes explanatory language from the comments to § 652E.   See our Proposed Instruction entitles "False Light Invasion of Privacy – Elements."

The case of *Lane v. Random House, Inc.,* 985 F. Supp. 141 (D.D.C. 1995), cited by Defendant in support of its next two instruction as to the tort of false light, applauds the use of the language from comment c to § 652E that we have included in Plaintiff's proposed instruction as to the elements of false light.

## DEFENDANT'S INSTRUCTION NO. 10
### (False Light Invasion of Privacy - Publicity)

Mr. Cooper must prove Counterpart communicated a statement or message to the public at large or to so many people that the matter must be regarded as substantially certain to become one of public knowledge.  Typically, a communication made to the public is a statement or message published in a newspaper or magazine, a brochure distributed to a large number or people, a broadcast over the radio or tv or made in an address to a large audience. Communications made to a single person or a small group of persons do not constitute a public communication.

For each communication Mr. Cooper relies on for his false light invasion of privacy claim, you must assess if the communication was made by Counterpart to the public at large or to such a large group of people, the matter was substantially certain to become public knowledge.  If you find the communication was made by Counterpart only to a single person or a small group of people, you must find for Counterpart even if you believe Mr. Cooper has proven the other elements of his false light invasion of privacy claim.

**Authority**: *Weyrich v. New Republic, Inc.*, 235 F.3d 617 (D.C. Cir. 2001) (quoting *Moldea v. New York Times Co*., 15 F.3d 1137, 1150-51 (D.C. Cir. 1994).  *Steinbuch v. Cutler*, 2006 U.S. Dist. LEXIS 78462 (U.S.D.C. 2006) RESTATEMENT (SECOND) OF TORTS §652D cmt. a.

**Plaintiff's Objection:** We have discussed the meaning of "giving publicity" at length in Plaintiff's Opposition to Motion in Limine To Exclude Evidence and Testimony of Counterpart's Non-Public Communications About Cooper's Performance or Termination.  The cases we've cited, including precedent in this Circuit, have a more flexible rule as to the scope of the "public" who must be exposed to the false information.  Also, we are asserting that a series of statements or acts constitute the tortious conduct, so the language about "each communication" is an erroneous instruction on the facts of this case.

<u>DEFENDANT'S INSTRUCTION NO. 11</u>
<u>(False Light Invasion of Privacy – Highly Offensive to Reasonable Person)</u>

Mr. Cooper must also prove Counterpart communicated false statements about him that were highly offensive to an ordinary reasonable person. The law recognizes that complete privacy does not exist in this world and every person must expect minor and moderate annoyances based on the casual observations of others around him. To be considered highly offensive, Counterpart must have publicized a statement or message about him that would justify a reasonable person feeling seriously aggrieved by the publicity.

Even if you believe Mr. Cooper was offended by a particular communication, or even if you personally believe the communication was rude or unpleasant, you cannot find in favor of Mr. Cooper if he does not prove Counterpart publicized a statement or message about him that would be highly offensive to an ordinary reasonable person.

**Authority:** *Weyrich v. New Republic, Inc*., 235 F.3d 617 (D.C. Cir. 2001) (quoting *Moldea v. New York Times Co*., 15 F.3d 1137, 1150-51 (D.C. Cir. 1994). RESTATEMENT (SECOND) OF TORTS §652D cmt. c.; *Lane v. Random House, Inc*., 985 F. Supp. 141, 149 (U.S.D.C. 1995).

**Plaintiff's Objection:** If the Court gives the instruction Plaintiff has suggested entitled "False Light Invasion of Privacy – Elements," the substance of this instruction – minus the second sentence – will have been given. Plaintiff submits that the second sentence is superfluous and is wholly encompassed in the notion, expressed in Plaintiff's proposed instruction, that "the false light in which Cooper was placed would be highly offensive to a reasonable person in Cooper's position."

We are at a loss as to the etiology of the first two clauses of the final paragraph of Defendant's Instruction 15. The Court in the *Lane* case took into account that the plaintiff there, as opposed to Cooper, was an individual who had inserted himself into a controversial subject and published strong, controversial views about that subject, thus inviting rude and unpleasant attacks, and perhaps even benefitting from the publicity about which he complained. Cooper cannot be said to be such, so that language is inappropriate here.

The instruction should be rejected.

**DEFENDANT'S INSTRUCTION NO. 12**
**(False Light Invasion of Privacy  - Truth or Opinion)**

Mr. Cooper must also prove any communications publicized by Counterpart are false.

Under the law, a statement or message that is substantially true is not false.  A statement is substantially true if the overall message, taken as a whole, is true.  A statement need not be true with respect to every detail to be substantially true, minor inaccuracies do not amount to falsity.  A statement that reflects only the opinion of the person making the statement – and therefore cannot be established as true or false – is also not a false statement under the law.

For each communication Mr. Cooper relies on for his false light invasion of privacy claim, if you find the communication was substantially true or a statement of opinion, you must find for Counterpart even if you believe Mr. Cooper has proven the other elements of his false light invasion of privacy claim.

**Authority**: *Lane v. Random House, Inc*., 985 F. Supp. 141, 149 (U.S.D.C. 1995).; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); DC Standard 17.06

**Plaintiff's Objection:** Again, Defendant is ignoring the fact that Plaintiff's claim is that Counterpart's actions and statements in the aggregate, not individually, are what caused the damage.  In the *Milkovich* case, the Supreme Court placed substantial limits on the breadth of the "it's only my opinion" defense to defamation actions.  Thus this Court should use extreme caution instructing the jury that any false and injurious statement about Cooper are privileged simply because they are phrased as an opinion.

We do not know the source of the language about "minor inaccuracies"  "every detail" and "substantially true."  We could not find any of those terms in the cases cited to support this instruction.

The instruction should not be given.

## DEFENDANT'S INSTRUCTION NO. 13
### (False Light Invasion of Privacy – Mental Distress)

If you find Mr. Cooper has proven all the elements for a false light invasion of privacy claim, you must first determine if Counterpart's actions caused Mr. Cooper any emotional distress before you can evaluate the amount, if any, of Cooper's damages. If Mr. Cooper does not prove he suffered emotional distress as a result of Counterpart's actions, you must find that Mr. Cooper has no claim for damages.

**Authority:** *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)

**Plaintiff's Objection:** Plaintiff has proffered a more complete instruction entitled "Compensatory Damages – False Light," along with supporting authority.

### DEFENDANT'S INSTRUCTION NO. 14
### (False Light Invasion of Privacy - Damages )

If you find Mr. Cooper has proven all elements of his claim for false light invasion of privacy *and* that he has sustained mental distress as a result of Counterpart's actions, you must determine what amount, if any, to award to Mr. Cooper as compensatory damages.  To determine the amount of your verdict you must be guided solely by the evidence before you.  Mr. Cooper has the burden to prove he suffered actual damages as a result of his mental distress.  If he does not show he suffered actual damages, you should not award him any damages.  If he does show he suffered actual damages, you should award a sum of money that compensates him for an amount equal to no more and no less than his actual damages.

**Authority:** *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990); DC Standard 17.13

**Plaintiff's Objection:** Plaintiff's proposed instruction on "Compensatory Damages – False Light" is more complete, while still placing the burden squarely on plaintiff to prove his damages.