Attachment 9.a to Joint Pretrial Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 1:05-cv-01598-RMC |
| ) | |
| COUNTERPART INTERNATIONAL ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING DEFENDANT'S COMPLIANCE WITH USAID REGULATIONS**

Defendant Counterpart International ("Counterpart"), through counsel, hereby moves the Court to exclude all evidence and testimony regarding whether Counterpart complied with the complex financial requirements of the USAID regulations. For the reasons explained in the accompanying memorandum, Counterpart respectfully requests the Court grant this motion and enter the attached order.

Respectfully submitted,

JACKSON LEWIS LLP

July 14, 2008

By: _____
Michael N. Petkovich (D.C. Bar No.456010)
Kara M. Ariail (D.C. Bar No.478718)
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
(703) 821-2189

**Attorneys for Defendant Counterpart International**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAY W. COOPER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 1:05-cv-01598-RMC |
| | ) | |
| COUNTERPART INTERNATIONAL | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY
REGARDING DEFENDANT'S COMPLIANCE WITH USAID REGULATIONS**

Defendant Counterpart International ("Counterpart"), through counsel, hereby files this memorandum in support of its motion in limine to exclude all evidence and testimony regarding whether Counterpart complied with the complex financial requirements of the USAID regulations.

**I.   SUMMARY**

    **A.   Evidence Regarding Counterpart's Compliance with Complex
          Financial Requirements of USAID Regulations is Irrelevant**

Cooper claims Counterpart breached his employment contract. The contract gave Counterpart the unilateral right to terminate the contract if Counterpart was not satisfied with Cooper's performance of his job duties. Cooper claims he questioned the fact that Counterpart allocated money from and among USAID-funded projects. The Complaint alleges Counterpart terminated Cooper to "avoid the questions Cooper had raised" about financial irregularities and "to prevent Cooper from commencing a grievance procedure" to challenge his termination. (See Exhibit 1, Amended Complaint, §§ 16-20).

2

Cooper seeks to offer evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations to demonstrate Counterpart terminated Cooper for an impermissible reason under the terms of his contract. This evidence, and the grounds upon which Cooper intends to offer it, is irrelevant to Cooper's breach of contract claim for two reasons.

First, Cooper does not have to prove Counterpart in fact violated any USAID regulations to establish breach of contract. Cooper does not even allege any such claim in the complaint. Cooper merely must prove that Counterpart terminated Cooper to avoid his financial questions or to prevent him from filing an internal grievance. These are the only factual claims Cooper alleges in support of his breach of contract claim. Likewise, Cooper is not obligated to prove his complaints were valid to prove Counterpart retaliated against him for raising questions about financial irregularities. Here too, Cooper merely must prove Counterpart terminated Cooper for a non-job related reasons.

Second, evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations is irrelevant because the undisputed factual record reveals Cooper has no direct evidence Counterpart terminated him because he questioned Counterpart's compliance with USAID regulations. Cooper admitted in his deposition that he never had any evidence of any financial irregularities while he was employed and that it was standard industry practice for organizations to allocate USAID funds from one project to another. Most importantly, Cooper admitted that shortly after he was terminated he told a USAID official that Counterpart had not engaged in any financial practices that would warrant a government investigation:

> Q. Following your discharge, did you report any financial irregularities?

3

> A. No. No, I did not. And in fact, I was asked by the contracting officer, in Almaty, if I suspected there were some financial irregularities, and I told him not that would warrant investigation.
>
> Q. Was that, in fact, your opinion?
>
> A. ... I didn't have any files or proof in a sense. And you know, I just felt that in unfortunately in reality, all of the organizations that work under USAID, move things and shove things around and take advantage every chance they can.

(See Exhibit 2, Cooper Dep. Tr., pp. 245-246.) The undisputed facts further show Counterpart retains an independent outside auditor to audit Counterpart's financial practices for compliance with USAID regulations on a yearly basis. Shortly after Cooper was terminated, the auditors conducted an audit of the USAID funded programs and found Counterpart in compliance. (See Exhibit 3, Audit Report, Financial and Federal Award Compliance Examination for the Year Ended September 30, 2004).

For all these reasons, evidence and testimony regarding Counterpart's compliance with complex financial requirements of USAID regulations is irrelevant and should be excluded.

**B. Introduction of Evidence Regarding Counterpart's Compliance with Complex Financial Requirements of USAID Regulations Will Require a Confusing, Prejudicial and Lengthy Side Trial**

Allowing Cooper to introduce evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations will expand the focus of this straight-forward breach of contract case into a confusing, prejudicial and lengthy side trial involving thousands of financial documents, industry financial practices and extremely complex governmental regulations. Indeed, Counterpart produced over 6000 documents, most of which related to financial practices.

4

This lengthy side trial will prejudice Counterpart and confuse the jury by forcing them to assess extensive additional evidence and testimony relating to a matter that is irrelevant to the underlying breach of contract claim.

