Attachment 9.b to Joint Pretrial Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1598 (RMC-JMF) |
| | ) |
| COUNTERPART INTERNATIONAL, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING DEFENDANT'S COMPLIANCE WITH USAID REGULATIONS**

Counterpart seeks to bar evidence about whether Counterpart in fact violated the USAID regulations. Although Cooper contends that he was fired for complaining about such violations, Counterpart asks the Court to exclude as irrelevant and prejudicial evidence about the violations themselves. It also complains that the evidence it seeks to exclude will require a lengthy and confusing side trial.

**1. Cooper Must be Permitted to Offer the Challenged Evidence to Prove Counterpart's Motive to Be Rid of Him.**

Cooper's complaints to Counterpart Management and to Bob Abma and Michael Kunz concerned spending monies that had been awarded for the projects which Cooper managed on other projects and on efforts to procure new projects, as well as improper allocations of costs related to more than one project. He claims that these complaints were sufficiently threatening to Counterpart's managers at Headquarters (specifically Lear and Dorcus), as well as to the managers in the field who were benefiting from the

1

improper subsidies (specifically Kunz and Abma) to provide them with a motive to rid themselves of Cooper. Evidence supporting the inference that Lear learned that there was a danger that Cooper would complain to USAID about Counterpart's misuse of program funds before she terminated Cooper is set out in Plaintiff's Statement of Genuine Issues, Issue 22 (R. 27(2)).

If Counterpart were not, in fact, violating the USAID regulations Cooper's complaints would hardly seem threatening enough to justify terminating a highly-regarded ten-year employee with an exemplary record.[1] Complaints devoid of merit would hardly have occasioned sending off the company's Human Resources director half way around the world to construct false evidence and break into locked drawers and cabinets in search of the "secret files." Empty complaints would not have caused a company that champions the American ideals of "civil society" to, in effect, brand a stellar employee a dishonest and dangerous outcast or thief by publicly locking him out and barring him from all company offices worldwide. The very severity of the company's treatment of Cooper suggests that Cooper was onto something real.

It was precisely because Cooper's concerns were real that they were threatening to Lear and her colleagues. It was precisely because they threatened the very lifeblood of Counterpart – its relationship with its primary source of funding, USAID – that Counterpart took Cooper's complaints so seriously. Arlene Lear had been taking a very disproportionate percentage of her salary from the projects Cooper managed.[2] Arlene Lear had been receiving substantial bonuses for bringing in new projects (see Exhibit 56, attached at Tab A), and she needed funds from Cooper's projects to continue the

---

[1] For evidence of the esteem with which Cooper was regarded inside and outside Counterpart, see Plaintiff's Statement of Genuine Issues, Issues 1, 2, 3 and 4 (R. 27(1)).
[2] See Plaintiff's Statement of Genuine Issues, Issue 14 a (i) and (ii).

2

activities she had assigned Kunz in other countries in the Mid East and Africa that would bring in these new projects.[3] Arlene Lear had been falsely telling everyone that she had 100% line item flexibility to manipulate the budgets (Lear dep. at 190-910, and this fraud and the disproportionate use of project funds for Headquarters expenses was in danger of being uncovered because of Jay Cooper.[4]

### 2. Cooper Must be Permitted to Offer the Challenged Evidence to Prove a Breach of the Covenant of Good Faith and Fair Dealing.

Cooper has pled that Counterpart breached its contract with him because it exercised in bad faith a clause that permitted it to terminate his contract for performance unsatisfactory to Counterpart. Bad faith can be difficult to define.[5] Yet no one could seriously deny that terminating a contract in order to protect against the uncovering of an illegal spending scheme and in retaliation for a good faith attempt by an employee to correct unlawful practices violates the duty of good faith and fair dealing. Counterpart's motive for terminating Cooper is at the heart of his bad faith proof. The motive was that Counterpart wanted to eliminate any chance that Cooper would upset its lucrative applecart. If the applecart was not in serious danger of being upset, it is more likely that Counterpart really had another, more proper reason for terminating Cooper. Cooper should be permitted to prove that Counterpart had good reason to worry about his complaints.

### 3. The Challenged Evidence Will Not Create a Complex Side Trial or Confuse the Jury.

---

[3] Declaration of Jay Cooper, filed in Opposition to Defendant's Motion for Summary Judgment (R. 27(3)) at ¶ 23.

[4] Declaration of Jay Cooper at ¶ 22.

[5] See RESTATEMENT (SECOND) CONTRACTS § 205, cmt. d.

