**Attachment 10.b to Joint Pretrial Statement**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1598 (RMC-JMF) |
| ) | |
| COUNTERPART INTERNATIONAL, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY OF COUNTERPART'S NON-PUBLIC COMMUNICATIONS ABOUT COOPER'S PERFORMANCE OR TERMINATION**

Counterpart seeks to exclude evidence of certain of its transmissions of false information about Cooper on the ground that each cited statement or act individually is insufficiently public to satisfy the element of "giving publicity" in the tort of invasion of privacy by false light.

In so arguing, Counterpart essentially attempts to reargue its motion for summary judgment. There Counterpart argued that Cooper had no evidence of publicity, citing the same authorities here cited and many of the same pieces of evidence, although sometimes differently worded. (R. 18 at 13-17.) Essentially Counterpart is attempting to undo this Court's ruling of July 2, 2007 (R. 31) that Cooper's claim of false light should go to the jury by arguing that many pieces of evidence supporting that claim be disallowed.

Counterpart urges that its position is supported by the definition of "publicity" in the RESTATEMENT (SECOND) OF TORTS § 652D cmt. a, applied to the false light

1

invasion of privacy by virtue of RESTATEMENT (SECOND) OF TORTS § 652E cmt a, and relied on in the *Steinbuch* case. That comment defines "publicity" as communicating a matter "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."

1. **The acts and words of Counterpart should be considered as a whole, and as a whole they constitute foreseeable "giving publicity" by Counterpart.**

Counterpart's argument ignores the fact that each piece of evidence it cites is part of a constellation of words and actions through which Counterpart made it clear to the Cooper's world[1] that Cooper was a dishonest man, a man even his own employer could not trust. Counterpart's piecemeal approach ignores the fact that Counterpart well knew that actions such as locking Cooper out, searching his private office after lying to the staff about the reasons the office was closed, and sending out conflicting messages as to what had happened would travel rapidly by word of mouth within that community. It was wholly foreseeable to Counterpart that the word would travel throughout the community of which Cooper was a part and in which he worked about what had happened to Jay Cooper, and each piece of false evidence, some of which conflicted with other bits of "information," would be picked over and discussed by those hoping to understand what happened and why. Compare, *Pachowitz v. LeDoux*, 666 N.W.2d 88 (Wis. App 2003) (disclosing private information to one co-worker sufficient publicity because defendant "should have appreciated the risk that [that one person] would further disclose [plaintiff's] private information.")

---

[1] As we show below, the relevant community to whom publicity is given need not be the entire world. It is more properly the world in which Cooper lived and worked, and included Counterpart in its various offices worldwide and particularly in Central Asia, the community of development professionals working in that Region as well as the host country nationals that worked in and with the NGOs that Cooper and Counterpart had sponsored and encouraged for many years.

2

Many cases discuss the "publicity" element of false light in the context of one statement or action by a defendant that is asserted to give rise to a claim of false light. In that context, courts often discuss whether dissemination of the false information to one, two or twenty individual is sufficient to fulfill the "publicity" element of the tort as defined in comment a. See, *e.g.*, *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377 (Pa Super. 1984) (disclosure to 17 persons held sufficient publicity). Cooper is not here arguing that any one of the pieces of evidence cited in Counterpart's motion taken individually could support a judgment for invasion of privacy by false light. He is saying that the entire course of conduct (including words and actions) constitutes the tort, and that it was, indeed, substantially certain that each bit of information that was emitted by Counterpart's agents would merge into the confusing, false rumors about what happened to Jay Cooper that swirled around and became public knowledge in Cooper's community.

Our position is consistent with the approach taken by the D.C. Circuit which has noted the need for flexibility in assessing the publicity element. *McSurely v. McClellan*, 783 F. 2d 88, 112 (D.C. Cir. 1967) That court has said, "The doctrine [of the tort of invasion of privacy] is an evolving one, not wedded to rigid rules or standards: '[T]he right of privacy is relative to the customs of the time and place, and it is determined by the norm of the ordinary man." *McSurely v. McClellan, supra,* 783 F.2d at 111 (1985) (*quoting Wheeler v. P. Sorenson Mfg. Co., Ky*, 415 S.W. 2d 582, 584 (1967)).

