Attachment 11.b to Joint Pretrial Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1598 (RMC-JMF) |
| | ) |
| COUNTERPART INTERNATIONAL, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY ABOUT PROPP'S LAWSUIT**

Counterpart seeks to bar evidence about the fact that one of its Vice Presidents, Brian Propp, sued Counterpart claiming discrimination and retaliation in connection with Counterpart's decision to fire him on October 12, 2004.

Plaintiff has taken the deposition of Brian Propp. As he lives in Colorado we intend to read parts of the transcript into the record at trial. Those excerpts[1] reveal four matters of relevance to Plaintiff's case.

First, Propp testified that for a year before his termination he had been complaining to Counterpart's upper management about Counterpart's misuse of government-granted funds for matters other than the projects for which those funds had been awarded. A month before he was fired he complained of these matters to Counterpart's CEO Harry Dorcus. His complaints, like Cooper's, were ignored.

---

[1] The entire transcript of Propp's deposition has been filed in connection with Plaintiff's Opposition to Counterpart's Motion for Summary Judgment (R. 26(1)).

1

Second, on October 6, Counterpart rescinded its Grievance Procedure.[2] Five weeks later Propp was fired. He was given no reason. From these events Plaintiff will ask the jury to conclude that the Grievance Procedure was abolished because Counterpart wished to rid itself of two men who were questioning its compliance with government cost accounting regulations without permitting them to convene a grievance procedure to explore Counterpart's motivation.

Third, Counterpart in discovery in this case identified[3] Propp as a person who had been locked out of his office after an involuntary termination. Counterpart thus used the example of Propp to hope to prove that it was simply following its standard operating procedures when Cooper was locked out of his office and banned from all Counterpart offices. In Cooper's case, Counterpart went so far as to shut down the entire Almaty office over a weekend so that Boyer and Abma could conduct a thorough search of Cooper's office in a frantic hunt for the "secret files" that they were afraid Cooper was collecting that would expose the company to government charges of improper accounting practices. Propp's testimony supports Cooper's position that Counterpart's actions in his case were far from standard operating procedure. For Propp testified that after he was relieved of responsibilities he was allowed to come into the office over several weeks, could come and go freely within the offices of corporate headquarters and was free to

---

[2] See the accompanying Opposition to Plaintiff's In Limine Motion to Exclude Evidence and Testimony about Chassy's Grievance for a discussion of the evidence concerning the motivation for this event.

[3] Counterpart's shifting identification of who was locked out and why Counterpart supposedly had such a "policy" is spelled out in Plaintiff's Statement of Genuine Issues, Issue No. 21 (R. 27(2)). That evidence will be brought before the jury and is among the strongest evidence of Counterpart's bad faith and failures of candor.

gather his personal belongings from his office and use the telephone there.[4] Propp testified that a lock was eventually placed on his office door, but this was weeks after he was let go and after he had been allowed free access to the office. Propp testified that even after a lock was put on his office door he was still permitted to come in and use the office which would be opened for him. Propp drew the inference that this late lock was added simply to justify what was done to Cooper.

Finally, Propp testified that he had heard many executives at Counterpart complain about the competence of Kelli Boyer, and that two executives had told him that many at the company were pleased to see her go.[5]

Those three matters are what we intend to bring out through Propp's deposition. All four are relevant. All four support Cooper's position in this case. We are frankly puzzled by this motion. We would have thought that Counterpart would want to bring in evidence that Propp had a suit pending[6] against Counterpart as evidence of his bias against the company.

Accordingly, we agree not to designate any portion of Propp's testimony that concerns his lawsuit. We will only bring up that subject if Counterpart first raises it.

Respectfully submitted,

---

[4] Propp also testified to personal knowledge that his predecessor, Greg Touma, was not locked out after being fired. Touma was another example brought forward by Counterpart to prove its claim of a "standard operating procedure."

[5] For more on this subject see the accompanying Opposition to Motion in Limine to Exclude Evidence and Testimony About the Reasons for Boyer's separation.

[6] Our understanding is that Propp's suit was brought in D.C. Superior Court, that Counterpart's motion for summary judgment was granted and that the matter is currently on appeal in the D.C. Court of Appeals.

3

Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066
(703) 759-3586

COUNSEL FOR PLAINTIFF JAY COOPER

July 7, 2008