Attachment 13.b to Joint Pretrial Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 05-1598 (RMC-JMF) |
| COUNTERPART INTERNATIONAL, | ) ) ) |
|     Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY ABOUT THE REASONS FOR BOYER'S SEPARATION**

Counterpart seeks to bar evidence about the reasons Kelli Boyer left her employment as Counterpart's Human Resources Manager on the grounds of lack of relevance and potential prejudice to Counterpart.

Kelli Boyer played a crucial role in Cooper's termination. She visited Cooper's offices in Central Asia, had various communications with him and with others, and reported back her "findings" to Arlene Lear who made the termination decision. Lear's telephone call firing Cooper, and the script she prepared for that call, credits Boyer's report as the basis for the termination decision.[1] It is thus vital to Cooper's case to undercut the Boyer report. Cooper and others have and will testify that Boyer's reports

---

[1] Lear's script is Exhibit 15, attached at Tab A. In an effort to convince the Court that there were no genuine issues of material fact in this case, Lear subsequently filed a Declaration claiming that she actually fired Cooper because of her personal observations of his performance failings, minimizing any reliance on Boyer's report. (R. 18(14)) This change of position will be displayed to the jury as critical evidence as to the credibility and good faith of Ms. Lear.

1

about Cooper's management style are dead wrong.[2] Cooper has consistently adamantly denied making several statements that Boyer attributes to him. Thus Boyer's credibility and reliability is squarely at issue in this case.

There are two possible explanations for what Boyer did, and there is ample evidence to support each. Under the first scenario, Boyer was a stooge and a simple liar, who was sent to Almaty by Lear to gin up evidence that would justify firing Cooper to remove his objections to Counterpart's failures to abide by applicable accounting principles.[3] Under the second, Boyer was simply incompetent, and was led astray by Kunz and Abma who had their own personal reasons to have Cooper, who was complaining about their using his project funds to further their future programs, removed.[4]

Evidence about the reasons for Boyer's separation supports both of these possibilities. Such evidence goes to Boyer's credibility and Boyer's competence. It also goes to the question of whether it was consistent with the duty of good faith and fair dealing for Counterpart to rely on Boyer's report in firing Cooper.

### 1. Cooper is entitled to explore whether Boyer or lied about the circumstances surrounding her separation from Counterpart.

When asked at deposition for the reasons she left the employ of Counterpart, Boyer testified that she resigned for "mainly personal reasons" and that her departure was absolutely amicable. (Boyer dep. 211-12)[5] She also testified that in the last year of her Counterpart employment she "spoke up frankly" about some matter which led to a

---

[2] See Plaintiff's Statement of Genuine Issues, Issues 1, 2, 3, and 4(R. 27 (1)).

[3] For some of the evidence of this and the inconsistent testimony Counterpart executives have given on the subject, see Plaintiff's Statement of Genuine Issues, Issue No. 17 (R. 27(2)).

[4] For some of the evidence of this, see Plaintiff's Statement of Genuine Issues, Issue No. 19 (R. 27(2)).

[5] The complete transcript of the Boyer deposition is filed with the Court (R. 26(10).

2

change of supervisor and a change of job responsibilities. (Id. at 47) At the time of her deposition, Cooper's counsel had not yet received documentation concerning Boyer's separation.[6]

There is now evidence in hand that Boyer was less than candid in this answer, including an unexplained period when Boyer was apparently being paid to serve as a consultant to the company, an unexplained unsigned document entitled Agreement/Waiver drafted by Boyer[7] that included a period of salary continuation after termination, special projects and an agreement that she cooperate to assist with on-going legal matters in exchange for certain compensation, demands from her that      , and missing performance evaluations of Boyer and an incomplete performance evaluation which may or may not be of Boyer. (Dorcus dep. 422.)[8] Brian Propp testified in his deposition that he had heard many complaints about Boyer's performance while he was at Counterpart, including critical comments by Arlene Lear. Harry Dorcus told us about failure by one supervisor to get Boyer to improve areas of weakness, leading to a transfer to a new supervisor. Propp also testified that after his termination two Counterpart executives told him that many at the company were pleased that Boyer was no longer employed. This picture is not one of an absolutely amiable departure for personal reasons.

---

[6] The Court ordered production of documents concerning Boyer's departure from Counterpart on October 19, 2006 after a motion to compel.

