Attachment 14.b to Joint Pretrial Statement

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAY W. COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1598 (RMC-JMF) |
| ) | |
| COUNTERPART INTERNATIONAL, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING PLAINTIFF'S ALLEGED DAMAGES INCURED AFTER DECEMBER 12, 2004**

For the first time in this Motion, Defendant seeks to rely on a different provision of the contract between the parties (the letter agreement dated December 18, 2003 ("the letter agreement," Exhibit 1 to Defendant's Motion). That provision (the "30 days notice provision") is one of the four enumerated circumstances under which the letter agreement could be terminated (see ¶ 7).

1. **Defendant should not be permitted to change contractual provisions in mid-stream.**

Counterpart has never before mentioned the 30 days notice provision in all the pages of filings in this case. It has consistently maintained that it terminated Cooper out of dissatisfaction with his job performance. (See, *e.g.*, ¶ 28 of the Declaration of Arlene Lear, attached behind Tab A, filed in this Court in support of Defendant's Motion for Summary Judgment.) Since Counterpart did not terminate Cooper by virtue of its supposed power under the 30 days notice provision, that provision should be deemed irrelevant to the issues before the Court.

1

## 2. Even if such a change of position is permitted, Defendant did not follow the 30 days notice provision in terminating Cooper.

The 30 days notice provision is straightforward in its language. It requires 30 days written notice before a termination becomes effective. It may be invoked by Cooper as well as Counterpart, presumably restricting Cooper from quitting his position without giving Counterpart an opportunity to fill his place. The concomitant benefit to Cooper is that if Counterpart had invoked the provision, the 30 days would have given him an opportunity to correct any misunderstandings of fact upon which a termination decision may have been based. One way that Cooper might have tried to do that is to invoke the Counterpart Grievance Procedure, set out it its Manual for Overseas Employees.[1]

Although there is a dispute in this case as to when and why the Grievance Procedure was rescinded, there is no evidence whatsoever that contradicts two facts relevant to this motion: 1) the Grievance Procedure was in the Manual for Overseas Employees at the time the parties entered into the letter agreement; and 2) the Grievance Procedure had been rescinded by the date of Cooper's termination. Thus at the time the parties entered into the letter agreement Cooper had an expectation that there was a procedure in place through which he might have challenged Ms. Boyer's "facts" and what we assert was the unlawful motivation for the termination.

It should not be overlooked that Counterpart simply did not follow the 30 days notice provision in firing Cooper. Counterpart did not give Cooper any notice whatsoever when it terminated the letter agreement. It locked him out of his office, cut off his email address and sent out a notice barring him from all Counterpart locations, all effective

---

[1] It is significant that that Manual is specifically referenced twice in the letter agreement, at paragraph 4. The Manual's Grievance Procedure (attached behind Tab B) specifically cites as remedies available actions by Counterpart "which may be taken to correct the factual situation, which forms the basis of the grievance." (Exhibit B at CP0597.)

2

immediately. (See Exhibit 2 to the Counterpart Motion.) The Grievance Procedure was no more. Cooper had no hope of changing the minds of the decision makers once the "notice" was given. Mr. Dorcus makes that point very clear in his deposition, referring to Exhibit 52 (attached hereto behind Tab C), an email that Cooper wrote to Dorcus and to the President of Counterpart shortly after the termination complaining that Boyer had apparently lied in the "facts" she had reported about her visit to Almaty:

> Q: Obviously Mr. Cooper had a different view of what transpired between him and Kelli, is that fair to say?
>
> A: Fair to say.
>
> Q: And he's setting out his point of view in this e-mail to you with a carbon copy to Lelei LeLaulu, correct?
>
> A: Right.
>
> Q: You don't answer it. LeLaulu does, correct?
>
> A: He gets back.
>
> Q: Right.
>
> A: Because Kelli is standing right beside me saying all this is false.
>
> Q: So you chose to believe her?
>
> A: Yes. . . . So I mean, in every issue there are two sides, two points of view, and in this one the headquarters came off taking the other point of view.

