**Attachment 15.a to Joint Pretrial Statement**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAY W. COOPER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) | |
| **COUNTERPART INTERNATIONAL,** | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S IN LIMINE MOTION SEEKING RULING ON ADMISSIBILITY OF DEFENDANT'S ADMISSIONS

Plaintiff Jay Cooper hereby moves the Court, pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, to determine pre-trial the admissibility into evidence of certain admissions by Defendant.

During discovery in this case, Defendant admitted certain matters subject to "boilerplate" objections. Defendant has declined to enter into reasonable stipulations concerning these matters. Resolution of these matters at the Pre-Trial conference is permitted by Rule 36(a) and will serve to avoid needless expenditure of time at trial.

For the reasons set out in the accompanying Memorandum, Plaintiff respectfully requests that the Court determine the admissibility of sixty-six specific facts admitted by Defendant. In the alternative, Plaintiff asks that the Court rule that a pleading entitled "Defendant's Response to Plaintiff's Request for Admissions," dated October 11, 2006 and marked as Plaintiff's Exhibit 131 is admissible at trial.

The timing of this motion will also be explained in the accompanying

Memorandum.


Respectfully submitted,

Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066-3219
703 759-3586
Counsel for Plaintiff Jay Cooper


July 14, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAY W. COOPER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) |
| **COUNTERPART INTERNATIONAL,** | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S IN LIMINE MOTION
### SEEKING RULING ON ADMISSIBILITY OF DEFENDANT'S ADMISSIONS

Plaintiff Jay Cooper seeks a ruling on the admissibility of sixty-six specific factual

matters that have been admitted by Defendant Counterpart International ("Counterpart").

The circumstances necessitating this motion are as follows.

During discovery in this case, Counterpart responded to a Request for Admissions

propounded by Cooper.  That response, entitled Defendant's Response to Plaintiff's

Request for Admissions, dated October 11, 2006 ("Counterpart's Response to RFAs"), is

appended to this Motion as Exhibit A.

In Counterpart's Response to RFAs, Counterpart admitted certain facts that will

help to prove Plaintiff's case.  Counterpart made those admissions subject to several

"boilerplate" objections that applied to each,[1] as well as to certain objections targeted at

particular Requests.   In accord with this Court's Order of June 3, 2008, Plaintiff

---

[1]  The "boilerplate" objections are set out at pages 1-2 of Counterpart's Responses to RFAs and include objections to the extent attorney-client privileged or proprietary business information, or information beyond the reach of the Federal Rules of Civil Procedure, might be sought.  In addition, virtually every specific response on the pages thereafter asserts a relevance objection.

prepared proposed stipulations and presented them to Counterpart's counsel to review. Plaintiff's Proposed Stipulations for Trial are attached behind Tab B. Of the 129 stipulations proposed by Cooper, at least sixty-eight[2] were targeted directly to encompass facts previously admitted in Counterpart's Response to RFAs of October 2006. In many cases, bit of language that had occasioned objections in Counterpart's Responses to RFAs were carefully rephrased to remove the basis for the proffered objection. Attached behind Tab C is a chart which permits easy comparison of Counterpart's admissions and the proposed stipulations designed to permit their use at trial.

Plaintiff's proposed stipulations were presented to Counterpart's counsel on July 9, 2008. This date had been set for the exchange of proposed stipulations in accord with a timetable designed by Counterpart's counsel to permit timely development of this Joint Pre-Trial Statement.[3] Only at 5:15 p.m. on July 13, 2008, the evening before this Joint Pre-Trial Statement was due to be delivered to the Court, did Counterpart's counsel cavalierly announce that none of Cooper's proposed stipulations, including those previously admitted on October 11, 2006, would be stipulated to. (See exchange of emails appended to this Motion as Exhibit D.)

That course of events has occasioned this Motion. It could not have been prepared in time for Counterpart to include an Opposition in this Joint Pretrial Statement because of the late announcement of Counterpart's position.

---

[2]  Two proposed Stipulations (Stipulation Nos. 76 and 98) were proposed in the hope that Defendant would have by now completed the "research" needed to respond appropriately to Requests Nos. 78 and 103. Counterpart should now be required either to admit or deny these two requests.

[3]  Cooper, through counsel, promptly informed Counterpart's counsel that she had no objection to the Stipulations Counterpart proposed. Those stipulations are now included in this Joint Pre-Trial Statement as "Joint Stipulations."

## ARGUMENT

1.    **Pre-Trial resolution of the admissibility of these admissions will speed the trial.**

The stipulations drafted by Cooper were designed to speed the trial process. Many

include the fact that certain documents were actually received by their recipients. (See,

e.g., Proposed Stipulations 39, 44, 67, 68 and 69, based on RFA Response Nos. 40, 44,

64, 69 and 72.) Others include the identity of documents referred to by witnesses in their

deposition testimony, which deposition testimony has been designated by Plaintiff to be

read into the trial record. (See, e.g., Proposed Stipulations 35 and 38, based on RFA

Response Nos. 37 and 39.)

Most important of all are the sixteen proposed stipulations (Stipulation Nos. 17, 19-32

and 56) that involved the substance of the "secret files" that Kelli Boyer testified she

recovered from Jay Cooper's office after his termination. Boyer testified that these

involved all the "ex-pats" that had been under Cooper's supervision, included a file on

Arlene Lear, and included materials "designed to maybe harm the person maybe at a later

date." When Counterpart produced those files in discovery (almost 1000 pages), they

were found to be the sort of files kept by any manager, substantially undercutting Boyer's

credibility.[4] The sixteen proposed stipulations proved that point, succinctly. Counterpart

had admitted it. Counterpart now refuses to stipulate to it. To prove it at trial will require

substantial wasteful testimony by Cooper.

2.    **Pre-trial resolution of the admissibility of these admissions will not require the Court to evaluate them in the context of the trial.**

---

[4]  Undercutting Boyer's credibility is an important aspect of Cooper's case.

The Court is now in a position to require Counterpart to support its boilerplate and other objections to each of these admissions. Nothing privileged has been sought or revealed. Counterpart's objection for "confidential commercial and/or proprietary business information" has no basis in law. As for the relentless relevance objections, they appear to be founded on Counterpart's position that it was free to terminate Cooper's contract without regard to the duty of good faith and fair dealing, which position has already been implicitly rejected by the denial of its motion for summary judgment.

Counterpart should be required to convince the Court why each admission should not be admissible at trial.

### 3.    Pre-trial resolution of the admissibility of these admissions is contemplated by the Federal Rules and is sensible here.

Rule 36(a) of the Federal Rules of Civil Procedure, governing Requests for Admissions, provides that "the court may, in lieu of these orders, determine that final disposition of the request be made at a pre-trial conference or at a designated time prior to trial. The Provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion."

The relief Cooper here seeks will permit a more economical presentation of evidence and facilitate trial planning. It is also wholly consistent with this Court's Order of June 3 and LCvR 16.5, both designed to foster good-faith cooperation among counsel to facilitate the presentation of relevant evidence.

### CONCLUSION AND RELIEF REQUESTED

We request that Counterpart be required to justify each of its objections and that the admissions be held admissible. In the alternative, we request that Counterpart's Response to RFAs (included on Plaintiff's Exhibit List as Exhibit 131) be itself ruled

admissible and available for presentation to the jury with an appropriate instruction.[5] We

also request an Order as permitted by Rule 37(a)(4) requiring Counterpart to reimburse

Cooper for the reasonable attorney's fees required to make and prosecute this Motion.


Respectfully submitted,

Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066-3219
703 759-3586
Counsel for Plaintiff Jay Cooper


July 14, 2008

---

[5] Among the jury instructions proposed by Cooper is one instructing the jury of the effect of an admission, entitled "Evidence – Requests for Admissions." That proposed instruction wrongly mentions Exhibit 125. The correct Exhibit should be Exhibit 131

**TAB B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAY W. COOPER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) |
| **COUNTERPART INTERNATIONAL,** | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S REQUESTED STIPULATIONS FOR TRIAL

1. Documents bearing Bates stamp numbers CP 0001 through CP 1073, CP1138 through 1272, CP 1346 through CP 4750 and CIC 1470 through CIC 1524 are true, accurate and complete copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

2. Documents bearing Bates stamp numbers 49-61, 65-68, 75-76, 78-89, 92, 96-98, 221-223, 225-227, 229, 231-33, 241-243, 247-248, 251-260 and 284-286 are true, accurate and complete copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

3. Documents bearing Bates stamp numbers CP 1490 through CP 2466 (hereinafter "Plaintiff's Exhibit 100") are true, accurate and complete copies of the files that Kelli Boyer found in Jay Cooper's office after his termination that she characterized as "secret files" at pages 93-103 of her deposition.

4.  Plaintiff's Exhibit 100 is comprised of files on fourteen individuals and one file labeled "computer contractors" concerning a local firm.

5.  Jay Cooper at one time or another was charged with the supervision of each of the fourteen individuals for whom a file is included in Plaintiff's Exhibit 100, with the exception of Michael Kunz.

6.  With the exception of the file on Michael Kunz, the files included in Plaintiff's Exhibit 100 are comprised of the sort of documents routinely kept by a manager about the people he supervises, such as contracts of employment or consulting agreements, job descriptions or documents setting of the scope of work of consultants, resumes, performance evaluations and self-evaluations, periodic progress reports against objectives, and routine emails asking for and sharing information.

7.  The files contained in Plaintiff's Exhibit 100 on nine of these fourteen individuals and the computer contractors file contain employment or consultancy agreements.

8.  The files contained in Plaintiff's Exhibit 100 on nine of these fourteen individuals contain job descriptions and/or documents setting out the Scope of Work expected in connection with a consultant arrangement.

9.  The files contained in Plaintiff's Exhibit 100 on six of these fourteen individuals contain job performance appraisals completed by Jay Cooper and/or self appraisals by that individual.

10. The files contained in Plaintiff's Exhibit 100 on two of these fourteen individuals (Randall Olson and Rosalie Vasquez-Yetter) contain emails and memos concerning

the employment failings of these two individuals and various options to improve

that performance or terminate their employment.

11. Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director

of Turkmenistan in the Fall of 2001 upon instructions from Arlene Lear.

12. Jay Cooper demoted Randall Olson from his position as Country Director of

Tajikistan due to poor performance with the concurrence of Arlene Lear. That poor

performance is documented in emails, memos, notes, comments on monthly reports

and the performance reviews contained in the file on him.

