**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAY W. COOPER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1598 (RMC-JMF) |
| ) | |
| **COUNTERPART INTERNATIONAL,** ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OBJECTIONS TO THE ADMISSIBILITY OF CERTAIN OF DEFENDANT'S EXHIBITS**

Pursuant to L CvR 16.5 (b), Plaintiff Jay Cooper, through counsel, objects to the admissibility of four Exhibits listed on Defendant's list of Trial Exhibits.

As to two of the Exhibits (Exhibits 3 and 4), Counterpart has admitted that the information contained in both exhibits that we challenge were rejected by the company and were not considered in connection with Cooper's ouster. The exhibits are thus irrelevant to any issue. Although the "facts" reported in each were disbelieved by the woman who terminated Cooper, both documents contain unsavory allegations about Cooper. As such they can only be offered to inject unfair prejudice into this case. In addition, since their authors are not among the witnesses to be called to trial, the "facts" therein are not subject to cross-examination. Defendant's Exhibits 3 and 4 should be denied admission.

Plaintiff also objects to the completeness of two Exhibits (Exhibits 9 and 12) and asks that the attachments to each be included with the exhibit.

1.  **Defendant's Exhibit 3:**

Defendant's Exhibit 3 is a Memorandum entitled "Central Asia Regional Office Issues," dated March 5, 2003 from Aaron Chassy, Director of Counterpart's Civil Society Program to Arlene Lear, Senior Vice President. In it Mr. Chassy discusses his observations of the nature and causes of conflicts between Jay Cooper, Bob Abma and Ara Nazinian, as well as his efforts to defuse those tensions.

**Plaintiff's Objection to the Admissibility of Defendant's Exhibit 3:**

Plaintiff objects to the admissibility of Defendant's Exhibit 3 because Counterpart has admitted, clearly and without reservation, that that document has absolutely no relevance to the issues in this case, the reasons for Counterpart's termination of Cooper. Defendant's Exhibit 3 (then labeled Plaintiff's Exhibit 18) was discussed at the Rule 30(b)(6) deposition of Defendant Counterpart. Arlene Lear was the designated corporate representative. Arlene Lear is the person who terminated Cooper. The testimony went as follows:[1]

Q: Who was Aaron Chassey?

A: He was – he was a former director for civil society programs in the civil society division.

Q: Is that position equal in rank to Jay's position as chief of party and regional director?

A: I think I would say it's somewhat parallel.

Q: And Aaron Chassey reported directly to you?

---

[1] At the time of the testimony quoted in this pleading, Lear was testifying as the corporate representative on the following subject:
"**SUBJECT NO. 16:** Each and every action taken by Counterpart or any agent of Counterpart to investigate and/or respond to criticisms of Jay Cooper leveled by Aaron Chassey, including but not limited to the criticisms made in a memorandum entitled "Central Asia Regional Office Issues" produced in this case by Counterpart bearing Bates stamp numbers CP-00754-58, as well as the circumstances surrounding the termination of Aaron Chassey's employment with Counterpart."
Plaintiff's Exhibit 3, Notice of Deposition of Defendant Counterpart International at 7.

A:  Yes.

Q:  At some point he was sent into the central Asian region, correct?

A:  Yes, to design a proposal and work with the field.

. . .

Q:  Was it his job to report to you his observations of Mr. Cooper and Mr. Abma and everyone else in Almaty and other offices in central Asia?

A:  Absolutely, right.

Q:  Did he prepare a report for that purpose on or about March of 2003?

A:  Yes.

Q:  How long had he been employed at the time he prepared that report?

A:  Months.

Q:  Several months?

A:  Yeah. . . . Excuse me.  It could have been maybe two months.  Several is three or more.

. . . . [Defendant's Exhibit 3 is marked as Plaintiff's Exhibit 18]

Q:  Is Plaintiff's Exhibit 18 the report Mr. Chassey submitted to you on March 5, 2003?

A:  Yes.

. . .

Q:  Is there anything in Plaintiff's Exhibit 18 or anything otherwise reported to you by Mr. Chassey that played a role in your decision to fire Jay Cooper?

A:  No.  As a matter of fact, I subsequently brought Jay Cooper on as the chief of party of Phase IV.  So this did not play a role in my decision making at all.

Q: Is it fair to say you disagreed with many of the observations in Plaintiff's Exhibit 18?

A: It's fair to say that I wasn't wholly confident of the judgment of Mr. Chassey, so that I erred on the side of wanting to have my own opinion.

Q: Was Mr. Chassey ultimately relieved of his responsibilities?

A: Yes.

Q: Was that an involuntary separation?

A: Yes.

(Transcript of deposition of Counterpart International, though designated witness Arlene Lear, dated January 13, 2006 at 258-262.)

2. **Defendant's Exhibit 4:**

Defendant's Exhibit 4 is a memorandum entitled "Detailed List of Comments About Pregnant Women Made by Jay Cooper and Related Comments/Actions by CP Staff, dated April 30, 2004 by Kim Alter. In it Ms. Alter, who worked under Mr. Cooper, reported certain statements she attributed to him and other Counterpart employees.

