**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**


| | |
|---|---|
| **JAY W. COOPER,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 05-1598 (RMC-JMF)** |
| | ) |
| **COUNTERPART INTERNATIONAL,** | ) |
| | ) |
| Defendant. | ) |


**DEFENDANT'S ADMISSIONS FOR TRIAL**


Counterpart International makes the following admissions of fact for purposes of the captioned litigation:

1. Documents bearing Bates stamp numbers CP 1490 through CP 2466 (hereinafter "Plaintiff's Exhibit 100") are true, accurate and complete copies of the files that Kelli Boyer found in Jay Cooper's office after his termination that she characterized as "secret files" at pages 93-103 of her deposition. [RFA 4]

2. Plaintiff's Exhibit 100 is comprised of files on fourteen individuals and one file labeled "computer contractors" concerning a local firm. [RFA 5, modified to meet Defendant's objection]

3. Jay Cooper at one time or another was charged with the supervision of each of the fourteen individuals for whom a file is included in Plaintiff's Exhibit 100, with the exception of Michael Kunz.  [RFA 6, partially deemed admitted for failure to timely deny]

1

4.  With the exception of the file on Michael Kunz, the files included in Plaintiff's

    Exhibit 100 are comprised of the sort of documents routinely kept by a manager

    about the people he supervises, such as contracts of employment or consulting

    agreements, job descriptions or documents setting of the scope of work of

    consultants, resumes, performance evaluations and self-evaluations, periodic

    progress reports against objectives, and routine emails asking for and sharing

    information.  [RFA 7]

5.  The files contained in Plaintiff's Exhibit 100 on nine of these fourteen individuals and

    the computer contractors file contain employment or consultancy agreements.

    [RFA 8]

6.  The files contained in Plaintiff's Exhibit 100 on nine of these fourteen individuals

    contain job descriptions and/or documents setting out the Scope of Work expected

    in connection with a consultant arrangement.  [RFA 9]

7.  The files contained in Plaintiff's Exhibit 100 on six of these fourteen individuals

    contain job performance appraisals completed by Jay Cooper and/or self appraisals

    by that individual.  [RFA 10]

8.  The files contained in Plaintiff's Exhibit 100 on two of these fourteen individuals

    (Randall Olson and Rosalie Vasquez-Yetter) contain emails and memos concerning

    the employment failings of these two individuals and various options to improve

    that performance or terminate their employment.  [RFA 11]

9.  Jay Cooper terminated Rosalie Vasquez-Yetter from her position as Country Director

    of Turkmenistan in the Fall of 2001 upon instructions from Arlene Lear.  [RFA 12]

10. Jay Cooper demoted Randall Olson from his position as Country Director of

    Tajikistan due to poor performance with the concurrence of Arlene Lear.  That poor

    performance is documented in emails, memos, notes, comments on monthly reports

    and the performance reviews contained in the file on him. [RFA 13]

11. The file contained in Plaintiff's Exhibit 100 on Kim Alter contains at least two

    hundred pages of emails, reports, memoranda, charts and PowerPoint presentations

    by Kim Alter concerning her goals, objectives and progress, the ownership of her

    work product, and her discontent with attempts to supervise her work. [RFA 14,

    modified to meet Defendant's objection]

12. Kim Alter resigned from employment with Counterpart in 2004.  [RFA 15]

13. Counterpart was dissatisfied with Kim Alter's relationships with her supervisors by

    the time she resigned. [RFA 16]

14. In 2003, Cooper, as Chief of Party for CSSI and HNCBI, had responsibility for

    Counterpart's office in Uzbekistan during a period when that operation acted as a

    sub-contractor to an organization named CHF International in the running of a

    program known as CAIP (Community Action Investment Program).  During that

    period, Michael Kunz served as the Deputy Chief of Party working for Counterpart,

    while the Director of the CAIP project worked for CHF.  Kunz was based in the

    CHF office in Tashkent.  During the CAIP project, Counterpart's Uzbekistan staff

    sent Plaintiff's Exhibits 33 and 34 to Cooper.  [RFA 17, modified to reflect limited

    admission]

15. Cooper sent Plaintiff's Exhibit 101 (bearing Bates stamp number 251) to Arlene Lear

    on April 8, 2003, attaching a copy of Plaintiff's Exhibit 34.  [RFA 20]

