UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAY W. COOPER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 1:05-cv-01598-RMC |
| | ) | |
| COUNTERPART INTERNATIONAL | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S SUPPLEMENT TO JOINT PRETRIAL STATEMENT**

Defendant Counterpart International, through counsel, hereby files this supplement to the parties' Joint Pretrial Statement, to respond to questions raised by the Court during the July 29, 2008 Pretrial Conference in the above-captioned matter.

**I.  Under The Contract, Damages Are Limited By The 30 Day Notice Provision.**

When a contract expressly allows one party to terminate the agreement after a defined notice period, damages for breach of contract are limited to damages incurred during the notice period. The District of Columbia courts have not addressed this issue. However, the Fourth Circuit and Maryland courts squarely have done so. For instance, in *Strategic Outsourcing v. Continental Casualty Company*, 2008 U.S. App. LEXIS 8191 (4th Cir. 2008), the applicable contract provided a basis for defendant to modify the agreement unilaterally under certain conditions. The agreement also provided a 90 day cancellation provision. The defendant argued it satisfied the conditions for modification and also terminated the agreement under the cancellation provision. The jury concluded that the defendant failed to prove it modified the contract for the contractually allowed conditions, and awarded full damages through the

1

expiration date of the agreement. In doing so, the jury ignored the limitations of the 90 day cancellation provision. The defendant appealed the damage award, arguing that regardless of whether it satisfied the modification conditions, damages should have been limited to those incurred during the 90 day cancellation period. The Fourth Circuit agreed, reasoning: "[B]ecause CNA was entitled to terminate the contract under the cancellation clause, SOI's damages should have been limited to those incurred during the ninety-day notice period." *Id.* at *13-14.

Significantly, the Fourth Circuit firmly rejected the district court's finding that defendant's breach of contract "necessarily foreclosed" defendant's reliance on the cancellation clause. The Fourth Circuit observed, even though defendant failed to prove it modified the contract for the contractually allowed conditions, "the cancellation clause does not require that any of these conditions be met… [and] thus does not foreclose the holding that CNA had reasonable grounds to invoke the cancellation clause." *Id. at* *16.

Finally, the Fourth Circuit rejected the district court's finding that damages for breach of a contract of fixed duration must include all damages incurred during the entire contract period:

> [T]he non-breaching party's reasonable "expectation interest" defines the scope of recoverable damages. *See [Lowery v. Love*, 378 S.E.2d 815 (N.C. Ct. App. 1989)] (*citing Restatement (Second) of Contracts* § 344(a) cmt. a (1979)). Thus, when a contract *does* provide a right to cancel with notice the parties must reasonably expect that this right might be exercised, regardless of whether the contract is for a fixed term or of indefinite duration.

*Strategic Outsourcing,* 2008 U.S. App. LEXIS 8191 *at* *18; s*ee also Enterprise Wheel & Car Corp., v. United Steel Workers,* 269, F.2d 327, 331 (4th Cir. 1959)(holding when an employment contract allows the employer to terminate the plaintiff after a set notice period, damages are limited to those incurred during the notice period.); *Storetrax.com v. Gurland,* 895 A.2d 355,

(Md. 2006) (holding employee's damages were limited to those incurred during notice period even if employer failed to provide written notice as required by contract)[1],[2].

Here, as in *Strategic Outsourcing*, the employment contract gave Counterpart the express right to terminate Cooper for any legal reason with 30 days written notice. The Amended Complaint does not allege Counterpart terminated Cooper for any illegal reason. Rather, Cooper merely alleges Counterpart terminated Cooper to avoid his questions about financial irregularities and to stop him from filing an internal grievance. There is no claim in this case that Counterpart terminated Cooper for any illegal reason.

Counterpart intends to prove it relied on the contractual right to terminate Cooper if Counterpart was not satisfied with Cooper's performance. However, as in *Strategic Outsourcing*, the contract does not require that this condition of satisfaction be met under the separate 30 day notice provision. This cancellation provision gives Counterpart the right to terminate the agreement for any legal reason – without regard for whether Counterpart is satisfied with Cooper's performance. Counterpart is not foreclosed from relying this alternative contract provision if it does not prevail on its primary position. Cooper and Counterpart negotiated a contract which includes both provisions. These provisions are not mutually exclusive. Counterpart should be granted the benefit of its bargain.