For all these reasons, Counterpart requests the Court exclude all evidence and testimony regarding Counterpart's compliance with complex financial requirements of USAID regulations.

## II. ARGUMENT

### A. Evidence Regarding Counterpart's Compliance With Complex Financial Requirements of USAID Regulations is Irrelevant

Irrelevant evidence is inadmissible at trial. *See Washington v. Thurgood Marshall Academy*, 2006 U.S. Dist LEXIS 88852, * 27 (D.D.C. Dec. 8, 2006). In *Thurgood Marshall*, the plaintiff alleged her former employer, Thurgood Marshall Academy ("TMA") breached her employment contract by demanding her resignation in retaliation for her alleged assertion TMA was not in compliance with the Individuals with Disabilities in Education Act ("IDEA"). Although the actual factual dispute underlying plaintiff's breach of contract claim concerned when the plaintiff noticed her resignation under the terms of her contract, she argued that evidence regarding TMA's compliance with the IDEA was relevant to her breach of contract claim because such evidence was "key to deciding whether TMA had any motive or intent to discharge [her]." *Id.* at *7.

The Court rejected the plaintiff's argument on the grounds "the entire factual record reveals that Plaintiff has no direct evidence that TMA was motivated to ask for her resignation because she claimed that TMA was not in compliance with the IDEA, particularly because ensuring IDEA compliance was part of Plaintiff's job." *Id.* at *26. Specifically, the court found:

- The plaintiff continued her employment for nearly two months after she first notified the defendant about the alleged non-compliance. *Id.* at *10.

5

- There was no evidence the plaintiff's IDEA compliance concerns were discussed during the meeting at which the defendant's decision maker requested plaintiff's resignation. *Id.* at *11.

- Documentation created by both parties following the resignation meeting did not identify the plaintiff's compliance concerns as the reason for the resignation request. *Id.* at *13. To the contrary, both parties created documentation acknowledging the resignation request was related to the plaintiff's request for a raise – a matter she had initiated with the decision maker two months prior to her separation. *Id.*

- During the year between the resignation meeting and plaintiff filing her complaint, she never told the decision maker she believed the resignation request was related to her compliance concerns. *Id.*

- Plaintiff presented no evidence TMA viewed her efforts to ensure TMA's compliance with the IDEA in a negative light, or that anyone associated with TMA criticized Plaintiff for her work concerning IDEA compliance or disagreed with Plaintiff's assessment as to TMA's alleged non-compliance. *Id.* at *14.

- Plaintiff did not identify any witnesses to support her claim that she was terminated in retaliation for raising concerns about TMA's alleged non-compliance. *Id.* at *19.

In this case, as in *Thurgood Marshall*, Cooper seeks to offer evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations to demonstrate Counterpart terminated Cooper for an impermissible reason under the terms of his contract. This evidence is irrelevant to Cooper's breach of contract claim for two reasons.

6

First, evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations is irrelevant because Cooper does not have to prove Counterpart violated any USAID regulations to establish breach of contract. Cooper does not even allege any such claim in the complaint. The *only* factual issue in dispute with regard to Cooper's breach of contract claim is whether Counterpart terminated Cooper because it was not satisfied with his performance or for some other motive unrelated to his performance. Cooper merely must prove his claims that Counterpart terminated Cooper to avoid his financial questions or to prevent him from filing an internal grievance. Likewise, Cooper is not obligated to prove his complaints were valid to prove Counterpart retaliated against him for raising questions about financial irregularities. If Counterpart proves it was complying with financial regulations it does not prove it did not terminate Cooper to avoid all his questions – as he alleges. Either way, evidence regarding actual financial irregularities is irrelevant because Cooper admittedly did not have any evidence of such until discovery in this case.

Second, evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations is irrelevant because the undisputed factual record reveals Cooper has no direct evidence Counterpart terminated him because he questioned Counterpart's compliance with USAID regulations:

- As in *Thurgood Marshall*, it is undisputed it was part of Cooper's job to monitor and report the alleged compliance matters he complained about. (See Exhibit 1, Amended Complaint, ¶18).

- As in *Thurgood Marshall*, Cooper continued his employment with Counterpart for months after he asked the decision maker financial questions. (See Exhibit 4,

Declaration of Jay Cooper in support of Opposition to Motion for Summary Judgment, ¶ 16).

- As in *Thurgood Marshall*, there is no evidence Cooper or Lear discussed Cooper's financial questions during the termination teleconference. To the contrary, the undisputed evidence shows, Lear told him he was being terminated for performance issues and that Cooper was given an opportunity to rebut Lear's reasons. (See Exhibit 4, Declaration of Jay Cooper in support of Opposition to Motion for Summary Judgment, ¶ 44).