3

Cooper intends to offer Cooper's testimony and the deposition testimony of Counterpart's Chief Financial Officer Harry Dorcus and Cooper's supervisor and Vice President Arlene Lear to prove that Counterpart was in fact violating USAID regulations. The evidence is straightforward and there will be no surprises. Very few of the 6,000 financial documents that Counterpart fears will be introduced. For example, Cooper will present charts constructed using documents produced by Counterpart that will demonstrate that Counterpart did not do what Mr. Dorcus said it did to meet the USAID regulations (allocate employee costs to projects based on employee time sheets). We will show that Lear took far more salary from projects managed by Jay than the budgets for those projects, approved by USAID, contemplated. We will show that Counterpart knew well how to allocate the costs of coffee and tea for its Almaty office but failed to allocate when paying for housing for Abma and Kunz.

**4. The *Thurgood Marshall Academy* case does not mandate a different result.**

Counterpart apparently relies on the *Thurgood Marshall Academy* case to argue that the challenged evidence should be excluded because Cooper has "no direct evidence" that Counterpart's violations of the USAID regulations were its motive for terminating Cooper. Cooper has plenty of circumstantial evidence of that motive, which, of course, is given equal weight under the law.[6] That evidence was sufficient to withstand Counterpart's motion for summary judgment and we refer the Court to those pleadings rather than recite the evidence here.[7]

---

[6] See Standard Civil Jury Instructions for the District of Columbia, Instruction 2-10.

[7] Counterpart avers that Cooper "admittedly did not have any evidence [of actual financial irregularities] until discovery in this case." Motion at 7. That statement is absolutely untrue, as Counterpart knows. See, Plaintiff's Interrogatory Answers, dated December 6, 2005, Answer 14. See also Exhibits 45, 46, 107.; Cooper Declaration ¶¶ 12-16; Plaintiff's Statement of Genuine Issues, Issues 11 and 12. What Plaintiff did not have, before discovery in this case, is proof of the magnitude of the violations or Mr. Dorcus's

4

It seems that the *Thurgood Marshall Academy* opinion would permit a retaliatory discharge claim to reach a jury only when the decision maker announced his retaliatory intent during the termination discussion and/or the employee brought up his retaliation claim then or shortly thereafter.[8]  One should not forget that Counterpart abolished its Grievance Procedure five weeks before firing Cooper.  In our view, that step was taken precisely to prevent Cooper from raising these issues.  As to whether Counterpart took Cooper's criticisms in a "negative light," Mr. Cooper will testify about how Arlene Lear reacted when he raised some of them.

### 5. The Existence of an Audit Report finding Counterpart in Compliance does not Mandate Exclusion of the Challenged Evidence.

Counterpart, having argued that evidence of violations of USAID regulations is irrelevant and prejudicial, also argues that it has, and apparently intends to offer into evidence, an audit report shortly after Cooper's termination showing no violations. Motion at 4, 9.  Presumably Counterpart would offer this audit report to rebut Cooper's proof that it had a strong motive based in bad faith to fire him.  By so doing, Counterpart ipse dixit concedes that the question of motive and bad faith are central to the question of whether Counterpart's invocation of the contractual clause at issue was made in good faith.

---

testimony as to how he claimed Counterpart allocated costs between projects based on employee timesheets.

Counterpart is also incorrect in stating that "there is undisputed evidence Cooper and Counterpart discussed Cooper's performance issues leading up to his termination. Motion at 9. The Exhibits cited do not refer to performance issues, and Cooper's testimony on this subject is to the effect that the referenced meeting was not about his performance.  See Deposition of Jay Cooper (R. 26(13)) at 95-97.

[8]  Counterpart draws great significance from the fact that Cooper did not urge the USAID to undertake an investigation of Counterpart. Motion at 3-4.  He will testify that he did not want USAID to shut down his projects, in which he was heavily invested.  A list of subjects that he discussed with USAID at the meeting about a week after his termination is Exhibit 21, attached at Tab B.

5

It is to be expected that Counterpart will put up Mr. Dorcus to testify that Counterpart was always in compliance with USAID regulations. He so testified in his deposition. He also was forced to admit many matters that prove Cooper's position. The jury can hear it all and decide which side of his testimony to believe.

## Conclusion

For all the above reasons, Cooper should be permitted to introduce evidence of Counterpart's failure to abide by USAID regulations. The motion in limine should be denied.

Respectfully submitted,

_____
Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066
(703) 759-3586

COUNSEL FOR PLAINTIFF JAY COOPER

July 7, 2008