2.  **The concept of "public knowledge" should be read in context of community in which the plaintiff lives and works.**

The tort of false light does not require that the false information be disseminated throughout the entire world. The purpose of the tort has long been seen to protect a

3

person's interest in being left alone, and to protect him from the emotional pain and stress of becoming an object of pity and ridicule. Prosser and Keeton on Torts (5th ed.) § 117 at 863-66. It would be an unusual plaintiff who could be subjected to world-wide pity and ridicule. To decide cases brought by ordinary folk, courts often analyze the "publicity" element in light of the community in which the plaintiff lives and works and whether he has suffered shame and humiliation in that context. See, e.g., *Grossman v. Computer Curriculum Corp.,* 131 F. Supp.2d 299, 311 (D. Conn. 2000) (summary judgment for defendant denied when plaintiff alleges defendant fulfilled the publicity element by conveying false accusations about the plaintiff's work performance to his customers throughout the school system); *Krochalis v. Ins. Co. of North America,* 629 F. Supp. 1360,. 1371-72 (E.D. Pa 1985)(denying summary judgment to defendant alleged to have made false statements about the plaintiff to employees in an internal staff meeting which subsequently became common knowledge throughout the entire industry in which the plaintiff worked)

Other courts have singled out "special relationships" that deserve additional leniency in the scope of required publicity necessary for liability. For example, in *Beaumont v. Brown*, 257 N.W, 522, 531 (Mich 1977) the court emphasized the nature of the relationship between the plaintiff and the recipient of the communication:

> Communication of embarrassing facts about an individual to a public not concerned with that individual and with whom the individual is not concerned obviously is not a "serious interference" with plaintiff's right to privacy, although it might be "unnecessary" or "unreasonable". An invasion of a plaintiff's right to privacy is important if it exposes private facts to a public whose knowledge of those facts would be embarrassing to the plaintiff. Such a public might be the general public, if the person were a public figure, or a particular public such as fellow employees, club members, church members, family, or neighbors, if the person were not a public figure.

257 N.W.2d at 531, quoted with approval in *McSurely v. McClellan*, supra, 753 F.2d at 112.

Fellow employees are often the subjects of cases that adopt the reasoning of the *Beaumont* court. See *Miller v. Motorola, Inc.*, 560 N.E. 2d 900 (Ill. App. 1990) (reversing dismissal of claim for invasion of privacy against employer for disclosing plaintiff's mastectomy to her fellow employees, recognizing that there are circumstances where a special relationship exists between the plaintiff and a smaller segment of the "public" which would make disclosure even more devastating); *Chisholm v. Foothill Capital Corp.*, 3 F. Supp.2d 925, 940 (N. D. Ill. 1998) (disclosure of plaintiff's affair to two potential clients of plaintiff's employer could satisfy the publicity requirement); *Hill v. MCIWorldcom Communications, Inc.*, 141 F. Supp.2d 1205 (S.D. Iowa 2001) (disclosure of contact information about plaintiff's friends to plaintiff's stalker).[2]

As the D. C. Circuit has recognized, the "customs of the time and place" are relevant to scope of the privacy tort. (*McSurely v. McClellan*, supra, 753 F. 2d at 111.) The countries of Central Asia where Cooper worked were former members of the USSR, where police tactics were swift and punitive, and the citizenry alert to word of mouth speculation about the significance of raids against individuals. That context should be taken into account in assessing the probability that Counterpart undoubtedly forsaw that its words and actions would be spread widely in Cooper's world.

## Conclusion

For all of the above reasons, the motion in limine to exclude evidence of certain words and actions by Counterpart should be denied.

---

[2] The opinion in the Hill case contains an especially informative discussion of various cases on the publicity element of the privacy torts.

Respectfully submitted,

_____
Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066-3219
703 759-3586
Counsel for Plaintiff Jay Cooper

July 7, 2008