[7] The Agreement/Waiver (attached at Tab B) bears an uncanny resemblance to documents provided in discovery related to the involuntary terminations of persons such as Propp, Touma, Black and Chassey. Compare, for example, Exhibit 82 (at Tab D of Plaintiff's Opposition to Motion in Limine to Exclude Evidence and Testimony about Chassy's Grievance. It also tracks a document bearing the same title that was presented to Cooper at the time of his firing as a condition of his receiving, among other things, the relocation monies that he was due under the Counterpart employee manual. As such, it seems that this Agreement/Waiver is what Counterpart uses when an employee is involuntarily terminated.

[8] See generally Plaintiff's Statement of Genuine Issues, Issue No 20 and evidence there cited.

In sum, it seems that Boyer's credibility on the issue of why she left Counterpart is seriously suspect. Cooper should be permitted to cross examine on these points if she takes the stand on Counterpart's behalf, and introduce deposition testimony undercutting her testimony in his case in chief.

### 2. Cooper is entitled to explore whether Counterpart knew that Boyer was incompetent to prove violation of the duty of good faith and fair dealing.

The testimony of Brian Propp and Harry Dorcus cited above indicates that Counterpart management had serious doubts about Boyer's competence. If Counterpart had reason to know that Boyer was incompetent in her position, it would be inconsistent with the duty of good faith and fair dealing[9] to rely on Boyer's report to fire a highly respected employee with a stellar ten-year career with the company.[10] In addition, to so rely without giving the highly regarded employee a chance to answer Boyer's charges, as happened here, would surely strain any claim of good faith.

### 3. Cooper is entitled to explore whether other Counterpart witnesses misrepresented their level of trust in Boyer's competence and/or the circumstances surrounding Boyer's separation from Counterpart.

Arlene Lear swore to this Court that she believed Boyer "did a good job handling personnel issues and I trusted her ability to investigate employee performance issues and report back accurately." (Declaration of Arlene Lear, R. 18(L) at ¶ 21.) In his initial day of deposition in this case, Counterpart's CFO Harry Dorcus attempted to minimize criticisms of Boyer by other Counterpart executives, calling her a "good employee with paperwork issues." (Dorcus dep at 40-43, 53-60). He also tried to leave the impression

---

[9] A discussion of this legal principle will be found in Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding Plaintiff's Alleged Damages Incurred After December 12, 2004.

[10] For some of the evidence of the respect in which Cooper was held by Lear and by other professional colleagues see Plaintiff's Statement of Genuine Issues, Issues No. 1, 2, 3 & 4 (R. 27 (1).

4

that Boyer's only deficiencies lay in the area of recruiting and in failure to update Counterpart's employee manual, and that Boyer had had a mere "communication issue" with her first supervisor. (*Id.* at 53-55.) All of these representations are subject to serious doubt in light of the since-uncovered evidence listed above.

Harry Dorcus was the only witness whose deposition was reopened by order of the Court after Plaintiff's motion to compel resulted in the production of documents about Boyer's separation.[11] His testimony when asked if Boyer was nudged out the door of Counterpart is attached behind Tab C. Cooper should be entitled to point out to the jury the contrast between the benign picture Dorcus painted of Boyer's deficiencies and his later, starker testimony once documentation was in hand.

### 4. Prejudice to Counterpart is Difficult to Discern.

Counterpart, as in all of these motions in limine, offers only conclusory allegations of prejudice from the evidence it seeks to exclude. In this instance (as in the others) it is hard to guess what exactly what prejudice it fears. Any embarrassment would be to Ms. Boyer. Any embarrassment arising from the impeachment of misleading testimony is the type of prejudice that is appropriate.

### Conclusion

For all the above reasons, Cooper should be permitted to explore in the cross examination of Boyer and other Counterpart witnesses the reasons for Boyer's separation from Counterpart. Plaintiff should be allowed to offer in its case in chief the deposition testimony of Boyer, Dorcus and Propp discussed above. Any doubts the Court may have on the relevance of or prejudice from this issue should be resolved in Cooper's favor given Cooper's need that the jury be given **all the information available** upon which to

---

[11] The Court's order is dated October 19, 2006.

5

make a determination as to the credibility of Boyer's testimony about what she learned about Cooper's job performance and about certain statements that she says Cooper made to her.  The motion in limine should be denied.

Respectfully submitted,

/s/ Patricia D. Douglass
Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066
(703) 759-3586

COUNSEL FOR PLAINTIFF JAY COOPER

July 7, 2008