(Deposition of Harry Dorcus, August 29, 2006 at 240-41.)

Counterpart should not be heard now to invoke the benefits to it of the 30 day notice procedure when it 1) has not itself followed the terms of the provision and 2) has revoked

3

the one procedure that could have provided concomitant benefits to the employee if he had been confronted by a 30 days notice.

### 3. It was "unlawful" for Counterpart to terminate Cooper for the reasons to be the subject of Plaintiff's proof.

Defendant is reading the words "any lawful reason" to mean any reason that is not the subject of a statutory prohibition. Many other things are unlawful, including breach of contract and termination of an employee in order to prevent him from upsetting the corporate practice of evading OMB regulations and filing false claims with the government. The proof is this case will be that Counterpart acted unlawfully in terminating Cooper. Thus the 30 day notice provision is inapposite.

### 4. The 30 days notice provision, like every other contractual provision, is subject to the duty of good faith and fair dealing.

Counterpart has rightfully conceded that its contractual relationship with Cooper required it to deal with him in accord with the implied covenant of good faith and fair dealing. Memorandum in Support of Defendant's Motion for Summary Judgment, filed January 12, 2007 (R. 18 (15) at 6-7).

That duty is set out in RESTATEMENT (SECOND) CONTRACTS § 205:

§ 205. Duty of Good Faith and Fair Dealing
Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

Section 205, and the comments and illustrations that accompany it, have been widely held to define a duty or covenant that is implied in every contract. Section 205 is followed by courts of many states, including the District of Columbia. *Allworth v. Howard University,* 890 A.2d 194, 201-02 (D.C. 2006), and cases therein cited; *Hais v. Smith,* 547 A.2d 986, 987 (D.C. 1988); *Wade v. Kessler Institute,* 778 A. 2d 580 (N.J.

4

App. 2001). This Court has approved it as a contractual obligation. See, e.g., *Lance c. United Mine Workers of America 1974 Pension Trust*, 355 F.Supp.2d 358 (D.D.C. 2005) (*dicta*); *Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003 (D.D.C. 1991). The duty applies to contracts of employment. *Allworth, supra; Wade, supra; Lance, supra.* See Perritt, H., Employee Dismissal Law and Practice (4th ed.) at § 6.29; Rothstein, Schroeder and Shoben, Employment Law (3d ed.) at § 9.6.

The implied duty of good faith and fair dealing has been applied to contractual terms like those in the letter agreement which apparently give one party the unilateral right to decide when or in what circumstances the contract may be terminated. See, *e.g. Communications Transmission, Inc. v. Tristar Communications, Inc.*, 798 F. Supp. 406 (W.D.Tex 1992) (party with a unilateral right to decide the nature and extent of the other party's performance under a contract must exercise that power in good faith); *Sadowski v. Dell Computer Corp*, 268 F. Supp.2d 129, 137 (D. Conn 2003) (apparently unbridled discretion given by contract to one party to cancel must be exercised in good faith, and whether or not it has been is a jury question); *Fortune v. National Cash Register Co.*, 364 N.E. 2d 1251 (Mass 1977) (employer's decision to terminate a long-standing employee must be exercised in good faith even though the employment is at will).

The 30 day notice provision is just such a unilateral provision. If the Court believes that the 30 day notice provision has any place in this case at all, it should be subject to the good faith and fair dealing test, just like the "satisfaction" clause that Defendant has long relied on.

## Conclusion

The motion should be denied and evidence of damages beyond December 12, 2004 should be admitted for the jury's consideration as to whether Defendant breached its duty of good faith and fair dealing or was otherwise unlawful in its termination of Cooper.

Respectfully submitted,

*/s/ Patricia D. Douglass*
Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066
(703) 759-3586

COUNSEL FOR PLAINTIFF JAY COOPER

July 11, 2008