13. The file contained in Plaintiff's Exhibit 100 on Kim Alter contains at least two

hundred pages of emails, reports, memoranda, charts and PowerPoint presentations

by Kim Alter concerning her goals, objectives and progress, the ownership of her

work product, and her discontent with attempts to supervise her work.

14. Kim Alter resigned from employment with Counterpart in 2004.

15. Counterpart was dissatisfied with Kim Alter's relationships with her supervisors by

the time she resigned.

16. In 2003, Cooper, as Chief of Party for CSSI and HNCBI, had responsibility for

Counterpart's office in Uzbekistan during a period when that operation acted as a

sub-contractor to an organization named CHF International in the running of a

program known as CAIP (Community Action Investment Program). During that

period, Michael Kunz served as the Deputy Chief of Party working for Counterpart,

while the Director of the CAIP project worked for CHF. Kunz was based in the

CHF office in Tashkent. During the CAIP project, Counterpart's Uzbekistan staff

sent Plaintiff's Exhibits 33 and 34 to Cooper.

17. Plaintiffs Exhibits 33 and 34 were among the documents in the file on Michael Kunz contained in Plaintiff's Exhibit 100.

18. Cooper sent Plaintiff's Exhibit 101 (bearing Bates stamp number 251) to Arlene Lear on April 8, 2003, attaching a copy of Plaintiff's Exhibit 34.

19. The file in Plaintiff's Exhibit 100 concerning Michael Kunz also contains documents concerning 1) a traffic accident in Uzbekistan, 2) that accident and complaints by Michael Kunz about a Counterpart employee named Azam, and 3) Cooper's handwritten notes of a conversation with Azam in which Azam complains about Kunz.

20. There are no other documents in the file on Michael Kunz contained in Plaintiff's Exhibit 100 other than those described in Stipulation Nos. 16 through 19.

21. Of the 15 employees and consultants about whom a file is included in Plaintiff's Exhibit 100, only eight were ex-pats (Americans living abroad).

22. No file on Arlene Lear is contained in Plaintiff's Exhibit 100 and no such file was found by Kelli Boyer in Jay Cooper's office after his termination.

23. Only two of the files in Plaintiff's Exhibit 100 (those concerning Rosalie Vasquez-Yetter and Randall Olson) contain any handwritten memos of conversations between Jay and the individual whose name is on the file.

24. Only one of the files in Plaintiff's Exhibit 100 (that concerning Randall Olson) contains any non-handwritten memos of conversations between Jay and the individual whose name is on the file.

25. The files in Plaintiff's Exhibit 100 concerning two individuals contain only materials relevant to brief projects for which they were hired as consultants.

26. The file in Plaintiff's Exhibit 100 concerning one individual contains only one sheet of paper, a memo from her asking about time sheets.

27. The individual referenced in Stipulation No. 26 was retained briefly on a consulting basis to serve as an advisor to the Country Director in Tajikistan.

28. The file in Plaintiff's Exhibit 100 concerning another individual contains only a consulting agreement.

29. The file in Plaintiff's Exhibit 100 concerning Yazgylych Charyev contains a lengthy report by a management consultant brought in by Cooper to improve Charyev's performance. Charyev remained as Counterpart's Country Director in Uzbekistan at the time of Cooper's termination.

30. Erkin Kasybekov remained as Counterpart's Country Director in Kyrgyzstan at the time of Cooper's termination.

31. The file labeled "computer contractors" in Plaintiff's Exhibit 100 contains a contract with a local firm to supply consulting services, a list of overtime hours for which the consultants sought reimbursement and an analysis by one of the accountants of documentation.

32. Kelli Boyer testified at deposition that the documents she identified as "secret files," now labeled as Plaintiff's Exhibit 100, were "designed to maybe harm the person maybe at a later date." With the possible exception of the file on Michel Kunz, none of the documents in Plaintiff's Exhibit 100 can fairly be so characterized.

33. Counterpart International has not been able to locate any other Performance Appraisal of Jay Cooper by Arlene Lear other than the one that is Plaintiff's Exhibit 9, despite diligent efforts to do so.

34. Arlene Lear prepared no written Performance Review of Jay Cooper's performance at any time during the period of Jay Cooper's employment with Counterpart International under the employment term covered by Plaintiff's Exhibit 8.

35. Plaintiff's Exhibit 102 (Bates Stamp numbers CIC 1470-73) is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 53-56.

36. Arlene Lear received and reviewed Plaintiff's Exhibit 102.

37. Plaintiff's Exhibit 102 consists of notes from meetings that were held on October 23 and 27, 2000.

38. Plaintiff's Exhibit 103 (Bates stamp numbers CIC 1474-1524) is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 81-83.

39. Arlene Lear received and reviewed Plaintiff's Exhibit 103.

40. Plaintiff's Exhibit 103 is dated March 1, 2002.

41. Plaintiff's Exhibit 14 is a true, correct and complete photographic copy of a document prepared by Cooper and sent to Arlene Lear.

42. Arlene Lear received and reviewed Plaintiff's Exhibit 14.

43. Plaintiff's Exhibit 14 was also received in Counterpart's Human Resources Department.

44. Plaintiff's Exhibit 13 is a true and correct photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002.

45. Plaintiff's Exhibits 9 and 13 were attached to Plaintiff's Exhibit 10, which a true and correct copy of an email dated March 19, 2002 from Arlene Lear to Kate Gottschall (forwarding an email from Cooper to Arlene Lear).

46. Counterpart published no whistleblower protection policy to its employees at any time between December 13, 2003 and November 12, 2004.

47. Counterpart had published no whistleblower protection policy to its employees at the time of Jay Cooper's termination on November 12, 2004.

48. As of the date of trial in this case, Counterpart has failed to produce any written Counterpart whistleblower protection policy.

49. Plaintiff's Exhibit 7, at pages CP0597-99, contains a Grievance Procedure which had been included in Counterpart's Manual for Employees in Foreign Areas for several years prior to November 12, 2004.

50. Minutes of a meeting of Counterpart's Senior Management Team on October 19, 2004, reflect management's recognition that replacing the grievance policy with the open door policy was a "recent policy change."

51. At a meeting of Counterpart's Senior Management Team held on October 26, 2004, it was announced that two members of Counterpart's Program Management Team were revising the company's Open Door Policy.

52. No revision of the Manual for Employees in Foreign Areas that is Plaintiff's Exhibit 7 without the Grievance Procedure was circulated to Counterpart employees until sometime in 2006.

53. Counterpart did not produce to Plaintiff's counsel the document that is Plaintiff's Exhibit 78 until October 12, 2006.

54. October 12, 2006 was the last day of discovery in this case under order of the Court dated July 12, 2006.

55. Jay Cooper hired Gavin Helf as a consultant to provide guidance and management support to Yazgylych Charyev, Counterpart's Country Director for Turkmenistan, on two occasions, once for a three-month period in 2003 and again for a three-week period in 2004.

56. Documents contained in Plaintiff's Exhibit 100 in the file on Gavin Helf include true and correct copies of a draft Scope of Work and an email from Mr. Helf commenting on a draft Scope of Work, which scope of work was to be performed by Mr. Helf on his second visit, as well as the reasons why that second consultancy was warranted.

57. Arlene Lear approved hiring Mr. Helf for the purposes described in Request No. 55 and in the documents referenced in Request No. 56.

58. Sometime after December 31, 2005, Counterpart prepared and submitted to USAID a Final Program Report on one of the programs Jay Cooper had managed between January 1, 2003 and the date of his termination, the HNCBI, which had been operated in five countries in Central Asia. A true and correct photographic copy of that report, minus its attachments, is Plaintiff's Exhibit 104.

59. In Plaintiff's Exhibit 104, Counterpart concluded: "Despite challenging operating environments in some of the countries, the program has proved to be resilient and extremely successful in terms of outreach and producing significant health impact at the community level . . . . It has by far exceeded the target indicators under each of the objectives . . . ."

60. In August of 2004, Don Feil held the position of Vice President (Small Business Development) with Counterpart.

61. In August of 2004, Harry Dorcus held the position of Vice President and Chief Financial Officer with Counterpart.

62. Plaintiff's Exhibit 105 is a true, accurate and correct copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2004 to September 30, 2005.

63. Plaintiff's Exhibit 49 is a true and correct copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2003 to September 30, 2004, with the sole exception of a blacked out portion of page 6.

64. Plaintiff's Exhibit 106 is a true, accurate and complete copy of a Mid-Term Evaluation Report on CSSI, prepared by Christopher Carver of Social Impact, Inc. for Counterpart, dated May 11, 2005.

65. Mr. Carver, on page v of Plaintiff's Exhibit 106, expresses his immense debt of gratitude to Christopher Szecesey, Social Impact Senior Associate, for, among other things, his "invaluable insights into CSSI."

66. Plaintiff's Exhibit 106 is the Mid-Term Evaluation Report referred to by Christopher Szecesey in his deposition in this case taken on September 6, 2006.

67. Plaintiff's Exhibit 107 is a true and correct copy of an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004.

68. Plaintiff's Exhibit 108 (bearing Bates stamp number 3452) is a true and correct copy of an email from Michael Kunz to Cooper dated September 24, 2004 in which Michael Kunz thanks Cooper for "today's meeting" which he (Kunz) described as "really productive."

69. Plaintiff's Exhibit 109 (bearing Bates stamp number 3457) is a true and correct copy of an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004.

70. Irina Kolmakova was Counterpart's HR and Administrative Manager in its Almaty office in 2004, with supervisory responsibility for the receptionist, the drivers and the security guards that worked out of that office.

71. Plaintiff's Exhibit 110 (bearing Bates stamp numbers 3453-56) is a true and correct copy of email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings.

72. Plaintiff's Exhibit 23 is a true and correct photographic copy of an email written by Michael Kunz to Cooper and Yazgylych Charyev on October 6, 2004.

73. Plaintiff's Exhibit 37  is (with the exception of the email forwarding notice from Cooper to Pat Douglass on the top of page 230) a true and correct copy of an email sent to Counterpart's Headquarters Staff from its Human Resources Department on October 6, 2004.

74. Plaintiff's Exhibit 46 is a true and correct copy of an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet.

75. The reference to "Eurasia Regional" on the spreadsheet attached to Plaintiff's Exhibit 46 is to a fund designed to support efforts by Michael Kunz to travel to Armenia and other countries in an attempt to procure new programs for Counterpart, as well as travel by Bob Abma to Iraq, Turkey and perhaps Afghanistan on short-term assignments for Counterpart including training sessions.