**Plaintiff's Objection to the Admissibility of Defendant's Exhibit 4:**
Plaintiff objects to the admissibility of Defendant's Exhibit 4 because, once again, Counterpart has admitted, clearly and without reservation, that that document has absolutely no relevance to the issues in this case, the reasons for Counterpart's termination of Cooper. Defendant's Exhibit 4 (then labeled Plaintiff's Exhibit 40) was discussed at the Rule 30(b)(6) deposition of Defendant Counterpart. Arlene Lear was the

designated corporate representative.  Arlene Lear is the person who terminated Cooper.  The testimony went as follows:[2]

> Q: On to subject 15.  Did you at some point receive a memo from a Kim Alter?
>
> A: Yes.
>
> Q: And who is Kim Alter?
>
> A: Kim Alter was a financial sustainability advisor for the Civil Society Support Initiative, CSSI, and she reported directly to Jay Cooper in the field.
>
> Q: And when was she hired?
>
> A: I think it was maybe 2003.  I think it was 2003, but I can't be absolutely certain.
>
> Q: Does January 2004 sound right?
>
> A: Yes.  Yes.  I knew it was January.  Yes it does.
>
> Q: And was Ms. Alter pregnant at the time she was hired?
>
> A: No.
>
> . . . [Defendant's Exhibit 4 is marked as Plaintiff's Exhibit 40.]
>
> Q: What did you do when you received Plaintiff's Exhibit 40?
>
> A: We had an investigation.
>
> Q: Who conducted the investigation?
>
> A: Kelli.
>
> Q: What was the result of Kelli's investigation?

---

[2] At the time of the testimony quoted in this pleading, Lear was testifying as the corporate representative on the following subject:
"**SUBJECT NO. 15:** Each and every action taken by Counterpart or any agent of Counterpart to investigate and/or respond to criticisms of Jay Cooper leveled by Kim Alter, including but not limited to the criticisms made in a memorandum entitled "Detailed List of Comments About Pregnant women Made by Jay Cooper and Related comments/ Actions by CP Staff" produced in this case by Counterpart bearing Bates stamp numbers CP-00752-53."
Plaintiff's Exhibit 3, Notice of Deposition of Defendant Counterpart International at 6.

     A: There was no evidence, proof of these allegations. It was determined that the allegations were false – or uncorroborated. Uncorroborated.

. . .

     Q: Did Ms. Alter subsequently leave the employ of Counterpart?

     A: Yes, she did.

     Q: When was that?

     A: Let me see. I think it was the spring or – I think it was the spring – the late spring of that year, but I'm not absolutely sure.

     Q: Did any allegation by Ms. Alter, either contained in Plaintiff's Exhibit 40 or otherwise, convey to you, play any role in your decision to terminate Cooper?

     A: No.

     Q: Is it fair to say that you believed - - did you ask Jay Cooper about the allegations Ms. Alter made?

     A: I talked – Jay Cooper received a previous e-mail from Kim Alter articulating – indicating there was sexual harassment and denigration of women. And then I asked for some detail to corroborate that statement. And he received a copy of that from one of our vice presidents, Don Feil, who received that as well. And I thought – and Jay was upset about it and I asked for corroboration. We did an investigation. End of story.

     Q: So Jay's version of events was accepted by the company?

     A: Yes, yes.

(Transcript of deposition of Counterpart International, though designated witness Arlene Lear, dated January 13, 2006 at 254-258.)

Counterpart's Human Resources Manager Kelli Boyer backed up Lear's testimony, stating that she investigated a grievance filed by Kim Alter concerning statements made by Cooper and found that Alter's allegations were without merit. (Deposition of Kelli Boyer, March 28, 2006 at 21-22.)

## CONCLUSION AS TO EXHIBITS 3 AND 4

Defendant's Exhibits 3 and 4 are admittedly irrelevant to the question of why Cooper was fired. They can only be designed to generate unfair prejudice against Cooper. As such they have no place in this case.

3.  **Defendant's Exhibit 9:**

Defendant's Exhibit 9 is an email from Bob Abma to Michael Kunz and Jay Cooper dated September 3, 2004 in which Abma discusses two spreadsheets that he attaches. These spreadsheets concern the "pipelines" or spending through July of 2004 for the two major projects that Jay Cooper managed, comparing the spending in the field and in Counterpart Headquarters against the amounts that had been budgeted for the two projects. Abma suggests in Exhibit 9 that Counterpart "reallocate" the costs by using surpluses in the HNCBI project to make up deficits due to spending in the Regional Office and at Headquarters of funds from the CSSI project. Defendant has not included the spreadsheets in Exhibit 9. (Plaintiff has listed as Exhibit 107 on Plaintiff's Exhibit List the same Abma email with printouts of the spreadsheets attached.) The spreadsheets are an integral part of this document, the admitted basis upon which the text rests. Abma sent the spreadsheets to Cooper and Kunz as attachments to his email and evidently intended that they be viewed in connection with his email. They are thus integral parts of his message.

Plaintiff objects to the introduction of Defendant's Exhibit 9 unless those spreadsheets are attached under the doctrine of completeness as embodied in Rule 106 of the Federal Rules of Evidence.

4. **Defendant's Exhibit 12:**

Defendant's Exhibit 12 is an email exchange between Jay Cooper and David Smith about an email concerning Civil Society Hiring Procedures forwarded to them by Michael Kunz. The email exchange had attached to it two forms which Cooper and Smith were instructed to use. Defendant's Exhibit 12 does not include those forms.

Plaintiff objects to the introduction of Defendant's Exhibit 9 without the attached forms under Rule 106 of the Federal Rules of Evidence.

Respectfully submitted,

_____
Patricia D. Douglass
DC Bar 214916
98 Interpromontory Road
Great Falls, VA 22066-3219
703 759-3586
Counsel for Plaintiff Jay Cooper

July 22, 2008