16. The file in Plaintiff's Exhibit 100 concerning Michael Kunz also contains documents
    concerning 1) a traffic accident in Uzbekistan, 2) that accident and complaints by
    Michael Kunz about a Counterpart employee named Azam, and 3) Cooper's
    handwritten notes of a conversation with Azam in which Azam complains about
    Kunz.  [RFA 21]

17. There are no other documents in the file on Michael Kunz contained in Plaintiff's
    Exhibit 100 other than those described in Admission Nos. 14 through 16.  [RFA 22]

18. Of the 15 employees and consultants about whom a file is included in Plaintiff's
    Exhibit 100, only eight were ex-pats (Americans living abroad).  [RFA 23, reference
    to Bougaets included as not timely denied]

19. No file on Arlene Lear is contained in Plaintiff's Exhibit 100 and no such file was
    found by Kelli Boyer in Jay Cooper's office after his termination.  [RFA 24]

20. Only two of the files in Plaintiff's Exhibit 100 (those concerning Rosalie Vasquez-
    Yetter and Randall Olson) contain any handwritten memos of conversations
    between Jay and the individual whose name is on the file.  [RFA 25, modified to
    meet Defendant's objection]

21. Only one of the files in Plaintiff's Exhibit 100 (that concerning Randall Olson)
    contains any non-handwritten memos of conversations between Jay and the
    individual whose name is on the file.  [RFA 26, modified to meet Defendant's
    objection]

22. The files in Plaintiff's Exhibit 100 concerning two individuals contain only materials
    relevant to brief projects for which they were hired as consultants.  [RFA 27]

23. The file in Plaintiff's Exhibit 100 concerning one individual contains only one sheet of paper, a memo from her asking about time sheets.  [RFA 28]

24. The individual referenced in Admission No. 23 was retained briefly on a consulting basis to serve as an advisor to the Country Director in Tajikistan.  [RFA 29]

25. The file in Plaintiff's Exhibit 100 concerning another individual contains only a consulting agreement.  [RFA 30]

26. The file in Plaintiff's Exhibit 100 concerning Yazgylych Charyev contains a report by a management consultant brought in by Cooper to improve Charyev's performance. Charyev remained as Counterpart's Country Director in Uzbekistan at the time of Cooper's termination.  [RFA 31, modified to meet Defendant's objection]

27. Erkin Kasybekov remained as Counterpart's Country Director in Kyrgyzstan at the time of Cooper's termination. [RFA 32]

28. The file labeled "computer contractors" in Plaintiff's Exhibit 100 contains a contract with a local firm to supply consulting services, a list of overtime hours for which the contractors sought reimbursement and an analysis by one of the accountants of documentation.  [RFA 33, modified to meet Defendant's objection]

29. Kelli Boyer testified at deposition that she believed that the documents she identified as "secret files," now labeled as Plaintiff's Exhibit 100, were "designed to maybe harm the person maybe at a later date."  [RFA 34, modified to reflect limited admission]

30. Plaintiff's Exhibit 102 (Bates Stamp numbers CIC 1470-73) is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 53-56. [RFA 37]

31. Arlene Lear received and reviewed Plaintiff's Exhibit 102. [RFA 38, modified to reflect limited admission]

32. Plaintiff's Exhibit 103 (Bates stamp numbers CIC 1474-1524) is a true and correct photographic copy of the document referred to by Arlene Lear at her deposition on page 81-83. [RFA 39]

33. Arlene Lear received and reviewed Plaintiff's Exhibit 103. [RFA 40, modified to reflect limited admission]

34. Plaintiff's Exhibit 14 is a true, correct and complete photographic copy of a document prepared by Cooper and sent to Arlene Lear. [RFA 41, modified to reflect limited admission]

35. Arlene Lear received and reviewed Plaintiff's Exhibit 14. [RFA 42, modified to reflect limited admission]

36. Plaintiff's Exhibit 14 was also received in Counterpart's Human Resources Department. [RFA 43, modified to reflect limited admission]

37. Plaintiff's Exhibit 13 is a true and correct photographic copy of a document prepared by Cooper and sent to Arlene Lear in March of 2002. [RFA 44]

38. Counterpart has published no whistleblower protection policy to its employees at the time of Jay Cooper's termination on November 12, 2004. [RFA 47]

39. As of the date of trial in this case, Counterpart has failed to produce any written Counterpart whistleblower protection policy. [RFA 48]

40. Kelli's Boyer's email on page numbered 230 of Plaintiff's Exhibit 37 is the first time Counterpart announced to its employees that its Grievance Policy had been

rescinded.  [RFA 49, as amended by statement of Michael Petkovich at Pre-Trial

Conference on July 29, 2008.]