Finally, District of Columbia law, like the North Carolina law analyzed in *Strategic Outsourcing*, is clear that a non-breaching party's "reasonable expectation interest" defines the

---

[1] "As the common law of Maryland is the source of the District of Columbia's common law, it is an especially persuasive authority when the District's common law is silent." *Saylab v. Don Juan Restaurant, Inc.,* 332 F. Supp. 2d 134, 142-43 (D.D.C. 2004).

[2] *See further, Odell v. Humble Oil & Refining Co.*, 201 F.2d 123, 128 (10th Cir. 1953) ("Where a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period."); *Reiver v. Murdoch & Walsh, P.A*. 625 F. Supp. 998, 1010 (D. Del. 1985) ("[A] ninety day notice provision in the termination clause limits the terminated party's damages to benefits he is entitled to recover under the contract during the notice period." ).

scope of recoverable damages. *See Mashack v. Superior Management Services*, 806 A.2d 1239, 1241-42 (D.C. 2002) ("In a breach of contract action, the measure of damages that a court must apply is "the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed." *Rowan Heating-Air Conditioning v. Williams*, 580 A.2d 583, 585 (D.C. 1990); see Restatement (Second) of Contracts § 344(a) (1981).").

Here too, Cooper entered an agreement which gave Counterpart the right to terminate Cooper's employment with 30 days written notice. It is undisputed Counterpart provided Cooper written notice of his termination on the day he was terminated. This contract provision defines Cooper's reasonable expectation to be a maximum of 30 days of contractual benefits.

For these reasons and the reasons set forth in *Defendant's Motion in Limine to Exclude Evidence of Cooper's Alleged Damages After December 12, 2004*, and *Reply to Plaintiff's Opposition*, Counterpart respectfully requests that the Court grant Counterpart's motion in limine and exclude evidence and testimony regarding Cooper's alleged damages incurred after December 12, 2004.

## II.   ALL POST-TERMINATION FACTS AND OPINIONS CITED BY COOPER TO SUPPORT HIS FALSE LIGHT CLAIM ARE IRRELEVENT

Truth and assertion of opinion are defenses to claims of false light invasion of privacy. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). In addition to the reasons set forth in *Defendant's Motion to Exclude Counterpart's Non-Public Communications About Cooper's Performance and Separation*, the following communications are irrelevant to Cooper's false light claims and should be excluded because it is undisputed each communication is either true or an assertion of opinion:

1) **Claim:** Counterpart's communications to other Counterpart Country Directors that Cooper was no longer with Counterpart and was not allowed in any offices in those countries.

   **Response:** It is undisputed that after Cooper was terminated on November 12, 2004, "he was no longer with Counterpart" and was not allowed in any Counterpart offices. Therefore, these communications are true and cannot be relevant to any false light claim.

2) **Claim:** Kunz's alleged communications to Igor Tupitsyn and Susan Fritz that Cooper left Counterpart "not by his own choice".

   **Response:** It is undisputed that Cooper left Counterpart "not by his own choice." This true statement cannot be relevant to any false light claim.

3) **Claim:** Altinay Kucheekekyuva's alleged statement to Ruth Pojman that Cooper "deserved what he got".

   **Response:** Whether one is "deserving" of any particular process or outcome is an assertion of opinion. Opinions stated to one person are irrelevant to a false light claim.

4) **Claim:** Kunz' alleged statement to Stephen Larabee that Cooper mismanaged projects.

   **Response:** Whether Cooper mismanaged a project is an assertion of opinion. Opinions stated to one person are irrelevant to a false light claim.

5) **Claim:** Lear's alleged statements to Igor Storozhenko that Cooper's ex-wife deserved custody of their child.

> **Response:** Whether one is "deserving" of any particular process or outcome is an assertion of opinion. Opinions stated to one person are irrelevant to a false light claim.