- As in *Thurgood Marshall*, after Cooper was terminated, he exchanged e-mails with Counterpart President, Lelei LeLaulu, and Counterpart CFO, Harry Dorcus, in which neither Cooper, LeLaulu nor Dorcus stated the termination decision was related to Cooper's financial questions. (See Exhibit 5, 11/24/04 e-mail exchange between Cooper and LeLaulu and Dorcus, 2/5/05 e-mail exchange between LeLaulu and Cooper)

- As in *Thurgood Marshall*, during the time between Cooper's termination and the filing of his complaint, he never told Lear or anyone else at Counterpart he believed he was terminated in retaliation for reporting concerns about Counterpart's compliance with the USAID regulations. In his Amended Complaint, Cooper merely alleges Counterpart fired him to avoid his financial questions. He has never claimed Counterpart terminated him to stop him from reporting financial irregularities to any outside organization. As in *Thurgood Marshall*, there is no evidence on the record that Counterpart or Lear viewed his job responsibility for tracking project finances in a negative light, or that Lear or

8

      anyone associated with Counterpart criticized Cooper for raising questions about project funds;

- As in *Thurgood Marshall*, Cooper has not identified any witnesses to support his claim that he was terminated in retaliation for questioning Counterpart's compliance with the USAID regulations.

- As in *Thurgood Marshall*, there is undisputed evidence Cooper and Counterpart discussed Cooper's performance issues leading up to his termination (See Exhibit 6, 8/24/04 and 8/25/04 e-mails prepared by Barbara Sloan).

As detailed in the above Summary, Cooper admitted in his deposition that he never had any evidence of any financial irregularities while he was employed and that it was standard industry practice for organizations to allocate USAID funds from one project to another. Cooper admitted that shortly after he was terminated he told a USAID official that Counterpart had not engaged in any financial practices that would warrant a government investigation.

The undisputed facts further show Counterpart retains an independent outside auditor to audit Counterpart's financial practices for compliance with USAID regulations on a yearly basis. Shortly after Cooper was terminated, the auditors conducted an audit of the USAID funded programs and found Counterpart in compliance.

    B.    **Any Probative Value of Evidence Regarding Counterpart's Financial Compliance with USAID Regulations is Substantially <u>Outweighed By the High Risk of Prejudice and Jury Confusion</u>**

Courts exclude trial evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *See Washington,* 2006 U.S. Dist LEXIS 88852, at * 27. In *Thurgood Marshall*, the court held that even if evidence regarding TMA's non-compliance with the IDEA had some marginal probative value, the

evidence should still be excluded on the grounds the probative value of the evidence was substantially outweighed by the high risk of prejudice and jury confusion. *Id.* at *2.

The court further held there was a "high risk" the introduction of evidence regarding TMA's alleged non-compliance would "engender undue prejudice to TMA, as well as significant confusion for the jury as to the issues and single claim they need to determine." *Id.* at *29. The Court noted allowing the plaintiff to introduce evidence that was not relevant to the factual issue in dispute in her breach of contract claim:

> would require an entirely collateral side trial. Plaintiff's evidence would lead to the introduction of testimony regarding: (1) the requirements of the IDEA; (2) TMA's policies and practices during the fall of 2002; (3) whether those policies and practices complied with the IDEA ...

Id. at *30.

Here, as in *Thurgood Marshall*, even if this Court were to conclude that evidence of Counterpart's alleged non-compliance is potentially relevant, evidence and testimony regarding this matter should still be excluded. As in *Thurgood Marshall*, any probative value of such evidence is substantially outweighed by the "high risk" such evidence will "engender undue prejudice" to Counterpart, as well as "significant confusion for the jury as to the issues and single claim they need to determine." *Id.* at *29.

Allowing Cooper to introduce evidence regarding Counterpart's compliance with complex financial requirements of USAID regulations will expand the focus of this straightforward breach of contract case into a confusing, prejudicial and lengthy side trial involving thousands of financial documents, industry financial practices and extremely complex governmental regulations. Indeed, Counterpart produced over 6000 documents, most of which related to financial practices.

This lengthy side trial will prejudice Counterpart and confuse the jury by forcing them to assess extensive additional evidence and testimony relating to a matter that is irrelevant to the underlying breach of contract claim.

For all these reasons, Counterpart requests the Court exclude all evidence and testimony regarding Counterpart's compliance with complex financial requirements of USAID regulations.

### III.   CONCLUSION

Based on the foregoing reasons and authority, Counterpart respectfully requests that the Court grant Counterpart's motion in limine and exclude evidence and testimony of Counterpart's compliance with complex financial requirements of USAID regulations.

Respectfully submitted,

**JACKSON LEWIS LLP**

July 14, 2008

By: _____
Michael N. Petkovich (D.C. Bar No.456010)
Kara M. Ariail (D.C. Bar No.478718)
8614 Westwood Center Drive, Suite 950
Vienna, VA 22182
(703) 821-2189

**Attorneys for Defendant Counterpart International**