76. Plaintiff's Exhibit 17 is a true, correct and complete copy of a job description for Michael Kunz's position as Counterpart's Regional Director for Counterpart's Civil Society Division in Eurasia, the Middle East and South East Asia as of September 1, 2004.

77. Plaintiff's Exhibit 17 describes some of Michael Kunz' responsibilities as of September 1, 2004, including overseeing current programs in Armenia, Bulgaria and Vietnam.

78. In the Fall of 2004, Michael Kunz was cultivating new program opportunities in the Central Asia Region, including those in countries in which Counterpart had no existing programs such as Armenia.

79. In October of 2004, Bob Abma held the position of Counterpart's Regional Finance Director for the Central Asian Region.

80. In October of 2004, Bob Abma had responsibility for certain financial matters in various existing and proposed projects outside the five countries in which the programs managed by Cooper operated.

81. During 2004, Bob Abma traveled on Counterpart business, including to Armenia and Iraq.

82. Before October 8, 2004, Bob Abma and Michael Kunz proposed a budget that included a portion of salary costs for a new assistant to support Michael Kunz in the activities described in Stipulations 76 through 81.

83. Plaintiff's Exhibit 111 (bearing Bates stamp number 285) is a true, accurate and complete copy of an email Cooper sent Bob Abma and Michael Kunz in response to Plaintiff's Exhibit 46.

84. Plaintiff's Exhibit 45 includes a copy of an email sent by Jay Cooper which was received by Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on or about October 21, 2004.

85. At no time before Cooper's termination on November 12, 2004, did Counterpart assign the full time financial person to track closely all the costs for the CSSI and NHCBI projects, as had been requested by Cooper in Exhibit 45 to the Dorcus deposition.

86. After Jay Cooper's termination, an assistant was hired to support Michael Kunz, and part of the salary for that assistant was paid out of funds from the CSSI project.

87. Plaintiff's Exhibit 83 is a true and correct copy of an agreement Counterpart entered into with its former Chief Operating Officer Greg Touma in connection with his resignation from Counterpart's employment; under the terms of Plaintiff's Exhibit 83 Mr. Touma is not allowed to disclose any information regarding, among other things, his employment with and resignation from Counterpart.

88. Counterpart has refused to waive the confidentiality provision of Plaintiff's Exhibit 83.

89. Aaron Chassey was terminated from his position as Director of Counterpart's Civil
    Society Program in the Spring of 2003. He was not locked out of his office
    following that termination.

90. Plaintiff's Exhibit 82 is a true and correct copy of an agreement Counterpart entered
    into with Aaron Chassey, its former Director of Civil Society, in connection with
    the termination of his Counterpart employment; under the terms of Plaintiff's
    Exhibit 82, Mr. Chassey agreed not to disclose any information regarding his
    employment with or termination by Counterpart.

91. Counterpart has refused to waive the confidentiality provision of Plaintiff's Exhibit
    82.

92. Brion Black was terminated from his position as Counterpart's Director for
    Fundraising on October 13, 1999. He was not locked out of his office at the time he
    was told of his termination. He was given twenty-four hours to gather together his
    belongings without supervision.

93. Plaintiff's Exhibit 41 to the Dorcus deposition is a true, correct and complete copy of
    OMB Circular A-122, Cost Principles for Non-Profit Organizations.

94. The substantive language of Plaintiff's Exhibit 41 is identical to the substantive
    language of the document provided to Cooper by Defendant bearing Bates stamp
    numbers CP 2489-CP 2544 which was apparently downloaded from a website
    bearing the address
    http://www.whitehouse.gov/WH/EOP/OMB/html/circulars/a122/a122.html

95. Counterpart investigated various allegations against Cooper made by Kim Alter and
    determined that they were without merit.

96. Counterpart did not credit allegations about Cooper made by Aaron Chassey, and
such allegations played no role in Counterpart's decision to terminate Cooper.

97. Counterpart has paid no reimbursement to Cooper for the business expenses for
which reimbursement was requested in Plaintiff's Exhibits 16, 18 and 19,
(documents bearing Bates stamp numbers 92, 96-97 and 98).

98. Accountants in Counterpart's Almaty office possessed records sufficient to verify the
amounts reflected in Plaintiff's Exhibits 16, 18 and 19.

99. Plaintiff's Exhibit 112 (containing documents bearing Bates stamp numbers 100-107
and 111) reflects expenses incurred by Cooper in returning himself and his
possessions to his Home of Record from Central Asia after his termination.

100. Plaintiff's Exhibit 112 reflects reasonable expenses incurred by Cooper in returning
himself and his household and personal effects to his Home of Record from Central
Asia after his termination.

101. Counterpart has paid no reimbursement, in whole or in part, for the travel and
shipping expenses reflected in Plaintiff's Exhibit 112.

102. November 12, 2004 was a Friday.

103. On November 29, 2005, defendant Counterpart International, through counsel,
served on plaintiff  Plaintiff's Exhibit 113, a document entitled "Response to
Plaintiff's First Set of Interrogatories."

104. In Exhibit 113, in its answer to Interrogatory No. 4 asking for the identity of each
Counterpart employee whose employment was involuntarily terminated within the
past five years and who was locked out of his office at time of that termination,
Counterpart identified only Brian Propp.

105. Plaintiff's Exhibit 113 was signed by counsel for Counterpart. No officer of Counterpart signed and swore under oath to the accuracy of Plaintiff's Exhibit 112, as is required by Rule 33 of the Federal Rules of Civil Procedure.

106. On December 19, 2005, defendant Counterpart International, through counsel, served on plaintiff Plaintiff's Exhibit 114, a document entitled "Supplemental Response to Plaintiff's First Set of Interrogatories." Counterpart's answer to Interrogatory No. 4 in Plaintiff's Exhibit 114 was identical to its answer in Plaintiff's Exhibit 113.

107. On January 11, 2006, Counterpart International, through counsel, served on plaintiff Plaintiff's Exhibit 29, a document entitled "Second Supplemental Response to Plaintiff's First Set of Interrogatories."

108. In Plaintiff's Exhibit 29, Counterpart identifies two persons in response to Interrogatory 4, Brian Propp and Gregory Touma.

109. Arlene Lear testified for Counterpart International as an officer designated by the corporation to speak on its behalf on January 13, 2006.

110. Harry Dorcus swore under oath to the accuracy of the information in Plaintiff's Exhibit 113 and Plaintiff's Exhibit 29, in a document entitled "Verification" on November 20, 2006. Plaintiff's Exhibit 115 is a true and correct copy of that "Verification."

111. Plaintiff's Exhibit 116, a spreadsheet entitled "CSSI funds charged to Arlene Lear," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4657-4750, which shows

salaries and other compensation totaling $ 83,229.32 going to Arlene Lear from the CSSI program in fiscal year 2004.

112. The budget for the CSSI program, Plaintiff's Exhibit 43, provided that Lear was not to take more than 10% of her salary from CSSI project funds.

113. Plaintiff's Exhibit 116, a spreadsheet entitled "HNCBI funds charged to Arlene Lear," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4465-4524, which shows $ 30,674.12 is salaries and other compensation going to Arlene Lear from the HNCBI program in fiscal year 2004.

114. The budget for the HCBI program, Plaintiff's Exhibit 44, provided that only five percent of Lear's salary would be paid by the HNCBI program.

115. Arlene Lear's base salary for fiscal year 2004 was $ 149,001.

116. Plaintiff's Exhibit 117, a spreadsheet entitled "HQ Expenses Not Including Lear," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4657-4750, which shows $ 85, 739 in salaries and other compensation paid to staff at Counterpart's headquarters in Washington, DC other than Lear and charged as direct costs to the CSSI program.

117. Plaintiff's Exhibit 118, a spreadsheet entitled "CSSI funds charged to Bob Abma," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4657-4750, which shows that Bob Abma received $47,392.66 in salary and other compensation from the CSSI program in fiscal year 2004.

118. Plaintiff's Exhibit 119, a spreadsheet entitled "HNCBI funds charged to Bob Abma," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4465-4524, which shows that Bob Abma received $23,728.77 in salary and other compensation from the HNCBI program in fiscal year 2004.

119. Bob Abma's housing costs for fiscal year 2004 were paid solely from funds generated by the CSSI and HNCBI programs.

120. Bob Abma's salary for fiscal year 2004 did not exceed $ 79,000.

121. Plaintiff's Exhibit 120, a spreadsheet entitled "CSSI funds charged to Michael Kunz," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4657-4750, which shows that Michael Kunz earned more than $59,000 in salary and other compensation from the CSSI program in fiscal year 2004.

122. Plaintiff's Exhibit 121, a spreadsheet entitled "Kunz Housing," is an accurate and complete summary, based on the General Ledgers produced by Counterpart International bearing Bates stamp numbers CP4657-4750, which shows that Michael Kunz received $ 13,800 in housing allowance funds from the CSSI program in fiscal year 2004.

123. Plaintiff's Exhibit 122, a list entitled "Calls Lear to Kunz June 27 to to Almaty Office 501950 June 27 to Oct. 5. 2004," is an accurate and complete list of telephone calls, and the duration of such calls, between Counterpart International headquarters and Counterpart's Almaty office between June 27, 2004 and October 5, 2004.

124. In 2004, Counterpart had projects underway in at least 20 countries around the world.

125. Cooper has not made any defamatory statements about Counterpart International.

126. Brian Propp is a white male.

127. Brian Propp was older than fifty years old at the time Counterpart terminated his employment.

128. Plaintiff's Exhibit 123 is a true and accurate photocopy of a complaint filed by Brian Propp in the Superior Court of the District of Columbia.

129. Defendant Counterpart International was legally obliged, at all times relevant to this dispute, to abide by the provisions of Plaintiff's Exhibit 41 in spending the government funds provided to Counterpart for the CSSI and HNCBI programs.


Respectfully submitted,


_____
Patricia D. Douglass
98 Interpromontory Rd.
Great Falls, VA 22066-3219
(703) 759-3586

COUNSEL FOR PLAINTIFF JAY COOPER

July 3, 2008


Certificate of Service

I hereby certify that on July 14, 2008, I served a copy of the foregoing on Defendant Counterpart International by email to Ms. Kara Ariail, at Jackson Lewis LLP, 8614 Westwood Center Drive, Suite 950, Vienna, VA 22182.