41. At a meeting of Counterpart's Senior Management Team held on October 26, 2004, it

was announced that two members of Counterpart's Program Management Team

were revising the company's Open Door Policy. [RFA 50, modified to reflect

limited admission]

42. Jay Cooper hired Gavin Helf as a consultant to provide guidance and management

support to Yazgylych Charyev, Counterpart's Country Director for Turkmenistan,

on two occasions, once for a three-month period in 2003 and again for a three-week

period in 2004. [RFA 52]

43. Documents contained in Plaintiff's Exhibit 100 in the file on Gavin Helf include true

and correct copies of a draft Scope of Work and an email from Mr. Helf

commenting on a draft Scope of Work, which scope of work was to be performed

by Mr. Helf on his second visit, as well as the reasons why that second consultancy

was warranted. [RFA 53, modified to reflect limited admission]

44. Arlene Lear approved hiring Mr. Helf for the purposes described in Admission No.

43 and in the documents referenced in Admission No. 44.  [RFA 54]

45. Sometime after December 31, 2005, Counterpart prepared and submitted to USAID a

Final Program Report on one of the programs Jay Cooper had managed between

January 1, 2003 and the date of his termination, the HNCBI, which had been

operated in five countries in Central Asia.  A true and correct photographic copy of

the cover, table of contents and Executive Summary of that report is Plaintiff's

Exhibit 104.  [RFA 55, modified to reflect portion of report to be offered in

evidence]

46. In Plaintiff's Exhibit 104, Counterpart concluded:  "Despite challenging operating

environments in some of the countries, the program has proved to be resilient and

extremely successful in terms of outreach and producing significant health impact at

the community level . . . . It has by far exceeded the target indicators under each of

the objectives . . . ."  [RFA 56]

47. In August of 2004, Don Feil held the position of Vice President (Small Business

Development) with Counterpart.  [RFA 57]

48. In August of 2004, Harry Dorcus held the position of Vice President and Chief

Financial Officer with Counterpart.  [RFA 58]

49. Plaintiff's Exhibit 105 is a true, accurate and correct copy of Form 990, Return of

Organization Exempt from Income Tax (with attachments) filed with the IRS by

Counterpart, covering Counterpart's activities from October 1, 2004 to September

30, 2005. [RFA 61]

50. Plaintiff's Exhibit 49 is a true and correct copy of Form 990, Return of Organization

Exempt from Income Tax (with attachments) filed with the IRS by Counterpart,

covering Counterpart's activities from October 1, 2003 to September 30, 2004, with

the sole exception of a blacked out portion of page 6. [RFA 62]

51. Plaintiff's Exhibit 106 is a true, accurate and complete copy of a Mid-Term

Evaluation Report on CSSI, prepared  for Counterpart, dated May 11, 2005.  [RFA

63, modified to reflect limited admission]

52. Plaintiff's Exhibit 107 is a true and correct copy of an email sent by Bob Abma to Michael Kunz and Cooper on September 3, 2004. [RFA 64]

53. Plaintiff's Exhibit 108 (bearing Bates stamp number 3452) is a true and correct copy of an email from Michael Kunz to Cooper dated September 24, 2004 in which Michael Kunz thanks Cooper for "today's meeting" which he (Kunz) described as "really productive."  [RFA 69]

54. Plaintiff's Exhibit 109 (bearing Bates stamp number 3457) is a true and correct copy of an email sent to Jay Cooper and Bob Abma by Irina Kolmakova on October 6, 2004. [RFA 72]

55. Irina Kolmakova was Counterpart's HR and Administrative Manager in its Almaty office in 2004, with supervisory responsibility for the receptionist, the drivers and the security guards that worked out of that office. [RFA 73]