In addition, a false light invasion of privacy claim only applies to "unreasonable publicity, of a kind highly offensive to the ordinary reasonable man." *Restat. 2d of Torts* §652(H). Actions taken and statements made by Counterpart for the sole purpose of carrying out Counterpart's termination procedures are not unreasonable or highly offensive to an ordinary reasonable man. For this reason, in addition to the reasons set forth in Defendant's *Motion in Limine*, the following communications are irrelevant to Cooper's false light claim and should be excluded because they are merely common business practices and termination procedures:

1) **Claim**: Lear asking Cooper not to return to the Almaty office during the October 12, 2004 telephone conference terminating his employment.

    **Response**: Prohibiting an employee from returning to the workplace after his termination is a common business practice and termination procedure, not an unreasonable or highly offensive communication.

2) **Claim:** Changing the locks on Cooper's office door located inside Counterpart's Almaty office following his termination.

    **Response**: Securing the office of a terminated employee is a common business practice and termination procedure, not an unreasonable or highly offensive communication.

3) **Claim**: Maintaining the locked status of Cooper's office door located inside Counterpart's Almaty office following his termination.

>**Response:** Maintaining the security of the office of a terminated employee is a common business practice and termination procedure, not an unreasonable or highly offensive communication.

4) **Claim**: Abma and Boyer sorting through Cooper's office the weekend of November 13-14, 2004.

>**Response**: Reclaiming business information and separating company property from a former employee's personal effects following the employee's termination is a common business practice and termination procedure, not an unreasonable or highly offensive communication.

For the reasons stated above, as well as those reasons stated in Defendant's *Motion in Limine* and *Reply to Plaintiff's Opposition*, Counterpart respectfully requests that the Court grant Counterpart's motion in limine and exclude evidence and testimony of any non-public communications, true statements or assertions of opinion, made by Counterpart about Cooper's employment performance or termination, including but not limited to the above-listed communications and alleged communications.

### III.   JURY INSTRUCTIONS

#### A.   Clarification of Defendant's Objection to Plaintiff's Jury Instructions Nos. 15 and 30: Breach of Implied Duty of Good Faith and Fair Dealing and Availability of Tort Damages

Counterpart claims it terminated Cooper because it was not satisfied with his performance.  To prove breach of contract, Plaintiff must demonstrate Counterpart really terminated him for some other reason. The jury does not need to decide if Counterpart acted in good faith in order to decide if Counterpart terminated Cooper because it was not satisfied with his performance, or for some other reason.  As such, the only purpose of Plaintiff's Jury

7

Instruction No. 15 (Implied Contractual Terms – The Duty of Good Faith and Fair Dealing) is to create a foundation for Plaintiff's Jury Instruction No. 30 (Breach of Covenant of Good Faith and Fair Dealing – Tort Remedies Available).

Defendant objects to Plaintiff's Jury Instructions Nos. 15 and 30 because the Amended Complaint does not include a separate cause of action for breach of the implied duty of good faith and fair dealing. Even if Plaintiff had pled a separate claim, it could not stand as an independent action because Plaintiff's allegations of bad faith are already incorporated in Plaintiff's breach of contract claim. *See WMATA v. Quik Serve Foods*, 2006 U.S. Dist. LEXIS 24510, *14 (U.S. D.C. 2006)(dismissing plaintiff's implied duty of good faith claim because the allegations of bad faith were already incorporated in plaintiff's breach of contract claim.); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 98 n.2 (D.D.C. 1996) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are 'identical to' a claim for 'relief under an established cause of action.'").

Defendant further objects to Plaintiff's Jury Instruction No. 30 because Plaintiff has no basis under District of Columbia law for punitive damages for his breach of contract claim. In *Fireman's Fund Insurance Co. v. CTIA*, 480 F. Supp. 2d 7 (U.S.D.C. 2007), the Court rejected the defendant's cross-claim for punitive damages for bad faith breach of an insurance contract. The Court reasoned:

> District of Columbia law is clearly established on one point: "Where the basis of a complaint is… a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton or malicious." *Sere v. Group Hospitalization, Inc.* 443 A.2d 33, 37 (D.C. 1982) "The rule in this jurisdiction is that only where an alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available." Id. (internal quotation marks omitted); *see also Den v. Den*, 222 A.2d 647, 648 (D.C. 1966) ("While there are cases in this jurisdiction indicating that punitive damages may be allowed for a