_____

Patricia D. Douglass

**Exhibits to Plaintiff's Opposition to Defendant's Motion in Limine to Exclude Evidence and Testimony Regarding Defendant's Compliance with USAID Regulations**

**TAB A**



# COUNTERPART
## International

Member of the
Counterpart Global Network

*1200 Eighteenth Street, NW Suite 1100 Washington, DC 20036 Tel: [1] 202.296.9676  Fax: [1] 202.296.9679*

**BOARD OF DIRECTORS**
Elizabeth B. Silverstein
Founder and Honorary Chair
Stanley W. Hosie
Chairman
Lelei LaLaulu
President and CEO
Bryant George
Secretary
Sally M. Brumbaugh
Advisory Committee on
Voluntary Foreign Aid
Percy Eaton
Alyeska Pipeline Service Co.
Charles Eddy
President, CEI Resources
Eva Haller
USBC Foundation
John A. Hoyt
Commissioner, Earth Charter
Lekha Singh
IZ Foundation/AidMatrix
Paul G. Irwin
President and CEO
The Humane Society of the U.S.
David M. Sloan
Scowcroft Group
Eamon M. Kelly
Chairman
National Science Foundation
Barbara Pyle
Journalist and Filmmaker
Matt Silverstein
Skin Cancer Foundation

**INTERNATIONAL
ADVISORY COUNCIL**
Linda Brolly Hathaway
Photographer, Indigenous Tribes
Brenda Broz Eddy
Eddy Associates, Inc.
Alexandra Cousteau
Oceans Advocate
James G.P. Dehlsen
Elizabeth Dowdeswell
Nuclear Waste Management
Organization
Senator J. Kalani English
State of Hawaii
Cary Fields
President, We Media
Yoel Haller, M.D.
Hon. Jose Ramos-Horta
Nobel Laureate
Amb. James Joseph
Duke University
Craig Kielburger
Free the Children
Mary Lawis
Jane Goodall Institute
Raymond Llasegang
Standard Parking West
Idelisse Malave
Executive Director
Tides Foundation
Rose Marshall
Media Consultant
Hon. Cranwell Montgomery
Baker-Worthington
Victoria Stack
Environmentalist
Randal C. Teague
Vorys, Sater, Seymore, & Pease
Melanne Verveer
Chair of the Board
Vital Voices Global Partnership

**OFFICERS**
Elizabeth B. Silverstein
Honorary Chair for Life
Stanley W. Hosie
Chairman of the Board
Lelei LaLaulu
President and CEO
Harry Dorcus
Treasurer
Bryant George
Secretary
Arlene Lear
Senior Vice President
Raymond Chavez
Vice President
Don Fell
Vice President
Brian Propp
Vice President

October 17, 2003

Ms. Arlene Lear
2853 Ontario Road, NW
Washington, DC 20006

Dear Arlene:

I am pleased to confirm that you have been granted a salary bonus of $16,000. This is based on the excellent performance by both your division and CPI. The primary factors in determining the size of your bonus is specifically your contribution in the area of income generated (New Grants), customer satisfaction (implementation success), seniority and overall salary level. I have authorized this as a one-time payment; it will not affect your base salary or anniversary date.

On behalf of senior management at Counterpart, I extend our appreciation for your fine work.

*and thanks for everything!*

Best wishes,

Lelei LeLaulu
President/CEO

Cc:    Harry Dorcus
       Human Resources

```
Page  1                    Employee Check Information           10/27/2006 11:01 a

ARLENE  LEAR

CHECK DT   PAY END    CHECK NO  GROSS    EARNINGS  DEDUCT    DIR DEP   NET PAY   RUN DATE
========   =======    ========  =====    ========  ======    =======   =======   ========
12/30/2004 12/15/2004 00000366  25000.00 25000.00  10527.24  0.00      14472.76  12/23/2004

----- DETAILS -----
Deduction 01  FICA TAX          Hours:   0.0000  Dollars:    362.50
Deduction 02  FED TAX           Hours:   0.0000  Dollars:   7882.13
Deduction 03  STATE TX          Hours:   0.0000  Dollars:   2282.61
Earning   11  BONUS $           Hours:   0.0000  Dollars:  25000.00
```

CP3374

**TAB B**

**Points to discuss with USAID – Purpose of the meeting**

1. To have some closure with USAID
2. To present some thoughts from me on what has happened recently
3.

- Thanks to USAID for so many years of cooperation.
- Successes for the CI projects over the years.

  - First Support Centers in Kyrgyzstan in Phase 1 (whereas not one was established successfully in KZ in Phase 2)

  - Training modules as Regional Training Director and Country Director in all phases

  - Conferences  (Social Partnership)

  - Tracking database including success stories online

  - Northern Ireland Rural Community Network

  - Consultant Volunteer to develop program of Performance Based Management

- Future work in the region -  worried about my reputation

- Currently CI has made and offer for some months of pay..but I have a contract that goes to the end of the project

- I have been in discussion with the Health and Ed division about no-cost extension for 6 months

- What happened?  I have not been given a reason other than during a conference call on the 12th that I exhibited erratic behavior with HR person here from DC.  She said that I asked her to stay in the region and then left for Bishkek. The fact is that she decided to stay and when I asked her if she needed me to stay in Almaty she said no.  I had scheduled 2 days of workplan development for the CASC program.  Michael Kunz is now my supervisor and during this process he did not talk to me one time.

- I have had concerns about how the cooperative agreement is being managed.  As COP I felt that I had the responsibility to manage financially which includes supervising the FM for the project.  The recent structural changes include the FM for Dem and Health projects reporting to the Regional Director, Michael Kunz.  My concerns included the financial management of the projects.


DEPOSITION EXHIBIT
21

**Attachment 15.a to Joint Pretrial Statement**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAY W. COOPER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) |
| **COUNTERPART INTERNATIONAL,** | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S IN LIMINE MOTION SEEKING RULING ON ADMISSIBILITY OF DEFENDANT'S ADMISSIONS

Plaintiff Jay Cooper hereby moves the Court, pursuant to Rule 36(a) of the Federal Rules of Civil Procedure, to determine pre-trial the admissibility into evidence of certain admissions by Defendant.

During discovery in this case, Defendant admitted certain matters subject to "boilerplate" objections. Defendant has declined to enter into reasonable stipulations concerning these matters. Resolution of these matters at the Pre-Trial conference is permitted by Rule 36(a) and will serve to avoid needless expenditure of time at trial.

For the reasons set out in the accompanying Memorandum, Plaintiff respectfully requests that the Court determine the admissibility of sixty-six specific facts admitted by Defendant. In the alternative, Plaintiff asks that the Court rule that a pleading entitled "Defendant's Response to Plaintiff's Request for Admissions," dated October 11, 2006 and marked as Plaintiff's Exhibit 131 is admissible at trial.

The timing of this motion will also be explained in the accompanying

Memorandum.


Respectfully submitted,


_____

Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066-3219
703 759-3586
Counsel for Plaintiff Jay Cooper


July 14, 2008

**TAB C**

## COMPARISON OF REQUESTS FOR ADMISSION ADMITTED BY
## DEFENDANT AND PLAINTIFF'S PROPOSED STIPULATIONS

| ADMITTED RFA # | STIPULATION # | ANY CHANGES |
|---|---|---|
| 4 | 3 | Exhibit # added |
| 5 | 4 | Exhibit # added; "consulants" changed to "contractors" to meet Defendant's objections |
| 6 | 5 | Exhibit # added |
| 7 | 6 | Exhibit # added |
| 8 | 7 | Exhibit # added; names of employees omitted for simplicity |
| 9 | 8 | Exhibit # added |
| 10 | 9 | Exhibit # added |
| 11 | 10 | |
| 13 | 12 | |
| 14 | 13 | Exhibit # added |
| 15 | 14 | |
| 16 | 15 | |
| 17 | 16 | Information objected to by Defendant omitted from proposed stipulation |
| 20 | 18 | Exhibit # added |
| 21 | 19 | Exhibit # added; language slightly modified w/o change in meaning |
| 22 | 20 | Exhibit # added |
| 23 | 21 | Exhibit # added; names deleted for simplicity |
| 24 | 22 | Exhibit # added |
| 25 | 23 | Exhibit # added |
| 26 | 24 | Exhibit # added |
| 27 | 25 | Exhibit # added |
| 28 | 26 | Exhibit # added; employee name deleted for simplicity |
| 29 | 27 | Exhibit # added; employee name deleted for simplicity |
| 30 | 28 | Exhibit # added; employee name deleted for simplicity |
| 31 | 29 | Exhibit # added |
| 32 | 30 | |
| 33 | 31 | Exhibit # added; "contractors" changed to "consultants" to meet Defendant's objection |
| 34 | 32 | Exhibit # added; language quoting Boyer's deposition changed to conform to |

|  |  | Defendant's objection |
|---|---|---|
| 37 | 35 | Exhibit # added |
| 38 | 36 | Exhibit # added; language revised to meet what Defendant admitted |
| 39 | 38 | Exhibit # added |
| 40 | 39 | Exhibit # added; language revised to meet what Defendant admitted |
| 44 | 44 | Bates stamp identification omitted; exhibit # reference rephrased |
| 47 | 47 | |
| 48 | 48 | Updated from dated of answers to RFAs to date of trial |
| 50 | 51 | Language amended to meet what Defendant admitted |
| 52 | 55 | |
| 53 | 56 | Language amended to meet what Defendant admitted |
| 54 | 57 | |
| 55 | 58 | Exhibit number added to replace "Exhibit A to these Requests" |
| 57 | 60 | |
| 58 | 61 | |
| 61 | 62 | Exhibit # added |
| 62 | 63 | "to the deposition of Harry Dorcus" omitted |
| 63 | 64 | Language amended to meet what Defendant admitted |
| 64 | 67 | Exhibit # replaces Bates stamp number |
| 69 | 68 | Exhibit # added |
| 72 | 69 | Exhibit # added |
| 73 | 70 | |
| 74 | 71 | Exhibit # added |
| 75 | 72 | Bates stamp omitted; "to the Lear depositon" omitted |
| 76 | 73 | Exhibit # corrected to meet Defendant's objection |
| 77 | 74 | Exhibit # added; Bates stamp # and "to the Dorcus deposition" omitted |
| 78 | 75 | Stipulation offered in hopes that Defendant would have completed its promised research |
| 79 | 76 | "to the Cooper deposition" omitted; other language narrowed to meet Defendant's objections |
| 80 | 77 | "to the Cooper deposition" omitted; "some |

| | | |
|---|---|---|
| | | of' added to meet Defendant's objection |
| 81 | 78 | |
| 88 | 83 | Exhibit # added |
| 89 | 84 | "to the Dorcus deposition" omitted |
| 93 | 88 | Identifies as Exhibit 83 the agreement referenced in request no. 93 |
| 94 | 89 | |
| 96 | 91 | Identifies as Exhibit 82 the agreement referenced in request no. 96 |
| 99 | 95 | |
| 101 | 96 | |
| 102 | 97 | Exhibit #s added |
| 103 | 98 | Stipulation offered in hopes that Defendant would have completed its promised research |
| 105 | 100 | |
| 107 | 101 | Exhibit # added |

## EXHIBIT A AND D TO PLAINTIFF'S IN LIMINE MOTION SEEPING RULING ON ADMISSIBILITY OF DEFENDANT'S ADMISSIONS

### EXHIBIT A
### (COUNTERPART'S RESPONSES TO RFAa)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAY W. COOPER                          )
                                       )
        Plaintiff              )
                                       )
v.                                     )      Civil No. 1:05-cv-01598-RMC
                                       )
COUNTERPART INTERNATIONAL              )
                                       )
        Defendant.             )
                                       )

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S REQUEST FOR ADMISSIONS

Defendant Counterpart International ("Counterpart") responds to plaintiff's request for admissions as follows:

### General Objections and Responses

1.     Counterpart has made good faith efforts to respond to plaintiff's requests for admissions. Counterpart reserves the right to supplement these responses.