56. Plaintiff's Exhibit 110 (bearing Bates stamp numbers 3453-56) is a true and correct copy of email correspondence between Michael Kunz and Cooper about meetings in October of 2004, attaching other correspondence about the subject of those meetings.  [RFA 74]

57. Plaintiff's Exhibit 23 is a true and correct photographic copy of an email written by Michael Kunz to Cooper and Yazgylych Charyev on October 6, 2004. [RFA 75]

58. Plaintiff's Exhibit 37  is (with the exception of the email forwarding notice from Cooper to Pat Douglass on the top of page 230) a true and correct copy of an email sent to Counterpart's Headquarters Staff from its Human Resources Department on October 6, 2004. [RFA 76, modified to meet Defendant's objection]

59. Plaintiff's Exhibit 46 is a true and correct copy of an email sent from Bob Abma to Cooper and Michael Kunz on October 8, 2004, attaching a spreadsheet. [RFA 77]

60. The reference to "Eurasia Regional" on the spreadsheet attached to Plaintiff's Exhibit 46 is to a fund designed to support efforts by Michael Kunz to travel to Armenia and other countries in an attempt to procure new programs for Counterpart, as well as travel by Bob Abma to Iraq, Turkey and perhaps Afghanistan on short-term assignments for Counterpart including training sessions.  [RFA 78, deemed admitted by virtue of failure to timely deny]

61. In the Fall of 2004, Michael Kunz was cultivating new program opportunities in the Central Asia Region, including those in countries in which Counterpart had no existing programs such as Armenia.  [RFA 81]

62. Plaintiff's Exhibit 111 (bearing Bates stamp number 285) is a true, accurate and complete copy of an email Cooper sent Bob Abma and Michael Kunz in response to Plaintiff's Exhibit 46. [RFA 88]

63. Plaintiff's Exhibit 45 includes a copy of an email sent by Jay Cooper which was received by Bob Abma, Michael Kunz, Harry Dorcus and Yana Dobronravova on or about October 21, 2004. [RFA 89, modified to reflect limited admission]

64. Plaintiff's Exhibit 83 is a true and correct copy of an agreement Counterpart entered into with its former Chief Operating Officer Greg Touma in connection with his resignation from Counterpart's employment; under the terms of Plaintiff's Exhibit 83 Mr. Touma is not allowed to disclose any information regarding, among other things, his employment with and resignation from Counterpart. [RFA 92, modified for clarity without change of substance]

65. Counterpart has refused to waive the confidentiality provision of Plaintiff's Exhibit
83. [RFA 93]

66. Aaron Chassey was terminated from his position as Director of Counterpart's Civil
Society Program in the Spring of 2003.  He was not locked out of his office
following that termination. [RFA 94]

67. Counterpart has refused to waive the confidentiality provision of an agreement it
entered into with Aaron Chassy in connection with the termination of his
Counterpart employment.  [RFAs 95 & 96]

68. Counterpart investigated various statements critical of Cooper made by Kim Alter
and determined that they were without merit. [RFA 99, modified to meet
Defendant's objection]

69. Counterpart did not credit statements critical of Cooper made by Aaron Chassey, and
such statements by Chassey played no role in Counterpart's decision to terminate
Cooper. [RFA 101, modified to meet Defendant's objection]

70. Counterpart has paid no reimbursement to Cooper for the business expenses for
which reimbursement was requested in Plaintiff's Exhibits 16, 18 and 19,
(documents bearing Bates stamp numbers 92, 96-97 and 98). [RFA 102]

71. Accountants in Counterpart's Almaty office possessed records sufficient to verify the
amounts reflected in Plaintiff's Exhibits 16, 18 and 19.  [RFA 103, deemed admitted
for failure to timely deny]

72. Documents bearing Bates stamp numbers 100-107 and 111 in Plaintiff's Exhibit 112
reflect reasonable expenses incurred by Cooper in returning himself and his

11

household and personal effects to his Home of Record from Central Asia after his

termination.  [RFA 105]

73. Counterpart has paid no reimbursement, in whole or in part, for the travel and

shipping expenses reflected in the documents referenced in Admission No. 74.

[RFA 107]


_____

Michael Petkovich
Jackson Lewis LLP
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182

COUNSEL FOR DEFENDANT COUNTERPART INTERNATIONAL

August   , 2008