> breach of contract where the acts of the breaching party are malicious, wanton, oppressive or with criminal indifference to civil obligations, it appears that such acts must, as was said in *Brown* [*v. Coates*, 102 U.S. App. D.C. 300, 253 F.2d 36, 39 (D.C. Cir. 1958)], merge with and assume the character of a willful tort").
>
> …
>
> The District of Columbia's exception to the general prohibition on punitive damages for contract claims applies most often if the breach of contract merges with an independent, recognized tort, such as IIED or fraud. … Hence, *CTIA should not be allowed to import through a standard breach–of-contract claim the very tort that is otherwise unrecognized in the District of Columbia*, i.e. the tort of bad faith breach of an insurance contract.

*Fireman's*, 480 F. Supp. 2d *at* 12-13 (*emphasis added*).

Here, the Amended Complaint does not include any claim for a willful tort. Even if Plaintiff demonstrates Counterpart breached the employment contract, Plaintiff is not entitled to punitive damages as a matter of law. Opposing counsel seeks punitive damages through the back door by insisting Counterpart breached its duty of good faith and fair dealing when it breached the contract. However, tortious breach of the duty of good faith and fair dealing has never been recognized as an independent tort under District of Columbia law. As in *Fireman's*, Plaintiff should not be allowed to import through a standard breach of contract claim, a tort that is otherwise unrecognized in the District of Columbia.

For these reasons and the reasons stated in Defendant's Objection to Plaintiff's Instructions Nos. 15 and 30 in Attachment 8 to the Joint Pretrial Statement, Plaintiff's Instructions Nos. 15 and 30 should be rejected.

**B.    Clarification of Defendant's Objection to Plaintiff's Jury Instruction No. 38: Damages Limited to Emotional Distress for False Light Claim**

Defendant objects to Plaintiff's Jury Instruction No. 38 because it is confusing and misleading. Defendant specifically objects to the portion of the instruction that states the jury

should award plaintiff for injury to his "good name and reputation" and "for any economic or monetary loss that the plaintiff suffered as a result" because under District of Columbia law, and available damages for a false light invasion of privacy claim are limited to damages for emotional distress. *See White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("The false light invasion of privacy action differs from an action for defamation because a defamation tort redresses damage to reputation while a false light privacy tort redresses mental distress from having been exposed to public view."). Defendant offers Defendant's Instruction No. 14 in lieu of Plaintiff's Instruction No. 38.

### C.      Defendant's Amended Jury Instruction No. 7

Defendant requests that the first two sentences of Defendant's Instruction No. 7 be replaced with the following sentence: "If Mr. Cooper establishes his breach of contract claim, you may award him damages if he also proves he experienced damages as a result of Counterpart's breach and the amount of those damages."

### D.      Clarification of Defendant's Authority for Defendant's Jury Instruction No. 14

In Defendant's Jury Instruction No. 14, Defendant states Mr. Cooper has the burden to prove he suffered actual damages as a result of his mental distress. Defendant's reference to "actual damages" is based on Standardized Civil Jury Instructions for the District of Columbia §17.31, Compensatory Damages for Defamation. The instruction states the plaintiff must demonstrate he sustained "actual injury" as a result of the defamation, in order to be awarded compensatory damages. *See also*, Restat. 2d of Torts §652(H), comment b ("The plaintiff may also recover damages for emotional distress or personal humiliation that he proves to have been *actually* suffered by him, if it is of a kind that normally results from such an invasion and it is

normal and reasonable in its extent. In this respect the action for invasion of privacy closely resembles that for defamation." (emphasis added)).

                                  Respectfully submitted,

                                  **JACKSON LEWIS LLP**

August 4, 2008                      By: _____/s/_____
                                    Michael N. Petkovich (D.C. Bar No. 456010)
                                    John M. Remy (D.C. Bar No.461244)
                                    Kara M. Ariail (D.C. Bar No. 478718)
                                    8614 Westwood Center Drive, Suite 950
                                    Vienna, Virginia 22182
                                    (703) 821-2189
                                    (703) 821-2267 (fax)

                                    **Attorneys for Defendant Counterpart International**