2.     Counterpart objects to plaintiff's requests for admissions to the extent they seek the disclosure of information and communications protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity.

3.     Counterpart objects to plaintiff's requests for admissions to the extent they seek private, privileged and confidential commercial and/or proprietary business information.

4.     Counterpart objects to the instructions and definitions contained in plaintiff's requests for admissions to the extent they impose obligations greater than those

required by the Federal Rules or the Local Rules of the U.S. District Court for the District of Columbia.

## Specific Objections and Responses

**REQUEST NO. 1:** Documents bearing Bates stamp numbers CP0001 through CP1073, CP1346 through CP2466 and CIC1470 through CIC1524 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 2:** Documents bearing Bates stamp numbers CP1074 through CP1345 are incomplete financial records of Counterpart, which Counterpart has agreed to replace with true, accurate and complete records as created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that documents bearing Bates stamp numbers CP1074 through CP1345 are Counterpart financial records maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rule of Evidence, a portion of which were inadvertently cut off in the copying process. Counterpart further admits it has agreed to produce complete copies of said financial

records including the portions that were inadvertently cut off in the copying process. Counterpart denies the remainder of Request No. 2.

**REQUEST NO. 3:** Documents bearing Bates stamp numbers 49-61, 64-98, 108, 112-15, 221-260, 266-86, 295-98 and 3457 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits documents bearing Bates stamp numbers 49-61, 65-68, 75-76, 78-89, 92, 96-98, 221-223, 225-227, 229, 231-233, 241-243, 247-248, 251-260 and 284-286 are true, accurate and complete photographic copies of records created or maintained by Counterpart in the course of its regularly conducted business activity within the meaning of Rule 803(6) of the Federal Rules of Evidence.  Counterpart denies the remainder of the allegations in Request No. 3.

**REQUEST NO. 4:** Documents bearing Bates stamp numbers CP1490 through CP2466 are true, accurate and complete photographic copies of the files that Kelli Boyer found in Jay Cooper's office after his termination that she characterized as "secret files" at pages 93-103 of her deposition.

**RESPONSE:**  Counterpart objects to Request No. 4 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 4.

**REQUEST NO. 5:** The "secret files" are comprised of files on fourteen individuals and one file labeled "computer consultants" concerning a local firm.

**RESPONSE:** Counterpart objects to Request No. 5 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits that documents Kelli Boyer characterized as "secret files" during her deposition are comprised of files on fourteen individuals and one file labeled "computer contractors" (not "computer consultants").

**REQUEST NO. 6:** Jay Cooper at one time or another was charged with the supervision of each of the fourteen individuals for whom a "secret file" was found, with the exception of Michael Kunz.

**RESPONSE:** Counterpart objects to Request No. 6 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 6, except that Counterpart is still in the process of confirming if Jay Cooper was ever charged with the supervision of Natalia (Natasha) Bougaets.

**REQUEST NO. 7:** With the exception of the file on Michael Kunz, the "secret files" are comprised of the sort of documents routinely kept by a manager about the people he supervises, such as contracts of employment or consulting agreements, job descriptions or documents setting of the scope of work of consultants, resumes, performance evaluations and self-evaluations, periodic progress reports against objectives, and routine emails asking for and sharing information.

**RESPONSE:** Counterpart objects to the term "the sort of documents routinely kept by a manager" as vague and ambiguous. Counterpart further objects to Request No. 7 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 7.

**REQUEST NO. 8:** The "secret files" on nine of these fourteen individuals (Anika Ayrapetyants, Yazgylych Charyev, Natalia (Natasha) Bougaets, Gavin Helf, Rosalie Yasquez-Yetter, Roberta Talmage, Bob Abma, Ara Nazinyan and Erkin Kasybekov) and the computer consultants file contain employment or consultancy agreements.

**RESPONSE:** Counterpart objects to Request No. 8 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."   Counterpart admits the remainder of the allegations in Request No. 8.

**REQUEST NO. 9:** The "secret files" on nine of these fourteen individuals (Kim Alter, Soroush Javadi-Matlagh, Yazgylych Charyev, Natalia (Natasha) Bougaets, Gavin Helf, Roberta Talmage, Bob Abma, Ara Nazinyan and Erkin Kasybekov) contain job descriptions and/or documents setting out the Scope of Work expected in connection with a consultant arrangement.

**RESPONSE:** Counterpart objects to Request No. 9 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 9.

**REQUEST NO. 10:** The "secret files" on six of these individuals contain job performance appraisals completed by Jay Cooper and/or self appraisals by that individual.

**RESPONSE:** Counterpart objects to Request No. 10 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 10.

**REQUEST NO. 11:** The "secret files" on two of these individuals (Randall Olson and Rosalie Vasquez-Yetter) contain emails and memos concerning the

employment failings of these two individuals and various options to improve that performance or terminate their employment.

**RESPONSE:**  Counterpart objects to Request No. 11 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Counterpart further objects to the terms "employment failings" and "various options to improve" as vague and ambiguous.  Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files."  Counterpart admits the remainder of the allegations in Request No. 11.

**REQUEST NO. 12:** Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director of Turkmenistan in the Fall of 2001 upon instructions from Arlene and Lelei Lelaulu after her husband created a public scene offensive to a US government official based in that country.

**RESPONSE:**  Counterpart objects to Request No. 12 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director of Turkmenistan in the Fall of 2001 upon instructions from Arlene Lear. Counterpart denies the remainder of the allegations in Request No. 12.

**REQUEST NO. 13:** Jay Cooper demoted Randall Olson from his position as Country Director of Tajikistan due to poor performance with the concurrence of Arlene Lear. That poor performance is documented in emails, memos, notes, comments on monthly reports and the performance reviews contained in the file on him.

**RESPONSE:** Counterpart objects to Request No. 13 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 14:** The "secret file" on Kim Alter contains lengthy memoranda by Kim Alter concerning her goals and objectives and progress, the ownership of her work product, and her discontent with attempts to supervise her work.

**RESPONSE:** Counterpart objects to Request No. 14 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term "lengthy memoranda" as vague and ambiguous. Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 14.

**REQUEST NO. 15:** Kim Alter resigned from employment with Counterpart in 2004.

**RESPONSE:** Counterpart objects to Request No. 15 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 16:** Counterpart was dissatisfied with Kim Alter's relationships with her supervisors by the time she resigned.

**RESPONSE:** Counterpart objects to Request No. 16 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 17:** In 2003, Cooper, as Chief of Party for CSSI and HNCBI, had responsibility for Counterpart's office in Uzbekistan during a period when that operation acted as a sub-contractor to an organization named CHF International in the

running of a program known as CAIP (Community Action Investment Program). During

that period, Michael Kunz served as the Deputy Chief of Party working for Counterpart,

while the Director of the CAIP project worked for CHF. Kunz was based in the CHF

office in Tashkent. During the CAIP project, Counterpart's Uzbekistan staff sent several

written complaints (and also complained orally) to Cooper about Kunz' behavior.

**RESPONSE:** Counterpart objects to Request No. 17 on the grounds that it seeks

information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as

follows:

Counterpart denies that during the CAIP project, Counterpart's Uzbekistan staff

sent "several" written complaints to Cooper about Kunz' behavior. Counterpart lacks

sufficient information to either admit or deny Counterpart's Uzbekistan staff "complained

orally" to Cooper about Kunz' behavior. Counterpart admits the remaining allegations in

Request No. 17.

**REQUEST NO. 18:** Documents bearing Bates stamp numbers CP1889-1893 and

CP1898-1905 (contained in the "secret file" for Michael Kunz) are examples of the

written complaints Jay Cooper received from his staff in Uzbekistan.

**RESPONSE:** Counterpart objects to Request No. 18 on the grounds that it seeks

information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as

follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart is unable to deny or admit the remaining allegations in Request No. 18 because it has no way of knowing whether the documents referenced in Request No. 18 constitute "examples of the written complaints Jay Cooper received from his staff in Uzbekistan."

**REQUEST NO. 19:** The documents referred to in the preceding paragraph (with different Bates stamp numbers) were marked as Exhibit 33 (bearing Bates stamp number 49-51) and Exhibit 34 (bearing Bates stamp number 52-60) to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 19 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied. The documents referred to in the proceeding paragraph, though similar to those marked as Exhibits 33 and 34 to the Lear deposition, also include unidentified handwritten notations.

**REQUEST NO. 20:** Cooper sent the document bearing Bates stamp number 251 to Arlene Lear on April 8, 2003, with a copy of the document now marked as Exhibit 34 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 20 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 21:** The "secret file" on Michael Kunz also contains documents bearing Bates stamp numbers CP1895-96 (concerning a traffic accident in Uzbekistan), CP1897 (concerning the accident and Kunz' complaints about a Counterpart employee named Azam), and CP1906-07 (Cooper's handwritten notes of a conversation with Azam in which Azam complains about Kunz).

**RESPONSE:** Counterpart objects to Request No. 21 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 21.

**REQUEST NO. 22:** There are no other documents in the "secret file" on Michael Kunz other than those described in paragraphs 18 and 21.

**RESPONSE:** Counterpart objects to Request No. 22 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 22.

**REQUEST NO. 23:** Of the 15 employees and consultants about whom a "secret file" was found, only eight (Michael Kunz, Randall Olson, Gavin Helf, Rosalie Vasquez-Yetter, Roberta Talmage, Bob Abma, Maura Corkery and Kim Alter) were ex-pats (Americans living abroad).

**RESPONSE:** Counterpart objects to Request No. 23 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 23, except Counterpart is still in the process of confirming the status of Natalia (Natasha) Bougaets.

**REQUEST NO. 24:** No "secret file" on Arlene Lear was discovered among the other "secret files" found by Kelli Boyer in Jay Cooper's office after his termination.

**RESPONSE:** Counterpart objects to Request No. 24 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 24.

**REQUEST NO. 25:** Only two of the "secret files" (Rosalie Vasquez-Yetter and Randall Olson) contain any handwritten memos of conversations between Jay and whatever person's file it was in.

**RESPONSE:** Counterpart objects to Request No. 25 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "whatever person's file it was in" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 25.

**REQUEST NO. 26:** Only one of the "secret files" (Randall Olson) contain any non-handwritten memos of conversations between Jay and whatever person's file it was in.

**RESPONSE:** Counterpart objects to Request No. 26 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "whatever person's file it was in" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 26.

**REQUEST NO. 27:** The "secret files" concerning two individuals (Anika Ayrapetyants and Roberta Talmage) contain only materials relevant to brief projects for which they were hired as consultants.

**RESPONSE:** Counterpart objects to Request No. 27 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "materials relevant to brief projects for which they were hired" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 27.

**REQUEST NO. 28:** The "secret file" of Maura Corkery contains only one sheet of paper, a memo from her asking about time sheets.

**RESPONSE:** Counterpart objects to Request No. 28 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 28.

**REQUEST NO. 29:** Maura Corkery was retained briefly on a consulting basis to serve as an advisor to the Country Director in Tajikistan.

**RESPONSE:** Counterpart objects to Request No. 29 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 30:** The "secret file" on Anika Ayrapetyants contains only a consulting agreement.

**RESPONSE:** Counterpart objects to Request No. 30 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remaining allegations in Request No. 30.

**REQUEST NO. 31:** The "secret file" on Yazgylych Charyev contains a lengthy report by a management consultant brought in by Cooper to improve Charyev's performance. Charyev remained as Counterpart's Country Director in Uzbekistan at the time of Cooper's termination.

**RESPONSE:** Counterpart objects to Request No. 31 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term Counterpart objects to the term "lengthy report" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it

characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the remainder of the allegations in Request No. 31.

**REQUEST NO. 32:** Erkin Kasybekov remained as Counterpart's Country Director in Krygyzstan at the time of Cooper's termination.

**RESPONSE:** Counterpart objects to Request No. 32 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 33:** The "secret file" labeled "computer consultants" contains a contract with a local firm to supply consulting services, a list of overtime hours for which the consultants sought reimbursement and an analysis by one of the accountants of documentation.

**RESPONSE:** Counterpart objects to Request No. 33 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart

admits the remaining allegations pertaining to the file labeled "computer contractors" (not "computer consultants") in Request No. 33.

**REQUEST NO. 34:** With only the possible exception of the file on Michael Kunz, none of the documents contained in any of the "secret files" can fairly be construed to "maybe harm the person maybe at a later date."

**RESPONSE:** Counterpart objects to Request No. 34 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the phrase "can be fairly construed" as vague and ambiguous. Subject to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits that during her deposition Kelli Boyer testified that she believed the documents she identified as "secret files" were "designed to maybe harm the person maybe at a later date." Counterpart denies the remaining allegations in Request No. 34.

**REQUEST NO. 35:** Arlene Lear prepared and signed the Performance Review bearing Bates stamp numbers CP82-90 which is Exhibit 9 to the Lear deposition on or before March 19, 2002.

**RESPONSE:** Counterpart objects to Request No. 35 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 36:** Arlene Lear sent the Performance Review bearing Bates stamp numbers CP82-90 which is Exhibit 9 to the Lear deposition to Counterpart's Human Resources Department on March 19, 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 37:** The document bearing Bates stamp numbers CIC 1470-73 is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 53-56.

**RESPONSE:** Counterpart objects to Request No. 37 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 38:** Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73 before preparing the Performance Review that bears Bates stamp numbers CP82-90 and is Exhibit 9 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 38 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73. Counterpart denies the remaining allegations in Request No. 38.

**REQUEST NO. 39:** The document bearing Bates stamp numbers CIC1474-1524 is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 81-83.

**RESPONSE:** Counterpart objects to Request No. 39 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 40:** Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1474-1524 before preparing the Performance Review that bears Bates stamp numbers CP82-90 and is Exhibit 9 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 40 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document bearing Bates stamp numbers CIC1470-73. Counterpart denies the remaining allegations in Request No. 40.

**REQUEST NO. 41:** The document bearing Bates stamp numbers 91-92 and is marked as Exhibit 14 to the Lear deposition is a true, correct and complete photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Cooper prepared, and Arlene Lear received, the document bearing Bates stamp numbers 91-92. Counterpart can neither admit nor deny the remaining allegations in Request 41 because Counterpart does not have any records that indicate, and Arlene Lear does not recall, when Lear received the document.

**REQUEST NO. 42:** Arlene Lear received and reviewed the document referenced in the preceding paragraph before March 18, 2002.

**RESPONSE:** Counterpart objects to Request No. 36 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Arlene Lear received and reviewed the document referenced in the preceding paragraph. Counterpart can neither admit nor deny the remaining allegations in Request 42 because Counterpart does not have any records that indicate, and Arlene Lear does not recall, when Lear received and reviewed the document.

**REQUEST NO. 43:** The document referenced in paragraph 41 was also received in Counterpart's Human Resources Department in March of 2002.

**RESPONSE:** Counterpart objects to Request No. 43 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the HR Department received the document referenced in paragraph 41. Counterpart can neither admit nor deny the remaining allegations in Request 43 because Counterpart does not have any records that indicate when the HR Department received the document.

**REQUEST NO. 44:** The document bearing Bates stamp numbers CP82-83 that is Exhibit 13 to the Lear deposition is a true and correct photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002.

**RESPONSE:** Counterpart objects to Request No. 44 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 45:** The document referenced in the previous paragraph was attached to an email from Arlene Lear to Kate Gottschal (forwarding an email from Cooper to Arlene Lear) that bears Bates stamp number 81 and is Exhibit 10 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 45 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 46:** Counterpart has published no whistleblower protection policy to its employees at any time after August of 2004.

**RESPONSE:** Counterpart objects to Request No. 46 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 47:** Counterpart has published no whistleblower protection policy to its employees at the time of Jay Cooper's termination on November 12, 2004.

**RESPONSE:** Counterpart objects to Request No. 47 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO 48:** As of the date of these Requests for Admissions, Counterpart has failed to produce any written Counterpart whistleblower protection policy.

**RESPONSE:** Counterpart objects to Request No. 48 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 49:** Kelli Boyer's email on the page that bears the Bates stamp number 230 and is on the first page of Exhibit 37 to the Lear deposition is the first time Counterpart announced to its employees that its Grievance Policy had been rescinded.

**RESPONSE:** Counterpart objects to Request No. 49 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 50:** At a meeting of Counterpart's Senior Management Team held on October 26, 2004, it was announced that two members of Counterpart's Program Management Team were revising the company's Open Door Policy to include greater specificity, which was lost when the Grievance Policy was rescinded.

**RESPONSE:** Counterpart objects to Request No. 50 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that at a meeting of Counterpart's Senior Management Team held on October 26, 2004, it was announced that two members of Counterpart's Program Management Team were revising the company's Open Door Policy. Counterpart denies the remaining allegations in Request No. 50.

**REQUEST NO. 51:** As of the date of these Requests for Admissions, Counterpart has failed to produce any revision of Counterpart's Open Door Policy that modifies that policy as set forth in Exhibit 7 to the Lear deposition.

**RESPONSE:** Counterpart objects to Request No. 51 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the terms "revision" and "modifies" as vague and ambiguous. Subject

to these objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it has not produced documentation which rescinds, and therefore revises and modifies, the Open Door Policy set forth in Exhibit 7 to the Lear deposition.

**REQUEST NO. 52:** Jay Cooper hired Gavin Helf as a consultant to provide guidance and management support to Yazgylych Charyev, Counterpart's Country Director for Turkmenistan, on two occasions, once for a three-month period in 2003 and again for a three-week period in 2004.

**RESPONSE:** Counterpart objects to Request No. 52 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 53:** The documents bearing the Bates stamp numbers 2009 and 2010 are contained in the "secret files" on Gavin Helf and are true and correct photographic copies of an exchange of correspondence between Cooper and Mr. Helf concerning the scope of work to be performed by Mr. Helf on his second visit, as well as the reasons why that second consultancy was warranted.

**RESPONSE:** Counterpart objects to Request No. 53 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that during her deposition, Kelli Boyer characterized documents found in Cooper's Almaty office as "secret files" but denies that it characterizes, or has ever characterized, said documents as "secret files." Counterpart admits the document bearing the Bates stamp number 2010 is a true and correct photographic copy of an exchange of correspondence between Cooper and Mr. Helf, concerning the scope of work to be performed by Mr. Helf on his second visit, as well as the reasons why that second consultancy was warranted. Counterpart is unable to admit or deny the remainder of the allegations in Request No. 53 with regarding to the document bearing the Bates stamp number 2009 because there is no indication on the document itself that it is a copy of any exchange of correspondence.

**REQUEST NO. 54:** Arlene Lear approved hiring Mr. Helf for the purposes described in Request No. 52 and in the documents referenced in Request No. 53.

**RESPONSE:** Counterpart objects to Request No. 54 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 55:** Sometime after December 31, 2005, Counterpart prepared and submitted to USAID a Final Program Report on one of the programs Jay Cooper had managed between January 1, 2003 and the date of his termination, the HNCBI, which had

been operated in five countries in Central Asia.  A true and correct photographic copy of that report, minus its attachments, is Exhibit A to these Requests.

**RESPONSE:**  Counterpart objects to Request No. 55 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 56:** In its Final Program Report on the HNCBI, Counterpart concluded:  "Despite challenging operating environments in some of the countries, the program has proved to be resilient and extremely successful in terms of outreach and producing significant health impact at the community level . . . . It has by far exceeded the target indicators under each of the objectives . . . ."

**RESPONSE:**  Counterpart objects to Request No. 56 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the text of the Final Program Report on the HNCBI, attached as Exhibit A to these Requests, speaks for itself and is accurately quoted herein.

**REQUEST NO. 57:** In August of 2004, Don Feil held the position of Vice President (Small Business Development) with Counterpart.

**RESPONSE:**  Counterpart objects to Request No. 57 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 58:** In August of 2004, Harry Dorcus held the position of Vice President and Chief Financial Officer with Counterpart.

**RESPONSE:**  Counterpart objects to Request No. 58 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 59:** Lelei LeLaulu does not weigh 350 pounds.

**RESPONSE:**  Counterpart objects to Request No. 59 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 60:** Arlene Lear does not weigh 350 pounds.

**RESPONSE:** Counterpart objects to Request No. 60 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 61:** Exhibit B is a true, accurate and correct photographic copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2004 to September 30, 2005.

**RESPONSE:** Counterpart objects to Request No. 61 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO 62:** The document marked as Exhibit 49 to the deposition of Harry Dorcus is a true and correct photographic copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2003 to September 30, 2004, with the sole exception of a blacked out portion of page 6.

**RESPONSE:** Counterpart objects to Request No. 62 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document marked as Exhibit 49 to the deposition of Harry Dorcus appears to be a copy of Form 990, Return of Organization Exempt from Income Tax (with attachments) filed with the IRS by Counterpart, covering Counterpart's activities from October 1, 2003 to September 30, 2004, with the sole exception of a blacked out portion of page 6.

**REQUEST NO. 63:** The document bearing Bates stamp numbers CP852 through 972 is a true, accurate and complete copy of a Mid-Term Evaluation Report on CSSI, prepared for Counterpart, dated May 11, 2005 and is the Mid-Term Evaluation Report referred to by Christopher Szscsey in his deposition in this case taken on September 6, 2006.

**RESPONSE:** Counterpart objects to Request No. 63 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp numbers CP852-CP972 is a true, accurate and complete copy of a Mid-Term Evaluation Report on CSSI, prepared for Counterpart, dated May 11, 2005. Counterpart can neither admit nor deny the remaining allegations in Request No. 63 because Counterpart's counsel had no way to

verify what documents were being viewed by Christopher Szscsey when he referred to documents he was viewing during his telephone deposition.

**REQUEST NO. 64:** The document bearing Bates stamp numbers 282-83 is a true and correct photographic copy of an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004.

**RESPONSE:** Counterpart objects to Request No. 64 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp numbers 282-83 appears to be an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004. Counterpart denies the remaining allegations in Request No. 64.

**REQUEST NO. 65:** The reference in the document described in the preceding paragraph to deficits in "HQ" refers to spending of dollars from the CSSI and NHCBI programs as direct program costs by Counterpart employees based in Counterpart's headquarters in Washington, D.C.

**RESPONSE:** Counterpart objects to Request No. 65 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 66:** The reference in the document described in paragraph 64 to deficits in "The Regional Office" refers to spending of dollars from the CSSI and NHCBI programs as direct program costs on items such as the salaries, fringe benefits, and travel of Cooper, Bob Abma, Michael Kunz and several other Almaty-based Counterpart employees.

**RESPONSE:** Counterpart objects to Request No. 66 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 67:** Bob Abma suggests in the document described in paragraph 64 above that funds from the NHCBI project be used for CSSI projects and for other projects in countries where CSSI had no projects.

**RESPONSE:** Counterpart objects to Request No. 67 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 68:** Bob Abma suggests in the document described in paragraph 64 above that NHCBI project funds be used for other projects in the Regional Office.

**RESPONSE:** Counterpart objects to Request No. 68 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 69:** As the document bearing Bates stamp number 3452 indicates, on September 24, 2004, Michael Kunz sent an email to Cooper thanking him for "today's meeting" which he (Kunz) described as "really productive."

**RESPONSE:** Counterpart objects to Request No. 69 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 70:** The document bearing Bates stamp number 3452 is a true and correct photographic copy of an email from Michael Kunz to Cooper dated September 24, 2004.

**RESPONSE:** Counterpart objects to Request No. 70 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 71:** Irina Kolmakova, the HR and Administrative Manager of Counterpart's office in Almaty, Kazakstan, received an email from Michael Kunz on or before October 6, 2004, requesting that Jay Cooper and Bob Abma prepare an agenda of the major topics they would like to cover at the Monday staff meeting by close of business on the previous Thursday and stating that he is not going to participate in those meetings until topics are up for discussion that may be of interest to him.

**RESPONSE:** Counterpart objects to Request No. 71 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits that on October 6, 2004, Kolmakova sent an e-mail to Cooper and Abma that stated "Michael wrote that he is not going to participate in our meetings until we discuss topics that may be of interest for him." Counterpart lacks sufficient information and knowledge to admit or deny the remaining allegations in Request No. 71.

**REQUEST NO. 72:** The document bearing Bates stamp number 3457 is a true and correct photographic copy of an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004.

**RESPONSE:** Counterpart objects to Request No. 72 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 3457 appears to be an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004. Counterpart denies the remaining allegations in Request No. 72.

**REQUEST NO. 73:** Irina Kolmakova was Counterpart's HR and Administrative Manager in its Almaty office in 2004, with supervisory responsibility for the receptionist, the drivers and the security guards that worked out of that office.

**RESPONSE:** Counterpart objects to Request No. 73 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 74:** The document bearing Bates stamp number 3453-56 is a true and correct photographic copy of email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings.

**RESPONSE:** Counterpart objects to Request No. 74 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Countepart admits the document bearing Bates stamp number 3453-56 appears to be email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings. Counterpart denies the remaining allegations in Request No. 74.

**REQUEST NO. 75:** The document bearing Bates stamp number 284, which is Exhibit 23 to the Lear deposition, is a true and correct photographic copy of an email written by Michael Kunz to Cooper and Yazgylych Charyev on October 6, 2004.

**RESPONSE:** Counterpart objects to Request No. 75 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 76:** The document bearing Bates stamp number 230-32, which is Exhibit 32 to the Lear deposition, is (with the exception of the email forwarding notice from Cooper to Pat Douglass on the top of page 230) a true and correct photographic copy of an email sent to Counterpart's Headquarters Staff from its Human Resources Department on October 6, 2004.

**RESPONSE:** Counterpart objects to Request No. 76 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies the document bearing Bates stamp number 230-32 is Exhibit 32 to the Lear deposition. Counterpart admits the remaining allegations in Request No. 37.

**REQUEST NO. 77:** The document bearing Bates stamp number 69-73, which is Exhibit 46 to the Dorcus deposition, is a true and correct photographic copy of an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet.

**RESPONSE:** Counterpart objects to Request No. 77 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 69-73, which is Exhibit 46 to the Dorcus deposition, appears to be an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet. Counterpart denies the remaining allegations in Request No. 77.

**REQUEST NO. 78:** The reference to "Eurasia Regional" on the spreadsheet attached to Dorcus Exhibit 46 is to a fund designed to support efforts by Michael Kunz to travel to Armenia and other countries in an attempt to procure new programs for Counterpart, as well as travel by Bob Abma to Iraq, Turkey and perhaps Afghanistan on short-term assignments for Counterpart including training sessions.

**RESPONSE:** Counterpart objects to Request No. 78 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not

reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

At this time, Counterpart lacks sufficient information to admit or deny the allegations in Request No. 78. Counterpart is in the process of researching the information to respond to this Request and will supplement its response as soon as possible.

**REQUEST NO. 79:** The document bearing Bates stamp number CP 21-23 that is Exhibit 17 to the Cooper deposition is a true, correct and complete copy of a resume that accurately sets out the responsibilities that Michael Kunz had in his position as Counterpart's Regional Director for Counterpart's Civil Society Division in Eurasia, the Middle East and South East Asia as of September 1, 2004.

**RESPONSE:** Counterpart objects to Request No. 79 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number CP21-23 that is Exhibit 17 to the Cooper deposition is a job description for Michael Kunz's position as Regional Director of Counterpart's Civil Society Division in Eurasia, the Middle East and South East Asia as of September 1, 2004. Counterpart denies the remaining allegations in Request No. 79.

**REQUEST NO. 80:** Exhibit 17 to the Cooper deposition describes Michael Kunz' responsibilities as of September 1, 2004 as overseeing current programs in Armenia, Bulgaria and Vietnam.

**RESPONSE:** Counterpart objects to Request No. 80 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Exhibit 17 to the Cooper deposition describes some of Michael Kunz' responsibilities as of September 1, 2004, including overseeing current programs in Armenia, Bulgaria and Vietnam.

**REQUEST NO. 81:** In the Fall of 2004, Michael Kunz was cultivating new program opportunities in the Central Asia Region, including those in countries in which Counterpart had no existing programs such as Armenia.

**RESPONSE:** Counterpart objects to Request No. 81 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 82:** In October of 2004, Bob Abma held the position of Counterpart's Regional Finance Director for the Central Asian Region, with

responsibility for financial matters in various existing and proposed projects outside the five countries in which the programs managed by Cooper operated.

**RESPONSE:** Counterpart objects to Request No. 82 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 83:** During 2004, Bob Abma traveled extensively, purportedly on Counterpart business. Among the countries he visited were Armenia, Iraq and Turkey on training missions; he also traveled to Tajikistan to perform services on a Counterpart agricultural projects.

**RESPONSE:** Counterpart objects to Request No. 83 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits during 2004, Bob Abma traveled on Counterpart business, including to Armenia and Iraq. Counterpart denies the remaining allegations in Request No. 83.

**REQUEST NO. 84:** Counterpart's vision for Bob Abma is that he would live in Central Asia but travel all over that part of the world as a consultant to perform services in connection with various Counterpart programs and proposals.

**RESPONSE:** Counterpart objects to Request No. 84 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 85:** Before October 8, 2004, Bob Abma and Michael Kunz proposed a budget that allocated to the CSSI project and the NHCBI project a portion of salary costs for a new assistant to support Michael Kunz in the activities described in the paragraphs 78 through 81.

**RESPONSE:** Counterpart objects to Request No. 85 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 86:** Cooper expressed to Bob Abma and Michael Kunz his objections to the use of funds from the CSSI and HNCBI projects to fund the proposed salary described in the previous paragraph as well as the travel by Kunz and Abma designed to develop new programs unrelated to the mission of CSSI and NHCBI.

**RESPONSE:** Counterpart objects to Request No. 86 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits Jay Cooper stated in an e-mail to Bob Abma and Michael Kunz that he did "not agree to approve funds from CSSI or HNCBI to be used for anything other than those projects." Counterpart denies the remaining allegations in Request No. 86.

**REQUEST NO. 87:** None of the activities described in paragraphs 78 through 84 fell within the program parameters of CSSI or NHCBI.

**RESPONSE:** Counterpart objects to Request No. 87 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 88:** The document bearing Bates stamp number 285 is a true, accurate and complete photographic copy of an email Cooper sent Bob Abma and Michael Kunz in response to Exhibit 46 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 88 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 285 appears to be an email Cooper sent Bob Abma and Michael Kunz in response to Exhibit 46 to the Dorcus deposition.  Counterpart denies the remaining allegations in Request No. 88.

**REQUEST NO. 89:** The document bearing Bates stamp number 74, which is Exhibit 45 to the Dorcus deposition, was received by Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on October 21, 2004.

**RESPONSE:** Counterpart objects to Request No. 89 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document bearing Bates stamp number 74 includes what appears to be an e-mail send from Jay Cooper to Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on October 21, 2004.  Counterpart denies the remaining allegations in Request No. 89.

**REQUEST NO. 90:** Counterpart never assigned the full time financial person to track closely all the costs for the CSSI and NHCBI projects, as had been requested by Cooper in Exhibit 45 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 90 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it never assigned a full time financial person to track closely all the costs for the CSSI and NHCBI projects. Counterpart admits the remaining allegations in Request No. 90.

**REQUEST NO. 91:** At no time before Cooper's termination on November 12, 2004, did Counterpart assign the full time financial person to track closely all the costs for the CSSI and NHCBI projects, as had been requested by Cooper in Exhibit 45 to the Dorcus deposition.

**RESPONSE:** Counterpart objects to Request No. 91 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart denies it never assigned a full time financial person to track closely all the costs for the CSSI and NHCBI projects prior to Cooper's termination on November 12, 2004. Counterpart admits the remaining allegations in Request No. 91.

**REQUEST NO. 92:** Counterpart entered into an agreement with its former Chief Operating Officer Greg Touma in connection with his resignation from Counterpart's employment under the terms of which he is not allowed to discuss events surrounding his employment with Counterpart or its termination.

**RESPONSE:** Counterpart objects to Request No. 92 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this

objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 93:** Counterpart has refused to waive the confidentiality provision in its agreement with Greg Touma to allow him to give information or testimony in this case.

**RESPONSE:** Counterpart objects to Request No. 93 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it refused to waive the confidentiality provision of its agreement with Greg Touma.

**REQUEST NO. 94:** Aaron Chassey was terminated from his position as Director of Counterpart's Civil Society Program in the Spring of 2003. He was not locked out of his office following that termination.

**RESPONSE:** Counterpart objects to Request No. 94 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 95:** Counterpart entered into an agreement with Aaron Chassey, its former Director of Civil Society, in connection with the termination of his Counterpart employment, under the terms of which he is not allowed to discuss events surrounding his employment with Counterpart or its termination.

**RESPONSE:** Counterpart objects to Request No. 95 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it entered into an agreement with Aaron Chassey, its former Director of Civil Society, in connection with the termination of his Counterpart employment. Counterpart denies the remaining allegations in Request No. 95.

**REQUEST NO. 96:** Counterpart has refused to waive the confidentiality provision in its agreement with Aaron Chassey to allow him to give information or testimony in this case.

**RESPONSE:** Counterpart objects to Request No. 96 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits it has refused to waive the confidentiality provision in its agreement with Aaron Chassey.

**REQUEST NO. 97:** Counterpart used NICRA funds generated from grants from USAID to subsidize losses in its for-profit subsidiary Enviroventure.

**RESPONSE:** Counterpart objects to Request No. 97 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 98:** The document marked as Exhibit 41 to the Dorcus deposition is a true, correct and complete copy of OMB Circular A-122, Cost Principles for Non-Profit Organizations.

**RESPONSE:** Counterpart objects to Request No. 98 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Counterpart admits the document marked as Exhibit 41 to the Dorcus deposition is a true, correct and complete copy of a 75-page document available on the website: http://www.whitehouse.gov/omb/circulars/a122/print/a122html, entitled OMB Circular A-122, Cost Principles for Non-Profit Organizations.

**REQUEST NO. 99:** Counterpart investigated various allegations against Cooper made by Kim Alter and determined that they were without merit.

**RESPONSE:** Counterpart objects to Request No. 99 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term "various allegations" as vague and ambiguous. Subject to these objections and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 100:** Kelli Boyer's explanation for the reason why she found Kim Alter's allegations to be without merit on page 21-23 of her deposition demonstrates her unfamiliarity with basic principles of the law of sexual harassment.

**RESPONSE:** Counterpart objects to Request No. 100 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Subject to this objection and the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 101:** Counterpart did not credit allegations about Cooper made by Aaron Chassey, and such allegations played no role in Counterpart's decision to terminate Cooper.

**RESPONSE:** Counterpart objects to Request No. 101 on the grounds that it seeks information which is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence. Counterpart further objects to the term "allegations" as vague and ambiguous. Subject to these

objection and the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 102:** Counterpart has paid no reimbursement to Cooper for the business expenses for which reimbursement was requested in documents bearing Bates stamp numbers 89, 92, 96 and 98.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 103:** Accountants in Counterpart's Almaty office possessed records sufficient to verify the amounts reflected in the documents referenced in the previous paragraph.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

At this time, Counterpart lacks sufficient information to admit or deny the allegations in Request No. 103. Counterpart is in the process of researching the information to respond to this Request and will supplement its response as soon as possible.

**REQUEST NO. 104:** The documents bearing Bates stamp numbers 100-107 and 111 reflect expenses incurred by Cooper in returning himself and his possessions to his Home of Record from Central Asia after his termination.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Counterpart lacks sufficient knowledge to either admit or deny the allegations in Request No. 104.

**REQUEST NO. 105:** The documents bearing Bates stamp numbers 100-107 and 111 reflect reasonable expenses incurred by Cooper in returning himself and his household and personal effects to his Home of Record from Central Asia after his termination.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 106:** Counterpart has taken no steps to verify the reasonableness of the expenses reflected in the documents referred to in paragraph 104.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Denied.

**REQUEST NO. 107:** Counterpart has paid no reimbursement, in whole or in part, for the travel and shipping expenses reflected in the documents referred to in paragraph 104.

**RESPONSE:** Subject to the general objections and responses stated above, Counterpart responds as follows:

Admitted.

**REQUEST NO. 108:** It is a policy or practice of Counterpart not to reimburse outstanding business expenses or relocation costs for terminated employees unless they release Counterpart from all liabilities associated with the termination.

**RESPONSE:** Subject to the general objections and responses stated above,

Counterpart responds as follows:

Denied.

Respectfully submitted,

**JACKSON LEWIS LLP**


By: _____
Tyler A. Brown
(D.C. Bar No. 480693)
Kara M. Ariail
(D.C. Bar No. 46817)
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
(703) 821-2189
**Counsel for Defendant**

October 11, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 11, 2006, a copy of the foregoing

*Defendant's Response to Plaintiff's Request for Admissions* was served upon the

following via overnight delivery:

> Patricia D. Douglass
> 98 Interpromontory Rd.
> Great Falls, VA 222066
> Counsel for Plaintiff

_____

Kara M. Ariail

**EXHIBIT D**

**(EMAIL FROM Kara Arial, 7/13/08)**

**Subject:** RE: Joint Pretrial Statement and Accompanying Attachments
**From:** "Ariail, Kara M. \(DC\)" <AriailK@jacksonlewis.com>
**Date:** Sun, 13 Jul 2008 17:15:11 -0400
**To:** "Pat Douglass" <pdouglass@cox.net>

We went through them carefully, and there was nothing we were willing to
stipulate to.

-----Original Message-----
From: Pat Douglass [mailto:pdouglass@cox.net]
Sent: Sunday, July 13, 2008 5:13 PM
To: Ariail, Kara M. (DC)
Subject: Re: Joint Pretrial Statement and Accompanying Attachments

Kara: So far I've just looked over these materials quickly. What
happened to all the proposed stipulations I sent you? Pat

Ariail, Kara M. (DC) wrote:

> Pat,
>
> Attached please find our final draft Joint Pretrial Statement. _Please
>
> let me know if you have any changes or if we are approved to sign and
> initial on your behalf._ We will need to finalize this document no
> later than 10 a.m. tomorrow.
>
> Also attached please find the following for your review:
>
> - Att. 2: Defendant's Expected Witness List
>
> - Att. 4: Defendant's List of Exhibits
>
> - Att. 7: Voir Dire
>
> - Att. 8: Jury Instructions
>
> - Att 9c.: Reply brief (USAID regs compliance MIL)
>
> - Att 10c: Reply brief (Non-public communications MIL)
>
> - Att 15: Proposed stipulations: _please also let me know by 10 a.m.
> tomorrow if we are approved to sign and initial this document on your
> behalf. _
>
> - Att 17: Defendant's proposed verdict form __
>
> I will forward you the rest of our reply briefs, Atts. 11c, 12c, 13c,
> & 14c, as soon as they are finished tonight or early tomorrow morning.
>
> I did not attach Counterpart's motions in limine (Atts: 9a, 10a, 11a,
> 12a, 13a, 14a ) because you have already seen them and they require no
>
> further action on your part (I will still be forwarding you electronic
>
> and paper copies of these documents with the final pretrial
> statement).
>
> I did not attach the following documents prepared by you because we
> simply saved them as is upon receipt from you (I will still be
> forwarding you electronic and paper copies of these documents with the

final pretrial statement):

- Att. 1: Plaintiff's Witness List

- Att. 3: Plaintiff's List of Exhibits

- Atts. 5.a - 5.e: Plaintiff's designation of deposition transcripts

- Att. 6: Plaintiff's itemization of damages

- Atts. 9b, 10b, 11b, 12b, 13b, 14b : Plaintiff's opposition briefs to

defendant's motions in limine

- Att. 16: Plaintiff's proposed verdict form

Thanks, Kara

Kara M. Ariail

Attorney at Law

Jackson Lewis LLP

8614 Westwood Center Drive

Suite 950

Vienna, Virginia 22182

703.821.4305 | Direct

703.821.2267 | Fax

703.994.8866 | Cell //

ariailk@jacksonlewis.com <mailto:smithj@jacksonlewis.com>

www.jacksonlewis.com <http://www.jacksonlewis.com/>

*Representing management exclusively in workplace law and related litigation.*

*Confidentiality Note:* This e-mail, and any attachment to it, contains privileged and confidential information intended only for the

use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent

responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.